J. Jonathan Hawk (SBN 254350)
jhawk@mwe.com
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
+1 310 277 4110

Kathryn Barragan (*Pro Hac Vice Application Forthcoming*)
kbarragan@mwe.com
**MCDERMOTT WILL & EMERY LLP**
200 Clarendon Street, Floor 58
Boston, MA 02116-5021
+1 617 535 4102

*Attorney for Respondent X CORP.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE COURTHOUSE

| | |
|---|---|
| *In re* Application of BANCO AZTECA S.A. INSTITUCIÓN DE BANCA MÚLTIPLE, for an Order Pursuant to 28 U.S.C. § 1782 Authorizing Discovery for Use in a Foreign Proceeding | Case No. 5:24-MC-80091-NC <br><br> **RESPONDENT X CORP.'S NOTICE OF MOTION AND MOTION TO QUASH BANCO AZTECA'S SUBPOENA** <br><br> Hearing Date:  September 11, 2024 <br> Hearing Time:  11 a.m. <br> Courtroom:      5 – 4th Floor <br> Judge:             Hon. Nathanael Cousins |

*McDermott Will & Emery LLP*
*Attorneys At Law*
*Los Angeles*

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE THAT on Wednesday, September 11, 2024, at 11 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, located at the San Jose Courthouse, Courtroom 5 – 4th Floor, 280 South 1st Street, San Jose, CA 95113, Respondent X Corp. will move, and hereby does move, this Court for an Order quashing the subpoena served on X Corp. by Applicant Banco Azteca, S.A. Institutción de Banca Múltiple ("Banco Azteca"), pursuant to its *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 Authorizing Discovery in a Foreign Proceeding from X Corp. (the "Application") (ECF 15), the Court's Order Approving Issuance of Requested Subpoenas (ECF 18), and the Subpoena served on X Corp. This Motion is brought pursuant to Fed. R. Civ. P. 45(d)(3) and 28 U.S.C. § 1782.

As set forth below, Banco Azteca's Subpoena should be quashed because it fails to satisfy the threshold conditions of 28 U.S.C. § 1782, as well as the discretionary factors articulated in the Supreme Court's decision in *Intel Corp. v Advanced Micro Devices*, 542 U.S. 241, 225 (2004).

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the concurrently filed Declarations of Jolie Perla, J. Jonathan Hawk, and Kathryn Barragan; (3) the [Proposed] Order; (4) the joint letter discovery letter brief filed by X Corp. and Banco Azteca; (5) all other filings and records in this proceeding; (6) any oral argument; (7) all other matters of which the Court may take judicial notice; and (8) any opposition, reply brief, argument, and such other and further matters the Court may properly consider before ruling.

Dated: July 30, 2024

**McDermott Will & Emery LLP**

By:    *J. Jonathan Hawk*
      J. Jonathan Hawk
      Kathryn Barragan (*Pro Hac Vice Application Forthcoming*)
      2049 Century Park East, Suite 3200
      Los Angeles, CA  90067-3206
      +1 310 277 4110

      *Attorney for Respondent X Corp.*

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF ISSUE.................................................................................... 3

II.   FACTS ................................................................................................................. 3

    A.    The X Platform ......................................................................................... 3

    B.    Banco Azteca and Grupo Elektra............................................................ 3

    C.    The Alleged November 2023 Social Media Posts Criticizing Banco Azteca............... 4

    D.    Banco Azteca Purportedly Files a Criminal Complaint............................ 4

    E.    Banco Azteca's Subpoena........................................................................ 6

    F.    The X Account Holders Whose Identifying Information is Subpoenaed .................... 6

    G.    Information Requested in the Subpoena .................................................. 12

III.  STANDARD OF REVIEW ............................................................................... 13

IV.  ARGUMENT ..................................................................................................... 14

    A.    The "For Use" Threshold Requirement of § 1782 Is Not Met ............... 14

    B.    *Intel*'s Discretionary Factors Weigh in Favor of Quashing the Subpoena ................ 17

        1.    *Intel* Factor One Weighs in Favor of Quashing the Subpoena ...................... 17

        2.    *Intel* Factor Two Weighs in Favor of Quashing the Subpoena..................... 18

        3.    *Intel* Factor Four Weighs in Favor of Quashing the Subpoena .................... 19

            a.    The Application Fails to Demonstrate the Alleged Criminal Proceedings Could Withstand a Motion to Dismiss .......................... 20

            b.    The Application Raises First Amendment Concerns......................... 20

            c.    The Subpoena Would Harm U.S.-Based Listeners............................ 21

            d.    Unmasking Anonymous Users Who are Noncitizens Living Abroad Burdens the Right of Platforms to Make First Amendment-Protected Editorial Decisions......................................... 22

            e.    The Application Raises First Amendment Concerns Because the Subpoena Would Chill the Speech of Others Inclined to Post About Important Public Issues.................................................. 23

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Anonymous Online Speakers*,
  661 F.3d at 1173 ....................................................................................24

*In re Application of Banco Mercantil de Norte, S.A.*,
  2023 WL 6690708 (E.D. Va. Oct. 12, 2023) ......................................18

*In re Application of O2CNI Co., Ltd.*,
  2013 WL 4442288 (N.D. Cal. Aug. 15, 2013) ....................................19

*Bigelow v. Virginia*,
  421 U.S. 809 ..........................................................................................21

*In re Campuzano-Trevino*,
  2022 WL 570254 (D. Md. Feb. 24, 2022) .....................................14, 17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2013 WL 183944 (N.D. Cal. Jan. 17, 2023) .......................................13

*CFE Int'l LLC v. Antaeus Grp. LLC*,
  2022 WL 17731821 (W.D. Tex. Aug. 26, 2022) ........................... *passim*

*In re Choi*,
  2024 WL 1120130 (N.D. Cal. Mar. 14, 2024)................................17, 18

*Citizens United v. FEC*,
  558 U.S. 310 (2010)...............................................................................23

*Phillips ex rel. Ests. of Byrd v. General Motors Corp.*,
  307 F.3d 1206 (9th Cir. 2002) ..............................................................25

*Hassell v. Bird*,
  5 Cal. 5th 522 (2018) .............................................................................15

*Highfields Capital Management, L.P. v. Doe*,
  385 F. Supp. 2d 969 (N.D. Cal. 2005) ..................................................21

*In re Hoteles City Express*,
  2018 WL 3417551 (N.D. Cal. July 13, 2018)........................................20

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
  515 U.S. 557 (1995)................................................................................23

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004)........................................................................ *passim*

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

*John Doe No. 1 v. Reed*,
   561 U.S. 186 (2010)................................................................................23

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
   895 F.3d 238 (2d Cir. 2018)....................................................................13

*Lamont v. Postmaster General of U.S.*,
   381 U.S. 301 (1965)................................................................................22

*Matter of Application for an Ord. Seeking Discovery Under 28 U.S.C. § 1782*
   2024 WL 2883293 (S.D.N.Y. May 16, 2024) .......................................14

*McIntyre v. Ohio Elections Commission*,
   514 U.S. 334 (1995)................................................................................24

*Miami Herald Publ'g Co. v. Tornillo*,
   418 U.S. 241 (1974)................................................................................23

*NetChoice, LLC v. Attorney General*,
   34 F.4th 1196 (11th Cir. 2022) ..............................................................23

*In re Path Network, Inc.*,
   2023 WL 8115045 (N.D. Cal. Nov. 22, 2023) ......................................25

*In re PGS*,
   2018 WL 6311407 ..................................................................................21

*In re Plan. & Dev. Of Educ., Inc.*,
   2022 WL 228307 (N.D. Cal. Jan. 26, 2022) .........................................21

*Thunder Studios, Inc. v. Kazal*,
   13 F.4th 736 (9th Cir. 2021) ..................................................................22

*Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*,
   2021 WL 4124216 (N.D. Cal. Sept. 9, 2021) .......................................20

*Twitter, Inc. v. Garland*,
   61 F.4th 686 (9th Cir. 2023) ..................................................................23

*U.S. v. Cueller, et al.*,
   No. 4:24-cr-00224, Dkt. 1 (S.D. Tx. Apr. 30, 2024) ...............................3

*Weitsman v. Levesque*,
   2020 WL 6825687 (S.D. Cal. Nov. 20, 2020) ......................................15

**Statutes**

28 U.S.C. § 1782...................................................................................... *passim*

CDA § 230 ...............................................................................................15

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

**Other Authorities**

X.com .......................................................................................................................... *passim*

*¿Cómo es el partido Morena, cuál es su ideología e historia en México?*, CNN
Español (June 3, 2024), *available at*
https://cnnespanol.cnn.com/2024/06/03/morena-como-partido-ideologia-historia-
mexico-orix/ ............................................................................................................7

*¿Qué es la cuarta transformación en México y qué plantea?*, CNN Español (February
2, 2024) *available at* https://cnnespanol.cnn.com/2024/02/02/que-cuarta-
transformacion-mexico-que-plantea-orix/ .............................................................7

*¿Quién es el verdadero dueño del equipo Mazatlán F. C.?*, El Ceo (May 12, 2023),
*available at* https://elceo.com/negocios/quien-es-el-verdadero-dueno-del-equipo-
mazatlan-f-c/ ..........................................................................................................3

*Combative Billionaire's Bank Accused of Bribing a Texas Democrat*, WSJ, May 8,
2024, *available at* https://www.wsj.com/world/americas/the-mexican-bank-
behind-alleged-bribes-to-a-texas-democrat-4cf4cc17 ...........................................3

Fed. R. Civ. P. 26(c) ..................................................................................................25

Institutional Revolutionary Party, https://www.britannica.com/topic/Institutional-
Revolutionary-Party ..............................................................................................11

*Los claves para entender el Plan C de Lopez Obradór*, El País (June 5, 2024),
*available at* https://elpais.com/mexico/elecciones-mexicanas/2024-06-05/las-
claves-para-entender-el-plan-c-de-lopez-obrador.html ..........................................7

*Mexican magnate's firm says it's too poor to pay U.S. bondholders the tens of millions
owed*, AP (November 14, 2023), *available at* https://apnews.com/article/mexico-
indebted-magnate-bondholders-530ee902165af9ef1f64ffba9539e514 ...................9

*Mexico elects its first female president*, NPR (June 3, 2024), *available at*
https://www.npr.org/2024/06/03/nx-s1-4989334/claudia-sheinbaum-poised-to-
become-mexicos-first-female-president ..................................................................7

Michael O'Boyle, *Mexico Tycoon's Tax Case in Top Court, with $2 Billion At Stake*,
Bloomberg (June 22, 2021), *available at*
https://www.bloomberg.com/news/articles/2021-07-22/mexico-billionaire-salinas-
s-tax-case-gets-supreme-court-review ...................................................................9

*Misleading and Deceptive Identities Policy*, X Help Center (Apr. 2023), *available at*
https://help.x.com/en/rules-and-policies/x-impersonation-and-deceptive-identities-
policy.......................................................................................................................3

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Mut. Legal Assistance Treaties of the U.S., U.S. DEPT. OF JUSTICE (April 2022), *available at* https://www.justice.gov/d9/pages/attachments/2022/05/04/mutual-legal-assistance-treaties-of-the-united-states.pdf........................................................18

Rainie et al., *Anonymity, Privacy, and Security Online*, Pew Research Center (Sept. 5, 2013), *available at* https://www.pewresearch.org/internet/2013/09/05/anonymity-privacy-and-security-online ........................................................24

*Rumores aseguran que Banco Azteca esta en uiebra: datos sobre su situacion financiera*, MARCA (November 27, 2023), *available at* https://www.marca.com/mx/actualidad/2023/11/27/6564e175ca47410a368b45b3.htm ........................................................8

Santiago Pérez, *Mexican Tycoon's Retain Chain Ordered to Pay $1 Billion in Back Taxes*, WSJ (June 13, 2024), *available at* https://www.wsj.com/world/americas/mexican-tycoons-retail-chain-ordered-to-pay-1-billion-in-back-taxes-d7b6e565;........................................................9

*The Truth About our Tax Affairs*, (last visited July 24, 2024) *available at* https://www.gruposalinas.com/en........................................................9

*Valor Economico*, Grupo Salinas https://www.gruposalinas.com/valor/valoreconomico; ........................................................3

## I.    INTRODUCTION

Applicant Banco Azteca, S.A. Institución de Banca Múltiple (the "Applicant" or "Banco Azteca") is a private party that claims it is seeking to have twelve anonymous users on the X platform held criminally liable in Mexico for making public statements on X around November 2023 that criticized Banco Azteca's perceived financial health. One of those twelve anonymous users may be located in the United States based on internal protocol ("IP") addresses associated with activity on her/his account. Moreover, many of the other users who Banco Azteca seeks to unmask, make statements on their X accounts that indicate they not only use those accounts to make political statements, but also support the current, governing political party in Mexico that Banco Azteca's owner regularly criticizes based on his opposite political leanings.

These facts unto themselves raise serious questions about the purposes for Banco Azteca's subpoena (the "Subpoena"), and those concerns are amplified by several other red flags.

The Application fails to provide key information needed to assess Banco Azteca's request. Specifically, the Application does not attach a copy of the alleged criminal complaint in the Mexican proceeding, nor any other filings from it. The Court and X Corp. thus cannot be sure whether the purported Mexican criminal proceeding exists, and, if it does, if it is before a court, or is still merely being investigated. The Application also does not state whether Mexican authorities handling the criminal investigation support or are aware of this proceeding, and Applicant's counsel has been unable to confirm that. Where the information being sought is purportedly to be used by the Mexican authorities, it is troubling that Banco Azteca cannot confirm if those authorities support, let alone know of, its efforts here. Indeed, it is unclear if Mexican authorities truly need the information being sought, and, if so, why they have not pursued it via standard procedures for seeking evidence to be used in a foreign criminal proceeding, under Mexico's Treaty of Mutual Legal Assistance in Criminal Matters ("MLAT") with the U.S., which could be subject to scrutiny by, and the expertise and analytical rigor of, the Department of Justice ("DOJ").

The Subpoena also seeks to unmask anonymous users without providing any connection between their purported conduct and the rationale Banco Azteca proffers in its Application for wanting to identify them. The Subpoena even seeks to unmask an anonymous user based on posts made in

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

2024, i.e., months after the posts that are purportedly the subject of the Mexican criminal matter. This is all against a backdrop of high-ranking Banco Azteca employees being recently implicated in a U.S. federal indictment, alleging they bribed a U.S. Congressman to further the bank's interests.

Put simply, the Subpoena raises significant concerns in the context of unmasking anonymous users and implicating First Amendment interests where those users were making statements of potentially public importance, and it should be quashed for several reasons.

*First*, Banco Azteca fails to satisfy the threshold conditions of § 1782. It makes no showing that the purported Mexican criminal proceedings are before a "tribunal," that a dispositive ruling in such a proceeding is "within reasonable contemplation," or that the information being sought will be "for use" in the Mexican proceeding. Specifically, there is no showing that the case is before a court that will decide the matter, as opposed to still being in the investigatory stage. There is also no connection between some of the anonymous users' posts and Banco Azteca's rationale underlying its Subpoena. This alone is sufficient to quash the Subpoena.

*Second*, Banco Azteca fails to satisfy the discretionary factors articulated in the Supreme Court's decision in *Intel*. The Subpoena directly implicates several, significant First Amendment concerns. It seeks to unmask an anonymous speaker who may be located in the United States, and seemingly has expressed political views contrary to Banco Azteca's ownership. It risks a chilling effect on other anonymous speakers at-issue in the Subpoena who have posted content on issues of public importance (i.e., the alleged health of a large financial institution) that, by unmasking them, could result in not only discouraging others from speaking, but also depriving U.S.-based listeners of their right to hear such speech. It fails to explain why, given these concerns, the procedure that exists for seeking evidence under these types of circumstances—MLAT—is seemingly not being pursued. It fails to explain why Banco Azteca is purporting to act as an investigator for Mexican authorities, without any indication of interest by those authorities in Banco Azteca's efforts here. It also fails to show that the criminal complaint in the Mexican proceeding could survive a motion to dismiss. All of these concerns lead to several *Intel* factors weighing in favor of quashing the Subpoena.

For these reasons as set forth more fully below, the Court should quash the Subpoena.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

## II.     STATEMENT OF ISSUE

Whether the Subpoena should be quashed based on Applicant's failure to satisfy the threshold conditions under § 1782, and the discretionary *Intel* factors weighing against enforcing the Subpoena.

## II.     FACTS

### A.     The X Platform

X Corp. operates X, a global communications platform through which over half a billion people share views and follow current events. X Corp. "believe[s] giving people choice in terms of how they represent themselves online enables them to express themselves and control their privacy." *See* Misleading and Deceptive Identities Policy, X Help Center (Apr. 2023), https://help.x.com/en/rules-and-policies/x-impersonation-and-deceptive-identities-policy. X Corp. therefore "allows the use of pseudonymous accounts, meaning an account's profile is not required to use the name or image of the account owner." *Id.*

### B.     Banco Azteca and Grupo Elektra

Applicant Banco Azteca is a prominent Mexican bank whose clients are, according to Banco Azteca, generally low-income households. App. Mem. at 3; *see also Combative Billionaire's Bank Accused of Bribing a Texas Democrat*, WSJ, May 8, 2024, https://www.wsj.com/world/americas/the-mexican-bank-behind-alleged-bribes-to-a-texas-democrat-4cf4cc17. Its parent company is Grupo Elektra S.A.B. de C.V. ("Grupo Elektra"), whose chair is Ricardo Salinas Pliego, a Mexican businessman known for his libertarian views and criticism of the left-leaning Mexican government. *Id.* Grupo Elektra and Banco Azteca are part of a conglomerate of businesses owned by Salinas Pliego, known as "Grupo Salinas." Grupo Salinas also includes a television network, TV Azteca; a professional football team, Mazatlán F.C.; an internet service provider, Telecosmo; and a motorcycle manufacturer, Italika.[1]

---

[1] *See Valor Economico*, Grupo Salinas https://www.gruposalinas.com/valor/valoreconomico; *see also ¿Quién es el verdadero dueño del equipo Mazatlán F. C.?*, El Ceo (May 12, 2023) https://elceo.com/negocios/quien-es-el-verdadero-dueno-del-equipo-mazatlan-f-c/. Of note, a recent U.S. federal indictment accuses high-ranking personnel from Banco Azteca of channeling $238,000 in bribes to a Texas congressman, disguised as consulting fees, and in efforts to further the bank's interests by influencing U.S. anti-money-laundering legislation. *U.S. v. Cueller, et al.*, No. 4:24-cr-00224, Dkt. 1 (S.D. Tx. Apr. 30, 2024); *see also Combative Billionaire's Bank Accused of Bribing a Texas Democrat*, WSJ, May 8, 2024, https://www.wsj.com/world/americas/the-mexican-bank-behind-alleged-bribes-to-a-texas-democrat-4cf4cc17.

### C.    The Alleged November 2023 Social Media Posts Criticizing Banco Azteca

On April 16, 2024, Banco Azteca submitted to this Court an *ex parte* application pursuant to 28 U.S.C. § 1782 (the "Application"), seeking leave to issue document subpoenas under Federal Rule of Civil Procedure ("Rule") 45 to X Corp., Meta, and Google. Banco Azteca explained in its Application that it is seeking information to identify certain individuals using accounts on those platforms, including X, so that the users can be named as defendants "in a foreign criminal proceeding in Mexico" based on statements they made using their accounts, i.e., so they could be criminally charged based on their speech. App. Mem. at 1.

Specifically, the Application claims that "[o]n or about late November 2023," anonymous posters on X, Facebook, and YouTube, orchestrated a "coordinated effort" to financially harm Banco Azteca and its leadership by falsely claiming that the bank faced imminent bankruptcy and encouraging a run on the bank. App. Mem. at 3-4. The Application states that Banco Azteca is financially stable and was not experiencing a bankruptcy crisis at the time of these posts. App. Mem. at 5-6. Banco Azteca claims that the posts caused "financial and reputational harm," as well as causing Banco Azteca to undertake "onerous and expensive" responses to regulatory scrutiny and negative exposure by the Mexican news media, including by seeking public confirmation of the bank's financial health and solvency. App. Mem. at 7, Ex. A, ¶ 10. The Application adds that the Governor of the Central Bank of Mexico affirmed the bank's solvency and financial health in December 2023. App. Mem. Ex. A ¶¶ 12-14 n.2 & 3.

### D.    Banco Azteca Purportedly Files a Criminal Complaint

Banco Azteca claims to have sent a letter to Meta and X Corp. on January 17, 2024, demanding they remove certain posts, and disable the related accounts used to publish those posts. App. Mem. at 8, Exs B & C. Banco Azteca's letter claimed that the accounts violated X Corp.'s policies and Mexican law, "including Section III of Article 254 of the Federal Criminal Code, which criminalizes false statements or news that may create economic disturbances in Mexico's domestic market." App. Mem. at 8, Ex. C ¶ 8. Interestingly, the January 17, 2024 Letter addressed to X Corp. lists several accounts on X that are *not* included in the Subpoena. Moreover, some of the accounts listed in the Subpoena here are *not* listed in that letter. *Compare* App. Mem. Ex. B *with* Subpoena.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

The Application claims that, on January 19, 2024, Banco Azteca filed a criminal complaint with the Public Prosecutor's Office in the State of Jalisco. App. Mem. at 8. It states the complaint "was registered under investigation folder number 5101/2024 of Agency 4 of Bulk Processing of the Public Prosecutor's Office of the State of Jalisco." App. Mem Ex. C ¶ 9. It also states Banco Azteca "ratified the criminal complaint and was recognized as the offending party." App. Mem. at 8.

The Application, however, does not attach any criminal complaint nor any evidence of statements made on X that are purportedly the subject of the criminal charges for "blackmail," including "statements made to the Applicant by individuals purportedly representing the alleged posters that they would take down the posts if the Applicant paid them." App. Mem. at 8, Ex. C ¶ 10.

Even assuming *arguendo* that such a criminal complaint was filed, the posture of the alleged Mexican criminal proceeding becomes murky based on the statements in the Application. The Application does *not* attach any filings or hearing transcripts from that purported criminal proceeding. Nor does it include any background information via a declaration from the prosecuting attorney. The Application nonetheless claims an "Investigating Police Officer" in the State of Jalisco—not a judge—issued demands to Facebook, TikTok, and X Corp. to provide user identification data for the accounts. The Application then confusingly states: "To date, neither the Applicant nor the Public Prosecutor's Office of the State of Jalisco have received notices of the request." App. Mem. at 9, Ex. C ¶ 16. It is unclear how the Jalisco police could issue such a demand, unbeknownst to or authorized by the prosecuting authorities.

The Application also claims that, in a hearing on February 6, 2024, a "Preliminary Criminal Judge" ordered Meta and X Corp. to remove posts made by ten account holders (only six of which are named in the Subpoena), and that notices of the order were sent "with the aid of the judicial authorities of Mexico City." App. Mem. at 9-10. No order or notices are attached to the Application.

The Application then makes a logical leap, stating that because Banco Azteca sent notices to X Corp. and the other platforms demanding removal of certain posts, it "exhausted its ability" to obtain the information sought in its Subpoena. App. Mem. at 10. That is inconsistent with the plain language of the information that Banco Azteca seeks here. Indeed, the discovery sought via the Subpoena concerns something different—i.e., the identifying information of account holders, not a request to

1    remove content.

2        Ultimately, the current status of the Mexican criminal case is entirely unclear. Banco Azteca

3    has not included any materials from that case. At this point, the matter still appears to be under

4    investigation by the State of Jalisco's prosecutor's office where Banco Azteca filed its criminal

5    complaint. But there is no evidence in this proceeding whether the Mexican authorities handling the

6    criminal case are even aware of the Application or Banco Azteca's efforts to obtain evidence from X

7    Corp. and the other platforms. This is concerning, particularly where, as here, the users that Banco

8    Azteca seeks to unmask seemingly use their accounts to disseminate content regarding political

9    matters in Mexico, and the Application makes no connection whatsoever between many of the users

10   and the allegations of false statements regarding Banco Azteca's finances.

11       **E.    Banco Azteca's Subpoena**

12       On April 16, 2024, Banco Azteca filed its Application. The Application, as discussed above,

13   offers only conclusory statements regarding how Banco Azteca envisions the Jalisco prosecutor may

14   use the discovery being sought in the Mexican criminal proceeding. It states that discovery "will assist

15   law enforcement efforts already underway by authorities in Mexico." Ex. C at ¶¶ 32-38. It also states

16   that Banco Azteca may use the information "to bring a *civil* case against the anonymous individuals,"

17   but it provides no additional details regarding such an allegedly contemplated civil proceeding,

18   including what claims may be brought or the status of efforts to bring a civil action. Ex. C at ¶ 33

19   (emphasis added).

20       The Court issued an Order on April 17, 2024, requiring that Banco Azteca and X Corp. meet

21   and confer regarding the Application, and then file a Joint Discovery Letter Brief by May 30, 2024.

22   ECF 5. Banco Azteca and X Corp. did that, with X Corp. providing several (non-exclusive) reasons

23   in the letter brief that the Application should not be granted. ECF 15. The Court did not rule on those

24   issues, and instead granted X Corp. the ability to object to the Subpoena and file this motion by July

25   30, 2024, which X Corp. is hereby doing to challenge Banco Azteca's Subpoena. ECF 18.

26       **F.    The X Account Holders Whose Identifying Information is Subpoenaed**

27       Here, Banco Azteca seeks to have X Corp. produce documents that would reveal information

28   about users, including potentially their identities, behind twelve accounts on X (collectively, the

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

"account holders"). It appears those account holders have been engaging in anonymous speech on X, and as part of that speech, raised concerns regarding Banco Azteca's financial health. Subpoena 1-7.

According to the Application, the account holders published several posts on X that were critical of Banco Azteca and Salinas Pliego, in what the Application characterizes as a coordinated attack intended to harm Banco Azteca and its affiliated companies, "out of political animus or otherwise." App. Mem. at 6. Broadly, the posts included with the Application state that Banco Azteca was "going bankrupt, would cease to exist in Mexico, and urged the public to withdraw their money." Subpoena at 3-4. The Application claims that these posts caused Banco Azteca to lose customers and 7% of its deposits, as well as cause "panic in the financial system." App. Mem. at 5-6.

Of note, X Corp. has checked IP addresses regarding recent use for the account holders. One of the account holders, @NortenaCatrina, based on IP addresses appears to be located in the United States. Decl. of Jolie Perla, ¶ 2. The remaining account holders' may be in Mexico based on the IP addresses associated with recent activity on those accounts. *Id.*

### 1.    @catrina_nortena

@catrina_nortena's account includes a bio that is translated as: "Massive Vote for Morena, for #PlanC and the Second Floor my Alternate Account is @Nortena Catrina."[2] For context, that statement indicates that @catrina_nortena supports the very political party that Banco Azteca's owner has repeatedly criticized. Indeed, Morena is a left-wing political party in Mexico founded by the current President of Mexico, Andrés Manuel López Obrador. *See ¿Cómo es el partido Morena, cuál es su ideología e historia en México?*, CNN Español (June 3, 2024), https://cnnespanol.cnn.com/2024/06/03/morena-como-partido-ideologia-historia-mexico-orix/.[3]

@NortenaCatrina, seemingly the alternate account of @catrina_nortena, also has a Spanish-

---

[2] @nortena_catrina, X (last visited July 29, 2024) https://x.com/catrina_nortena.

[3] "Plan C" refers to reforms proposed by Obrador pending in the Mexican Congress, including of the Mexican judiciary. Los claves para entender el Plan C de Lopez Obradór, El País (June 5, 2024), https://elpais.com/mexico/elecciones-mexicanas/2024-06-05/las-claves-para-entender-el-plan-c-de-lopez-obrador.html. The "Second Floor" refers to Claudia Sheinbaum, who in 2024 became the first female President of Mexico. Mexico elects its first female president, NPR (June 3, 2024), https://www.npr.org/2024/06/03/nx-s1-4989334/claudia-sheinbaum-poised-to-become-mexicos-first-female-president. Sheinbaum has referred to her campaign as the "segundo piso," i.e., the "second floor" of Obrador's platforms known as the "Fourth Transformation" of Mexico. Id.; see also ¿Qué es la cuarta transformación en México y qué plantea?, CNN Español (February 2, 2024) https://cnnespanol.cnn.com/2024/02/02/que-cuarta-transformacion-mexico-que-plantea-orix/.

MᶜDᴇʀᴍᴏᴛᴛ Wɪʟʟ & Eᴍᴇʀʏ LLP
Aᴛᴛᴏʀɴᴇʏs Aᴛ Lᴀᴡ
Lᴏs Aɴɢᴇʟᴇs

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

language bio that is translated in a way suggesting it has the same political leanings: "Progressive Ideas. I Fight and Support the 4T [the Fourth Transformation] to have a better [Mexican Flag emoji]. Let's fight as a team for the Well-being of Mexico…"[4]

The Application includes images of ten posts allegedly published by @catrina_nortena, translated to English. App. Mem. Ex. B. The images of those posts roughly fall into three categories: (a) posts criticizing Salinas Pliego and/or claiming he owed taxes to the United States and Mexico; (b) posts accusing various news outlets or employees of Salinas Pliego of lying about Banco Azteca's financial stability; and (c) posts on Banco Azteca's purported insolvency and/or encouraging individuals to withdraw money from their Banco Azteca accounts. *See* App. Mem. Ex. B.

### a.    Posts Criticizing Salinas Pliego and/or Claiming He Owed Taxes

- On November 27, 2023, @catrina_nortena posts: "Let's see how clients (now ex) of @Azteca Bank like @ELange47 just took out all his money, more than 88 thousand pesos, from that bank after the Suspicious Video of @ChapoyPati where it says that everything is "fine" with the bank. And that's after the Old Man #DonkeyTeeth @RicardoBSalinas could not pay the 488 million dollars he owes in New York plus the 25 thousand million pesos he owes in taxes, everything indicates that he lacks liquidity and that all his companies are about to fail..."[5]

- On or around November 27, 2023, @catrina_nortena links an article published by news outlet Marca, titled: "Rumors claim that Banco Azteca is bankrupt: data on its financial stability." *Rumores aseguran que Banco Azteca esta en uiebra: datos sobre su situacion financiera*, Marca    (November    27,    2023), https://www.marca.com/mx/actualidad/2023/11/27/6564e175ca47410a368b45b3.html. @catrina_nortena posted the following while linking the article: "#BancoAztecaEnQuiebra (Banco Azteca in Bankruptcy) First @ChapoyPati came out and now @marca comes out and tries to calm the rumors about the videos and testimonies that now say @BancoAzteca is in danger of bankruptcy over the debts that @RicardoBSalinas has in New York of 48 MDD and in Mexico of 25 thousand MDP he owes in Taxes. Where there is smoke, there is fire."[6]

---

[4] @NortenaCatrina, X (last visited July 29, 2024), https://x.com/NortenaCatrina.
[5] @catrina_nortena, X (November 27, 2023), https://x.com/catrina_nortena/status/1729183738624463153.
[6] App. Mem. Ex. B, Ex. 1 at p. 4. X Corp. could not locate a link to the post.

- On December 5, 2023, @catrina_nortena posts: "#BancoAztecaEnQuiebra (Banco Azteca in Bankruptcy) Here I leave you guys what is to me the best video about the Actual Situation of @BancoAzteca and the Old Man #DientesDeBurro (Donkey Teeth) @RicardoBSalinas, made by Omar-Educacion Fianciera. He is not someone pro 4T [referring to Obrador's "Fourth Transformation"], but rather someone who makes videos about investments, finance, stock market, etc. Make your own conclusions."[7]

- On December 5, 2023, @catrina_nortena posted: "#BancoAztecaEnQuebra (Banco Azteca in Bankruptcy) The 30th of November they sent an Account Embargo Notification to New #Elektra del Milenio SA de CV in Gaunajuato for not paying a fine from @Profeco [the Mexican Consumer Protection Agency] of $45,000 pesos. Neither @ElektraMx nor @BancoAzteca have liquidity to pay fines, rents nor to give more than 5,000 in cash to its clients… Here I'll leave you the link. Notificaestrados.guanajuato.gob.mx/estrados/."[8]

    **b.    Posts Accusing News Outlets or Employees of Salinas Pliego of Lying about Banco Azteca's Financial Stability**

- On November 29, 2023, @catrina_nortena replies to a post by Lilly Téllez, a senator and former journalist for TV Azteca. @catrina_nortena states "#BancoAztecaEnQuiebra (Banco Azteca in Bankruptcy) Now the Old Man #DientesDeBurro (Donkey Teeth) @RicardoBSalinas sends his EMPLOYEE, Ms. High School Dropout @LillyTelez to defend @BancoAzteca. First it was @ChapoyPati, the @GarciaPosti and now the Traitor of the Senate. Where there is smoke, there is fire…"[9]

---

[7] @catrina_nortena, X (Dec. 5, 2023) https://x.com/catrina_nortena/status/1732091661977592161?s=46.

[8] @catrina_nortena, X (December 5, 2023), https://x.com/catrina_nortena/status/1732193350550180052. For additional context, in November 2023, news outlets reported that Salinas Pliego's TV Azteca "failed to reach agreement with bondholders in the United States who are owed tens of millions of dollars in past-due payments." Mexican magnate's firm says it's too poor to pay U.S. bondholders the tens of millions owed, AP (November 14, 2023) https://apnews.com/article/mexico-indebted-magnate-bondholders-530ee902165af9ef1f64ffba9539e514.    Additionally, Salinas Pliego is often mentioned in the news for not paying taxes. See, e.g., Santiago Pérez, Mexican Tycoon's Retain Chain Ordered to Pay $1 Billion in Back Taxes, WSJ (June 13, 2024) https://www.wsj.com/world/americas/mexican-tycoons-retail-chain-ordered-to-pay-1-billion-in-back-taxes-d7b6e565; Michael O'Boyle, Mexico Tycoon's Tax Case in Top Court, with $2 Billion At Stake, Bloomberg (June 22, 2021), https://www.bloomberg.com/news/articles/2021-07-22/mexico-billionaire-salinas-s-tax-case-gets-supreme-court-review. Moreover, the claim that Grupo Salinas owes unpaid taxes is so commonplace that the welcome screen for gruposalinas.com links to a Spanish-language article whose title translates to "The Truth About our Tax Affairs," which seeks to dispel the rumor that Grupo Salinas owes unpaid taxes. See https://www.gruposalinas.com/en (last visited July 24, 2024).

[9] @catrina_nortena, X (Nov. 29, 2023), https://x.com/catrina_nortena/status/1729981589768098161.

X CORP.'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA – 9

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

- On December 1, 2023, @catrina_nortena posts: "#BancoAztecaEnQuebra (Banco Azteca in Bankruptcy) Now the Old Man #DientesDeBurro (Donkey Teeth) sends his EMPLOYEE @Flor_Rubio, expert in GOSSIP, to defend the bankruptcy of @BancoAzteca. First it was @Chapoy Pati, then @GarciaPosti, @Lilly Tellez and now the "financial expert." If it was lies or they weren't worried, they wouldn't be coming out every day defending the losing of accounts and the leaking of money from their bank…"[10]

### c. Posts Claiming Banco Azteca Would Go Bankrupt and Encouraging People to Withdraw Money From The Bank

- On December 7, 2024 @catrina_nortena posts: "@Azteca Bank is keeping the REMITTANCES of its clients who come from the US[.] Housewife tells how they illegally blocked her account and won't let her withdraw the money her husband sends from the US. She shows all the things they are asking from her to unblock it and advise others to withdraw their money before the same thing happens to them..."[11]

- On December 1, 2023, @catrina_nortena posts: "Let's see how @BancoAzteca STEALS with REMITTANCES sent from EU to its clients in Mexico."[12]

- On December 4, 2023, @catrina_nortena posts: "#BancoAztecaEnQuiebra (Banco Azteca in Bankruptcy) @BancoAzteca NO LONGER EXISTS in Pero and now it's called @AlfinBank And soon it will no longer exist in Mexico…"[13]

- On December 5, 2023, @catrina_nortena posts: "#BancoAztecaEnQuebra (Banco Azteca in Bankruptcy) This morning the Shares of @ElektraMx are again in FREEFALL after the rumors that @BancoAzteca BANKRUPTS its financial division."[14]

### 2. @Albert_Rudo

The Application identifies one post by @Albert_Rudo. See App. Mem. at 6 n.4. That post appears to have been removed (if it ever existed), and the Application does not provide the full purported post, nor does it provide the date of the post. @Albert_Rudo has 3,600 followers on X, and

---

[10] @catrina_nortena, X (Dec. 1, 2023), https://x.com/catrina_nortena/status/1730605659127714169.
[11] @catrina_nortena, X (Dec. 7, 2023), https://x.com/catrina_nortena/status/1732805294533845434.
[12] @catrina_nortena, X (Dec. 1, 2023), https://x.com/catrina_nortena/status/1730766642462794110.
[13] @catrina_nortena, X (Dec. 4, 2023), https://x.com/catrina_nortena/status/1731693853176897706.
[14] @catrina_nortena, X (Dec. 5, 2023), https://x.com/catrina_nortena/status/1732061273251086771.

X CORP.'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA – 10

the account's bio states: "I am always on the side of the people of Mexico and I never tolerate injustice. Yes you are, corrupt, a liar and a miserable traitor. You are finished Prianista!".[15] "Prianista" refers to the PRI, a center-right political party in Mexico. *See, e.g.,* https://www.britannica.com/topic/Institutional-Revolutionary-Party.

### 3.    @AntiTelevisaMx

The Application identifies one post by @AntiTelevisaMx. See App. Mem. at 6 n.5. The post is dated January 22, 2024—months after the November 2023 run on Banco Azteca alleged in the Application and after Banco Azteca initiated the Mexican criminal proceeding on January 19. This post states: "The crime of FINANCIAL TERRORISM with which the criminal @RicardoBSalinas intends to sue those who talk about the bankruptcy of Banco Azteca, IT DOES NOT EXIST in the penal code. The crime that does exist is tax evasion and Salinas Pliego evades 25 thousand million pesos. JAIL TO SALINAS NOW!"[16]

@AntiTelevisaMx has approximately 55,400 followers on X. The account's bio states: "Marcos Alexander . . . Human too human | Cult poster | Content Creator | Left [emoji] |Anti-Rightist | AntiReligion | AntiTelevisaMx."[17]

### 4.    The Remaining Eight (8) Accounts Subpoenaed

The Subpoena seeks identifying information for eight (8) other account holders:

1.    @RedAMLOmx

2.    @varamburucano

3.    @sandyaguilera

4.    @FreddyOliviery

5.    @jgnaredo

6.    @alvaro_delgado

7.    @fisgonmonero

8.    @PonchoGutz

The Application provides no detail on why it seeks information from X Corp. regarding these

---

[15] @albert_rudo, X (last visited July 29, 2024), https://x.com/Albert_Rudo.
[16] @antitelevisamx, X (Jan. 22, 2024), https://x.com/AntiTelevisaMx/status/1749425501977158131.
[17] @antitelevisamx, X (last visited July 29, 2024) https://x.com/AntiTelevisaMx.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

account holders. It merely states in a conclusory fashion that these account holders "worked in coordination" to "spread content over X" that allegedly damaged Banco Azteca. App. Mem. at 6. The Application does *not* identify any specific posts by these account holders, or the date of any posts. One of the accounts, @sandyaguilera (referred to in another part of the Application as @sandyatzuilera), appears to have been removed or no longer exists. The remaining accounts appear to be prominent voices on the left in Mexico. All contain bios expressing support for Morena, Obrador, Scheinbaum, Marxism, or some combination thereof.[18] Most have a high number of followers: @RedAMLOmx has around 190,000 followers, @jgnaredo has around 245,500 followers, @alvaro_delgado has over 472,300 followers, @fisgonmonero has over 269,100 followers, and @PonchoGutz has nearly 200,000 followers.

## G.    Information Requested in the Subpoena

For all twelve account holders, the Subpoena seeks documents sufficient to show the following information ever registered with the account "or any other associated account." This includes highly personal information, such as credit card numbers, phone numbers, and physical addresses:

        a.     All names;

        b.     All addresses;

        c.     All e-mail addresses;

        d.     All telephone numbers;

        e.     All names, addresses and credit card numbers of all credit cards registered (but not expiration date, or card validation code); and

        f.     All names, addresses, e-mail addresses, telephone numbers, and names of the payment methods (such as PayPal), for all non-credit card payment methods registered.

Additionally, the Subpoena seeks "Documents sufficient to show all access log (dates, times, IP addresses, port numbers, and destination IP addresses)."

---

[18] @redAMLOmx, X (last visited July 29, 2024), https://x.com/RedAMLOmx; @varamburucano, X (last visited July 29, 2024), https://x.com/varamburucano; @FreddyOliviery, X (last visited July 29, 2024), https://x.com/FreddyOliviery; @jgnaredo, X (last visited July 29, 2024) https://x.com/jgnaredo; @alvaro_delgado, X (last visited July 29, 2024) https://x.com/alvaro_delgado; @fisgonmonero, X (last visited July 29, 2024) https://x.com/fisgonmonero; @PonchoGutz, X (last visited July 29, 2024), https://x.com/PonchoGutz.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

### III.    STANDARD OF REVIEW

28 U.S.C. § 1782 authorizes U.S. courts to order discovery in aid of a foreign proceeding only where an applicant shows that the requested materials are "for use in a proceeding before a foreign or international tribunal." 28 U.S.C. § 1782. Section 1782 has three threshold requirements: (1) the person or entity from whom discovery is sought resides in or can be found in the court's district; (2) the application is made by a foreign or international tribunal or "any interested person;" and (3) the discovery is "for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." *CFE Int'l LLC v. Antaeus Grp. LLC*, No. 1:22-CV-365-LY-ML, 2022 WL 17731821, at *5 (W.D. Tex. Aug. 26, 2022), *report and recommendation adopted*, No. 1:22-CV-00365-LY-ML, 2022 WL 19569581 (W.D. Tex. Dec. 6, 2022) (citing 28 U.S.C. § 1782). Satisfying the threshold requirements merely "authorizes, but does not require" a court to permit discovery, which is wholly discretionary. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255 (2004).

The Supreme Court in *Intel* identified four non-exhaustive factors to guide a court's exercise of its discretion in granting discovery: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature and character of the foreign proceeding and the receptivity of the foreign government, court, or agency to federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the requests are unduly intrusive or burdensome. *CFE Int'l LLC* 2022 WL 17731821, at *4 (citing *Intel Corp.*, 542 U.S. at 264).

Moreover, courts are not limited to the four discretionary factors discussed in *Intel* when considering whether to permit discovery under Section 1782. Courts "should also take into account any other pertinent issues arising from the facts of a particular dispute." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018); *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *4 (N.D. Cal. Jan. 17, 2023) (holding that, in Section 1782 case, "the Special Master did not err in considering additional factors he thought appropriate" beyond the *Intel* factors).

Here, the Application should be rejected for not meeting all three threshold requirements under

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1    Section 1782, and not satisfying the *Intel* factors, as set forth below.

2    **IV.   ARGUMENT**

3        **A.    The "For Use" Threshold Requirement of § 1782 Is Not Met**

4        Section 1782 requires a party to demonstrate that the discovery sought will be "for use in a

5 proceeding in a foreign or international tribunal, including criminal investigations conducted before

6 formal accusation." 28 U.S.C. § 1782. To satisfy this factor, courts "require that such proceeding are

7 more than speculative, meaning that there are reliable indications of the likelihood that proceedings

8 will be instituted within a reasonable time." *In re Campuzano-Trevino*, No. CV SAG-22-00365, 2022

9 WL 570254, at *4 (D. Md. Feb. 24, 2022). Banco Azteca has failed to satisfy this threshold condition.

10        **1.    The Application Fails To Demonstrate a "Tribunal" Under § 1782**

11        A federal district court in the Southern District of New York found that Section 1782's

12 threshold condition was not met where the applicant merely alleged, without more, that he "filed a

13 criminal complaint seeking an investigation," that there were also "various criminal investigations"

14 against him personally, and that a judge issued a warrant for his arrest. *Matter of Application for an*

15 *Ord. Seeking Discovery Under 28 U.S.C. § 1782*, No. 24 MISC. 152 (GHW) (GS), 2024 WL 2883293,

16 at *1-3 (S.D.N.Y. May 16, 2024), *report and recommendation adopted sub nom. Matter of Ord.*

17 *Seeking Discovery Under 28 U.S.C. § 1782*, No. 1:24-MC-152-GHW, 2024 WL 2883091 (S.D.N.Y.

18 June 5, 2024). The court in reaching that conclusion  reasoned that a "tribunal" leading "a criminal

19 investigation conducted before formal accusation" under Section 1782 must, at minimum, be an

20 "adjudicatory body;" "a prosecuting office that lacks adjudicative authority" is insufficient. *Id.*

21        The same should hold true here. The Mexican criminal proceeding purportedly initiated by

22 Banco Azteca appears to remain in investigatory stages with the prosecutor's office in Jalisco. Indeed,

23 Application alleges that the complaint "was registered under ***investigation*** folder number 5101/2024

24 of Agency 4 of Bulk Processing of the Public Prosecutor's Office of the State of Jalisco." App. Mem.

25 Ex. C ¶ 9 (emphasis added). Moreover, the assertion in the Application that a "Preliminary Criminal

26 Judge" granted Banco Azteca's request to have Meta and X Corp. remove posts for ten accounts does

27 *not* prove that an impartial judge is overseeing the criminal investigation as required under § 1782. It

28 merely shows, at most and even assuming *arguendo* that the Application's representation is accurate,

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

that a preliminary judge issued a takedown order for user-generated content—which would be invalid under U.S. law in any event. *See, e.g.*, *Weitsman v. Levesque*, No. 19-cv-461-JLS (AHG), 2020 WL 6825687, at *18 (S.D. Cal. Nov. 20, 2020) (in relying on the Communications Decency Act ("CDA"), § 230, declining to order third party social media companies to "take action against Defendant should he fail to remove material in accordance with the injunction"); *Hassell v. Bird*, 5 Cal. 5th 522, 546 (2018) (under CDA § 230, Yahoo could not be ordered to remove user generated content). Such a takedown order from a "preliminary judge" does not establish that the alleged criminal proceeding is beyond the investigatory stage and before a court.

Put simply, Banco Azteca has provided no evidence of the Mexican criminal proceeding being held before a "tribunal," and the Application should fail on this basis alone.

### 2. The Application Fails to Demonstrate a Dispositive Ruling is "Within Reasonable Contemplation" as Required by Section 1782

An application must also prove that "a dispositive ruling is within reasonable contemplation" to satisfy Section 1782's threshold "for use" requirement. *Intel*, 542 U.S. at 259. In *CFE International*, a private Mexican company filed an *ex parte* application under section 1782 seeking discovery from U.S. companies. The company represented that the discovery was "in aid of a Mexican criminal investigation" concerning a third party. *CFE Int'l LLC*, 2022 WL 17731821, at *1. The application in that matter represented that "the Office of the Mexican Special Anti-Corruption Prosecutor in Mexico City opened an investigation" and that the Mexican Attorney General "asked a court in Mexico to hold a hearing to allow prosecutors to present an *imputación* . . . in order to initiate a criminal case." According to the applicant, "once the *imputación* has been presented and accepted by the judge, the [Attorney General] can continue to investigate for six months or more, after which it will decide to proceed to trial." *Id.*

The court addressing the Section 1782 petition, however, noted that the applicant "did not attach the purported criminal complaint and provided no other primary documentation describing the current status or scope of the Mexican Investigation that would enable the court to independently assess the proceedings." *Id.* at *5. Because the application had a "dearth of concrete information about the subject matter, scope, and status of the Mexican Investigation," it was too "difficult" to conclude

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

"that a dispositive ruling is within reasonable contemplation, as required by the Supreme Court in *Intel*." *Id.*

The *CFE International* court also found that the applicant failed to carry its burden to demonstrate that the discovery it sought was "for use" in the Mexican investigation because the subpoena sought evidence broader than the alleged scope of the Mexican investigation. *Id.* at *6. The court characterized "a large portion of the requests" as "the very kind of fishing expedition district courts are counseled to guard against." *Id.* The court also noted that there was no indication that Mexican authorities requested the private company's assistance in collecting evidence in aid of the investigation, which "detracts from the likelihood that the discovery sought . . . is needed or useful to the Mexican Investigation." *Id.*

The same should hold true here. The Application's vague description of the Mexican criminal proceeding's status fails to satisfy this threshold condition. The Application provides little detail regarding the Mexican government's purported investigation. It does not state how long the investigation will take, who is leading the investigation, or any "concrete information about the subject matter, scope, and status of the Mexican Investigation." *CFE Int'l LLC*, 2022 WL 17731821, at *5. Nor has Banco Azteca attached the criminal complaint, hearing transcripts, or any other documentation that could "enable the court to independently assess the proceedings." *Id.* Because of the application's "dearth of concrete information," and just as in *CFE Int't*, this Court cannot conclude that a dispositive ruling is within reasonable contemplation, as required to satisfy Section 1782's third threshold condition.

### 3.    The Application Seeks Discovery Not "For Use" in Mexican Criminal Case

The Application fails to demonstrate that the discovery sought is "for use" in the alleged Mexican criminal proceeding. The Application fails to provide links or dates to many of the other posts at issue and fails to identify specific posts that are allegedly the subject of the criminal proceeding for many of the account holders whose information is subpoenaed. The Subpoena also seeks information about at least one user based on a post from January 22, 2024 (App. Mem. at 6 n.5)—long after the alleged run on the bank that forms the basis of the Mexican criminal proceeding (App. Mem. at 3-4), and even after Banco Azteca allegedly initiated the criminal proceeding. App. Mem. at 8. This

casts doubt on whether the Application seeks this discovery "for use" in the Mexican criminal proceeding or is instead going on a "fishing expedition district courts are counseled to guard against." *CFE Int'l LLC*, 2022 WL 17731821, at *5.

As further evidence of a potential fishing expedition, the Application mentions that the information sought would form the basis of Banco Azteca's own *civil* suit. App. Mem. Ex. C at § 33. Banco Azteca also asserted this in the Joint Discovery Letter Brief filed on May 30, 2024. As an initial matter, such a hypothetical civil suit—the details of which are entirely unknown—is far too "speculative" to meet the threshold requirement of Section 1782. *In re Campuzano-Trevino*, No. CV SAG-22-00365, 2022 WL 570254, at *4 (D. Md. Feb. 24, 2022) (threshold conditions of Section 1782 not met where an applicant "points to a single sentence in his declaration as proof that his claim is reasonably contemplated."). Moreover, Banco Azteca may be seeking information in this Subpoena that is irrelevant to the criminal suit, but rather is sought to develop a yet-to-be-filed civil cause of action against the account holders or for some other unspecified, improper purpose, such as targeting or doxxing the account holders for their political beliefs or affiliations with the Morena political party.

For these reasons, the Application falls far short of the threshold conditions of Section 1782 and X Corp.'s Motion to Quash may be granted on this basis alone.

### B.   *Intel*'s Discretionary Factors Weigh in Favor of Quashing the Subpoena

*Intel* factors one, two, and four also weigh in favor of quashing Banco Azteca's Subpoena.

#### 1.   *Intel* Factor One Weighs in Favor of Quashing the Subpoena

*Intel* factor one states that a court must determine whether the discovery sought is within the foreign tribunal's jurisdictional reach and, thus, accessible without Section 1782 aid. *Intel*, 542 U.S. at 241. Federal district courts have held that first factor weighed against granting an application where a country's criminal authorities have the option to proceed with the MLAT process, but choose not to. *In re Choi*, No. 5:24-MC-80043-EJD, 2024 WL 1120130, at *2 (N.D. Cal. Mar. 14, 2024). Mexico is party to an MLAT that gives its criminal authorities the ability to seek information from X Corp. for criminal investigations. *See* Mut. Legal Assistance Treaties of the U.S., U.S. DEPT. OF JUSTICE (April 2022), available at https://www.justice.gov/d9/pages/attachments/2022/05/04/mutual-legal-assistance-treaties-of-the-united-states.pdf; S. Treaty Doc. No. 100-13 (Dec. 9, 1987).

X CORP.'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA – 17

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

The MLAT process provides vital safeguards to protect entities from questionable criminal proceedings or investigations. MLATs with foreign countries enable law enforcement "to obtain evidence for criminal investigations, prosecutions, and proceedings after the [DOJ] reviews the discovery requests." *In re Application of Banco Mercantil de Norte, S.A.*, 2023 WL 6690708, at *8 and n.4 (E.D. Va. Oct. 12, 2023) (petition not based predominantly on criminal proceeding). That "assures that the U.S. government's expertise and analytic rigor is applied to the application, including to assure that the discovery is not sought for ulterior (nonprosecutive) ends." *Id.*; *In re Choi*, 2024 WL 1120130, at *8 ("[W]ho knows what safeguards [] might apply in a criminal investigation when an agency uses its ordinary investigative tools … .").

Here, the safeguards of DOJ review are particularly important. As above, the Subpoena seeks to unmask anonymous users, many of whom hold themselves out as using their accounts for political speech, including favoring a political party that is regularly criticized by Banco Azteca's owner. Banco Azteca purportedly is seeking to have those users held criminally liable in a foreign jurisdiction for their public speech about the purported financial solvency of a large well-known financial institution in Mexico (certainly something that could be an issue of public importance). Banco Azteca itself appears embroiled in political turmoil given the recent federal indictment involving one or more of its high-ranking personnel, who were allegedly engaged in bribery of a U.S. Congressman, aimed at advancing the bank's agenda in the US. Moreover, it is entirely unclear if Mexican authorities investigating the allegations are aware of or support Banco Azteca's efforts here.

Where Banco Azteca is seeking to unmask anonymous users to face criminal charges abroad, including one user who may be located in the United States, it is particularly important for the DOJ to assess such requests, which Mexican criminal authorities can make via standard MLAT process. S. Treaty Doc. No. 100-13 (Dec. 9, 1987). The Application nevertheless fails to explain why that has not been pursued or even considered. *See* Decl. of Jon Hawk ¶ 3.

Put simply, MLAT is the more appropriate procedure, under these potentially delicate and complicated circumstances. This factor thus weighs in favor of quashing the Subpoena.

### 2. *Intel* Factor Two Weighs in Favor of Quashing the Subpoena

The second *Intel* factor requires the court to "take into account the nature of the foreign

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. The *CFE International* court found this factor weighed against granting the application where the company seeking the subpoena "wants to act as an investigator for the Mexican authorities against the entities that it wants the Mexican authorities to charge." *CFE Int'l LLC*, 2022 WL 17731821, at *8; *see also In re Application of O2CNI Co., Ltd.*, 2013 WL 4442288, at *8 (N.D. Cal. Aug. 15, 2013) (applicant "wants to act as investigator for the [] authorities against the entities that it wants the [] authorities to charge[.]"). In addition, the *CFE International* court noted the applicant "could not explain why it was so intent on gathering [] documents itself . . . without any indication of interest in the Mexican authorities." *Id.* Lastly, the court noted that "[i]f Mexican authorities want information from respondents, they have ample means to request such evidence directly." *Id.*

Here, just as in *CFE International*, Banco Azteca is acting as a fact-finding investigator for Mexican prosecutors against the account holders "that it wants the Mexican authorities to charge." *Id.* at *8. The Application is bereft of facts describing the Mexican authorities' viewpoint on the discovery sought in the Subpoena, making it impossible to adequately discern the "character of the proceedings underway abroad." *Intel*, 542 U.S. at 264. This factor also weighs in favor of quashing the Subpoena.

### 3.    *Intel* Factor Four Weighs in Favor of Quashing the Subpoena

The fourth *Intel* factor requires the court to determine whether the Subpoena is unduly intrusive or burdensome. *Intel*, 542 U.S. at 264-67. In the context of Section 1782 discovery requests that seeks to unmask anonymous speakers, courts further evaluate the following sub-factors under *Intel* factor number four: whether the petition (1) identifies the missing defendant with sufficient specificity such that the court can determine that it is a real person subject to a lawsuit; (2) identifies all previous steps taken to locate and identify the elusive defendant; (3) demonstrates that the action against the defendant can withstand a motion to dismiss; and (4) proves that the discovery is likely to lead to the identification of the defendant such that service of process would be possible. *Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, 2021 WL 4124216, at *3 (N.D. Cal. Sept. 9, 2021). If an applicant satisfies all four good cause factors, the court must then also consider the potential chilling effect on First Amendment rights of ordering disclosure of an anonymous speaker's identity. *Id.*

X CORP.'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA – 19

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

### a.    The Application Fails to Demonstrate the Alleged Criminal Proceedings Could Withstand a Motion to Dismiss

The Petition conspicuously fails to articulate how the purported Mexican criminal proceeding could survive a motion to dismiss. App. Mem. at 21. That is fatal. *Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-MC-80102-DMR, 2021 WL 4124216, at *4 (N.D. Cal. Sept. 9, 2021); *In re Hoteles City Express*, 2018 WL 3417551, at *3 (N.D. Cal. July 13, 2018). In *Tokyo University of Social Welfare*, the court found the Fourth *Intel* factor weighed in favor of quashing a subpoena where the applicant's attorney "offers an opinion as a Japanese lawyer that the Subject Tweet was posted for harassment purposes and constitutes defamation under Japanese law." *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *4. The court found this opinion was "entirely conclusory" and failed to explain how the tweets were defamatory or false. *Id.* at *5. The same holds true here.

The Application offers a similarly conclusory statement—"[t]he facts alleged herein would be sufficient to withstand a Motion to Dismiss in this Court and under Mexican law." App. Mem. at 21. That fails to explain *how* the facts would survive a motion to dismiss under Mexican or even U.S. law. Instead, the Application points to the alleged investigation by "Mexican law enforcement authorities" in efforts to demonstrate the case could withstand dismissal. App. Mem. at 21. That is insufficient.

Simply because Mexican prosecutors have commenced an "investigation" does not mean that Banco Azteca's alleged complaint would survive a motion to dismiss. Applying the Application's logic to U.S. law would mean that any whistleblower case brought by a relator under the False Claims Act would automatically survive a motion to dismiss simply because prosecutors must investigate the case's merits. And although the Application sheds no light on procedural standards in Mexican criminal law, it is difficult to believe that, in a country where *any* individual or company may initiate a criminal complaint, mere investigation proves that the case could survive dismissal.

### b.    The Application Raises First Amendment Concerns

A "request for identifying information" that undermines First Amendment protections "is unduly burdensome under *Intel*." *In re PGS*, 2018 WL 6311407, at *6. The right to speak anonymously is an essential component of the free speech protected by the First Amendment. Courts routinely hold applicants to a high standard before enforcing subpoenas that would unmask anonymous speakers like

the account holders, because granting a discovery order that burdens anonymous speech would circumvent "[t]he policy of the First Amendment," which "favors dissemination of information and opinion." *Bigelow v. Virginia*, 421 U.S. 809, 829. As one court observed in the § 1782 context, "the principles underlying the First Amendment may counsel a court of the United States against exercising its discretion to aid in punishing speech that would be protected in this country." *In re Plan. & Dev. Of Educ., Inc.*, 2022 WL 228307, at *4 n.3 (N.D. Cal. Jan. 26, 2022).

Courts in the Ninth Circuit typically apply the test set forth in *Highfields Capital Management, L.P. v. Doe*, which applies subpoenas brought under Section 1782 and requires the applicant to present a "real evidentiary basis" for the claims it seeks to assert. 385 F. Supp. 2d 969, 975-967 (N.D. Cal. 2005). If the applicant does so, the court must determine whether "enforcing the subpoena would cause relatively little harm to the defendant's First Amendment and privacy rights and that its issuance is necessary to enable plaintiff to protect against or remedy serious wrongs." *Id.*

As above, the Application does not provide any "real evidentiary basis" for the claims purportedly being asserted in Mexico, including not against the account holder (@catrina_nortena) who appears to be located in the United States. That factor is thus not satisfied, and the analysis should end there. But even assuming *arguendo* that a "real evidentiary basis" were shown, the Court should conclude that unmasking the anonymous account holders would harm First Amendment rights.

### c.    The Subpoena Would Harm U.S.-Based Listeners

Here, the Subpoena would cause significant harm to the First Amendment rights of U.S. based listeners. Decisions of the Supreme Court and the Ninth Circuit firmly establish that curtailing speech by noncitizens abroad implicates the First Amendment rights of the U.S.-based listeners.

In *Lamont v. Postmaster General of U.S.*, the Supreme Court held the First Amendment barred the postal services from holding back "communist political propaganda" sent from abroad and imposing affirmative obligation on addressees within the United States to request in writing that the mail be delivered. 381 U.S. 301, 302, 306-307 (1965). The Court emphasized federal agencies could not "regulate the flow of mail" so as to "control the flow of ideas to the public." *Id.* at 306. Key to the Court's holding was that the regulation would likely cause addressees "to feel some inhibition" in sending for the literature, which underscored that the regulation was "at war with the uninhibited,

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

robust, and wide-open debate and discussion that are contemplated by the First Amendment." *Id.*

Similarly in *Thunder Studios, Inc. v. Kazal*, the Ninth Circuit held that the First Amendment protected the speech and speech-related conduct of noncitizens that took place in the United Arab Emirates and Australia. 13 F.4th 736, 740-744 (9th Cir. 2021). The Court emphasized that "domestic listeners" have the right to "receive speech from foreign speakers." *Id.* at 744. It then held that foreign speakers themselves (not just the domestic listeners) were "protected under the First Amendment" because their speech was "directed at and received by California residents." *Id.*

The same should hold true here. Many of the account holders have a large following that likely includes many U.S.-based listeners. Moreover, all of the account holder's bios demonstrate that the focus of their accounts concerns political matters and left-wing beliefs. The account holders thus disseminate political speech that is core to the First Amendment's purpose, and the U.S.-based public's right to hear that speech would be burdened if the account holders' speech was chilled. That is a significant First Amendment concern as recognized by the case law cited above, and counsels for denying the Application, particularly under the circumstances as set forth above.

      **d.**    **Unmasking Anonymous Users Who are Noncitizens Living Abroad Burdens the Right of Platforms to Make First Amendment-Protected Editorial Decisions**

Again, First Amendment concerns cannot be brushed aside, particularly considering that one of the account holders may be located in the United States. Nonetheless, even for account holders who may be living abroad, X Corp. has First Amendment rights that should not be infringed.

"First Amendment protection extends to corporations" like X Corp. that are based in the United States. *Citizens United v. FEC*, 558 U.S. 310, 342 (2010); *see also Twitter, Inc. v. Garland*, 61 F.4th 686, 711 (9th Cir. 2023) (discussing "Twitter's First Amendment rights"). And the exercise of "editorial control and judgment" by such corporations is protected by the First Amendment. *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974). As the Supreme Court has explained, "[t]he choice of material to go into a newspaper . . . and treatment of public issues and public officials— whether fair or unfair—constitute the exercise of editorial control and judgment" protected by the First Amendment. *Id.* "[D]ecisions about what speech to permit, disseminate, prohibit, and deprioritize— decisions based on platforms' own particular values and views—fit comfortably within the Supreme

McDERMOTT WILL & EMERY LLP<br/>ATTORNEYS AT LAW<br/>LOS ANGELES

1  Court's editorial-judgment precedents." *NetChoice, LLC v. Attorney General*, 34 F.4th 1196, 1213

2  (11th Cir. 2022), *cert. granted sub nom. Moody v. NetChoice, LLC*, 2023 WL 6319654.

3       X Corp.'s decision to allow the account holders and others to post content anonymously on its

4  platform is a paradigmatic editorial decision protected by the First Amendment. A platform like X that

5  chooses to cultivate anonymous content, including to enable users to exercise free speech, is making

6  a "judgment about whether and to what extent it will publish information to its users—a judgment

7  rooted in the platform's own views about the sorts of content and viewpoints that are valuable and

8  appropriate for dissemination on its site." *NetChoice*, 34 F.4th at 1210.

9       Infringing X Corp.'s rights in this context will have serious negative repercussions. Users who

10  know that a platform may be compelled in the future to identify them without rigorous procedural

11  safeguards will be less likely to speak anonymously in the present. *See John Doe No. 1 v. Reed*, 561

12  U.S. 186, 195-196 (2010). It follows that a standard for unmasking speakers under which platforms

13  cannot reasonably assure their users of anonymity therefore creates an "intrusion into the function of

14  editors." *See Tornillo*, 418 U.S. at 258. A standard that functionally eliminates platforms' ability to

15  disseminate anonymous speech also contravenes the "fundamental rule of protection under the First

16  Amendment, that a speaker has the autonomy to choose the content of his own message," including

17  "those choices of content that in someone's eyes are misguided, or even hurtful." *Hurley v. Irish-Am.*

18  *Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573-574 (1995).

19       These concerns make it appropriate to quash the Subpoena. Indeed, requiring X Corp. to

20  produce information potentially unmasking the anonymous account holders—particularly under the

21  unique and delicate circumstances of this matter—would undermine X Corp.'s ability to assure its

22  users of their anonymity, and thus unduly interfere with X Corp.'s function as an editor.

23       **e.    The Application Raises First Amendment Concerns Because the**
24       **Subpoena Would Chill the Speech of Others Inclined to Post About**
        **Important Public Issues**

25       The Ninth Circuit has recognized that "the ability to speak anonymously on the Internet

26  promotes the robust exchange of ideas and allows individuals to express themselves freely without

27  'fear of economic or official retaliation . . . [or] concern about social ostracism.'" *In re Anonymous*

28  *Online Speakers*, 661 F.3d at 1173 (quoting *McIntyre v. Ohio Elections Commission*, 514 U.S. 334,

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

341-342 (1995)). Anonymity plays a critical role in the political arena. *McIntyre*, 514 U.S. at 342-343 ("[E]ven in the field of political rhetoric . . . the most effective advocates have sometimes opted for anonymity."). Data reveals that a clear majority of Internet users surveyed view anonymity on the Internet as vital, and that many have taken advantage of opportunities to remain anonymous online. *See* Rainie et al., Anonymity, Privacy, and Security Online, at Part 1, Pew Research Center (Sept. 5, 2013), https://www.pewresearch.org/internet/2013/09/05/anonymity-privacy-and-security-online. Anonymity on the internet can create space for activism and the exchange of political ideas and criticisms. Where users cannot count on anonymity, these vital outlets are compromised.

Here, if X Corp. were required to produce the information sought, there would be significant risk that other users are less likely to speak freely on issues of public importance (e.g., the fiscal health of large financial institutions), in light of risk that they too could be unmasked, and even potentially face criminal charges abroad. The Court should quash the Subpoena to avoid this chilling effect on anonymous users who are using their accounts for political purposes, and to publicly criticize what they believe are financial risks to depositors.

## V.    CONCLUSION

For the foregoing reasons, X Corp. respectfully requests that its Motion to Quash Banco Azteca's Subpoena be granted, and that the Subpoena be quashed.[19]

Dated: July 30, 2024                          **McDermott Will & Emery LLP**

By:    *J. Jonathan Hawk*
        J. Jonathan Hawk

---

[19] If X Corp.'s Motion to Quash is denied, X Corp. respectfully requests that the Court allow X Corp. to enter into a protective order barring certain Subpoena requests and limiting the dissemination of other requests. Courts have discretion to issue a protective order for "good cause" in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c). To establish "good cause," there must be a demonstration of specific prejudice or harm that would result from the absence of a protective order. *Phillips ex rel. Ests. of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002). For the reasons listed in this brief, the identities of the account holders should be kept confidential and limited to use in the Mexican criminal proceeding *only*, in order to protect the account holders from doxxing or potential political oppression. Additionally, the Subpoena's request for the account holders' credit card information is overbroad and should be barred under a protective order. Significant harm to the account holders could arise from their credit card information being disclosed to a Mexican bank, and Banco Azteca's Application provides no reason why it needs this information to identify the account holders. *See In re Path Network, Inc.*, No. 23-MC-80148-PHK, 2023 WL 8115045, at *17 (N.D. Cal. Nov. 22, 2023) ("Here, good cause exists to protect the privacy and rights of the persons whose information . . . may be produced by Discord in response to an appropriate subpoena.").

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Kathryn Barragan (*Pro Hac Vice Application Forthcoming*)
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
+1 310 277 4110

*Attorney for Respondent X Corp.*

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles