1  Nicholas O. Kennedy (State Bar No. 280504)
   nicholas.kennedy@bakermckenzie.com
2  **BAKER & McKENZIE LLP**
   1900 North Pearl Street, Suite 1500
3  Dallas, Texas  75201
   Telephone:     214 978 3081
4  Facsimile:     214 978 3099

5
   Byron R. Tuyay (State Bar No. 308049)
6  byron.tuyay@bakermckenzie.com
   **BAKER & McKENZIE LLP**
7  10250 Constellation Blvd., Suite 1850
   Los Angeles, California  90067
8  Telephone:     310 201 4728
   Facsimile:     310 201 4721
9

10 Attorneys for Non-Party GOOGLE LLC

11

12                    **UNITED STATES DISTRICT COURT**

13                  **NORTHERN DISTRICT OF CALIFORNIA**

14                         **SAN JOSE DIVISION**

15 In re Application of BANCO AZTECA S.A.        Case No. 5:24-MC-80091-NC
   INSTITUCIÓN DE BANCA MÚLTIPLE, for
16 an Order Pursuant to 28 U.S.C. § 1782         **GOOGLE LLC'S NOTICE OF MOTION**
   Authorizing Discovery for Use in a Foreign   **AND MOTION TO QUASH SUBPOENA AND**
17 Proceeding                                    **OPPOSITION TO BANCO AZTECA'S**
                                                 **AMENDED *EX PARTE* APPLICATION FOR**
18                                               **AN ORDER PURSUANT TO 28 U.S.C. § 1782**
                      Applicant
19
                                                 **Date of Hearing:** October 16, 2024
20                                               **Time:** 11:00 a.m.
                                                 **Courtroom:** 5 – 4th Floor
21
                                                 U.S. Magistrate Judge:
22                                                     Hon. Nathanael M. Cousins
                                                 Courtroom: 5 – 4th Floor
23                                               San Jose Courthouse
                                                 280 South 1st Street
24                                               San Jose, California 95113

25

26

27

28

## NOTICE OF MOTION AND CONCISE STATEMENT OF RELIEF

Notice is hereby given that at 11:00 a.m. on October 16, 2024, or as soon thereafter as this matter can be heard, non-party GOOGLE, LLC shall move and hereby does move this court for an order to (i) quash the subpoena served on Google by Applicant Banco Azteca S.A. Institucion de Banca Múltiple ("Applicant" or "Banco Azteca") on July 2, 2024 ("the Subpoena") pursuant to its *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 Authorizing Discovery in a Foreign Proceeding from Google (ECF 1) and (ii) deny the Amended *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 Authorizing Discovery for Use in a Foreign Proceeding (ECF 39.)  Google opposes Banco Azteca's amended *ex parte* application on the same grounds that it moves to quash the Subpoena previously authorized by this Court's June 25, 2024 Order (ECF 18).  Specifically, the Subpoena should be quashed because the *ex parte* application under 28 U.S.C. § 1782 was improvidently granted.  Section 1782 is not the appropriate vehicle for the information Applicant seeks and the Subpoena is unduly burdensome and intrusive.  For these same reasons, Applicant's pending amended *ex parte* application should be denied.  This Motion is based on the Memorandum of Points and Authorities, all other pleadings, records, and files in this case, the Declarations of Nicholas O. Kennedy and Jordan Zuccarello, any oral argument on this matter, and such other and further matters as the Court may consider.

Dated: September 17, 2024                    Respectfully submitted,

                                             **BAKER & McKENZIE LLP**


                                             By: */s/ Nicholas O. Kennedy*
                                                Nicholas O. Kennedy

                                                Attorneys for Non-Party
                                                GOOGLE, LLC

## **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 6

II.    FACTUAL AND PROCEDURAL BACKGROUND............................................ 8

    A.    Alleged Social Media Posts Criticize Banco Azteca in November 2023 .................. 8

    B.    Banco Azteca Seeks Criminal Prosecution of Anonymous Users for Blackmail....... 8

    C.    Banco Azteca Obtains A Subpoena to Google under Section 1782 ......................... 9

    D.    Banco Azteca Files Amended 1782 Application .................................................... 10

III.    LEGAL STANDARD............................................................................................ 11

    A.    Courts Quash Improper Subpoenas to Protect Third Parties. .................................. 11

    B.    28 U.S.C. § 1782 Provides A Narrow Avenue to Obtain Evidence For Use By A Foreign Tribunal In A Foreign Legal Proceeding.................................................. 11

    C.    Cases that Present First Amendment and Free Speech Issues Require a Closer Examination of the Potential Harms and Chilling Effect on Free Speech............... 12

IV.    ARGUMENT ......................................................................................................... 13

    A.    The MLAT, Not Section 1782, Is the Appropriate Means to Obtain International Judicial Assistance in Criminal Proceedings....................................... 13

    B.    Banco Azteca Has Not Shown that Discovery Sought is For Use in a Foreign Proceeding............................................................................................................. 15

    C.    The Discretionary *Intel* Factors Weigh in Favor of Quashing the Subpoena. ......... 17

        1.    Intel Factor One - Lack of Participation by Mexican Authorities Supports Quashing the Subpoena. .................................................. 18

        2.    Intel Factor Two Weighs in Favor of Quashing the Subpoena because Mexican Authorities Have Not Requested This Information. ...................... 19

        3.    Intel Factor Three Favors Quashing the Subpoena Because Banco Azteca Attempts to Circumvent Foreign Proof-Gathering Restrictions. ....... 20

        4.    Intel Factor Four Supports Rejecting the Section 1782 Request and Quashing the Subpoena Because the Subpoena Is Unduly Intrusive and Burdensome. ........................................................................................... 20

            a.    The Ex Parte Application Fails to Demonstrate that the Alleged Proceedings Could Withstand a Motion to Dismiss.  22

        5.    The Subpoena Chills First Amendment Right to Free Expression. .............. 23

            a.    Banco Azteca's ex parte application does not meet Highfields' evidentiary requirement.        23

               b.      The balance of harms weighs in favor of protecting anonymous users' freedom of expression.      24

     D.      The Subpoena is an Improper Vehicle for Harassment. ........................................... 25

V.      CONCLUSION.................................................................................................................... 25

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3
**Cases**

4
*In re Anonymous Online Speakers*,
   661 F.3d 1168 (9th Cir. 2011) ................................................15

5

6
*In re Application*,
   No. 2:20-mc-36, 2021 U.S. Dist. LEXIS 32644 (S.D. Oh. Feb. 22, 2021) ......................16, 17

7
*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2013 WL 183944 (N.D. Cal. Jan. 17, 2023) ...........................................14

8

9
*In re Choi*,
   No. 5:24-mc-80043-EJD, 2024 U.S. Dist. LEXIS 45445
   (N.D. Cal. Mar. 14, 2024)................................................. *passim*

10

11
*In re: Core Compass Ltd.*,
   No. :23-MC-735, 2023 U.S. Dist. LEXIS 114080 (S.D. Cal. Jun. 30, 2023).........................18

12

13
*In re Fagan*,
   No. CV 19-mc-91210-ADB, 2019 U.S. Dist. LEXIS 88547
   (D. Mass. May 28, 2019) ................................................18

14

15
*Hey, Inc. v. Twitter, Inc.*,
   No. 22-mc-80034-DMR, 2023 U.S. Dist. LEXIS 98590 (N.D. Cal. Jun. 6, 2023) ................14

16

17
*In re Hoteles City Express*,
   No. 18-mc-80112-JSC, 2018 U.S. Dist. LEXIS 117444 (N.D. Cal. July 13, 2018)...............24

18
*In re Hybe Co., Ltd.*,
   No. 24-mc-80117-VC, 2024 U.S. Dist. LEXIS 114674
   (N.D. Cal. June 28, 2024) .........................................16, 21, 22

19

20
*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)................................................. *passim*

21

22
*Khrapunov v. Prosyankin*,
   931 F.3d 922 (9th Cir. 2019) ................................................18

23

24
*In re Komanokai*,
   No. 4:20-mc-80149-KAW, 2020 U.S. Dist. LEXIS 211774
   (N.D. Cal. Nov. 12, 2020).................................................27

25

26
*McIntyre v. Ohio Elections Comm'n*,
   514 U.S. 334 (1995)................................................14, 25

27
*In re Med. Corp. H&S*,
   No.19-mc-80058-VKD, 2019 U.S. Dist. LEXIS 42926
   (N.D. Cal. Mar. 15, 2019) ...........................................23, 24

28

*In re Ex Parte Med. Inc.*,
  No. 21-mc-80111-VKD, 2021 U.S. Dist. LEXIS 105689 (N.D. Cal. Jun. 4, 2021) ...............24

*In re Microsoft Corp.*,
  20006 U.S. Dist. LEXIS 24870 (N.D. Cal. Mar. 29, 2006)....................................................21

*Miyawaki v. Google*,
  LLC, No. 5:24-mc-80132-EJD, 2024 U.S. Dist. LEXIS 100227
  (N.D. Cal. June 5, 2024) ........................................................................................ *passim*

*In re O2CNI Co.*,
  No. C-13-80125-CRB, 2013 U.S. Dist. LEXIS 116019
  (N.D. Cal. Aug. 15, 2013).................................................................................16, 17, 21

*Petitioner v. Denham Mgmt. LP (In re Ex)*,
  No. 22-mc-91355-FDS, 2023 U.S. Dist. LEXIS 69683 (D. Mass. Mar. 6, 2023)...................18

*In re PGS Home Co.*,
  No. 19-mc-80139-JCS, 2019 U.S. Dist. LEXIS 204520 (N.D. Cal. Nov. 25, 2019) ...... *passim*

*In re Takada*,
  No. 22-mc-80221-VKD, 2023 U.S. Dist. LEXIS 17159 (N.D. Cal. Feb. 1, 2023) ................14

*In re Tokyo Univ.*,
  No. 21-mc-80102-DMR, 2021 U.S. Dist. LEXIS 171385 (N.D. Cal. Sept. 9, 2021) ..... *passim*

*United States v. Global Fishing, Inc.*,
  634 F.3d 557 (9th Cir. 2011) ...................................................................................9, 16, 17

*In re Varian Med. Sys. Int'l AG*,
  No. 16-mc-80048-MEJ, 2016 U.S. Dist. LEXIS 38911
  (N.D. Cal. Mar. 24, 2016)....................................................................................20, 21, 22

*ZF Auto. US, Inc. v. Luxshare, Ltd.*,
  596 U.S. 619 (2022)...............................................................................................9, 18, 19

**Statutes & Other Authorities**

28 U.S.C. § 1782 ................................................................................................ *passim*

First Amendment ................................................................................................ *passim*

Fed. R. Civ. P. 45 ................................................................................................13

71 N.Y.U. Ann. Surv. Am. L. 687 (2017) ................................................................16

S. Exec. Rep. No. 104-23 ................................................................................16

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3        Banco Azteca seeks to exploit Section 1782's foreign discovery process to unmask anonymous

4   individuals who have criticized Banco Azteca in social media posts on various online platforms.   Banco

5   Azteca hopes to use this to aid prosecutors and law enforcement in the State of Jalisco, Mexico to

6   advance purported criminal proceedings against these individuals.   But the U.S. civil legal system is

7   not a tool for such vigilante justice.

8        Authorizing the disclosure of personal information for use in potential foreign criminal

9   proceedings is a serious matter.   It is even more serious when the information sought is the identity of

10   the potential defendant in that foreign criminal prosecution.   When the party requesting the information

11   is a private individual, rather than a foreign official, these concerns are magnified.   Google files this

12   Motion to address these serious issues and respectfully requests that the Court quash the improper

13   Subpoena seeking Google users' information and deny Banco Azteca's amended application seeking

14   the same.

15        Google recognizes that some of the requested information may be useful to Mexican criminal

16   authorities.   And it respects their discretion to pursue whatever investigations they see fit in their

17   jurisdiction.   But this Subpoena was served by a private individual, not government officials.   And

18   if those foreign authorities truly desire such information, they can request it under Mexico's Treaty for

19   Mutual Legal Assistance in Criminal Matters with the United States, which is designed for exactly this

20   situation.   *See* Mexico (100-523) – Treaty on Mutual Legal Assistance in Criminal Matters, U.S.-Mex.,

21   art. 1, Dec. 9, 1987.   To date, the Mexican authorities have not done so.   Instead, Applicant has

22   deputized itself to seek the information that the Mexican authorities have not sought.   In doing so,

23   Applicant led this Court to err by granting the *ex parte* application for service of the Subpoena under

24   28 U.S.C. § 1782 and asks it to err again by granting the Amended Application.   The Court should

25   correct the mistake Banco Azteca has invited by quashing the improper Subpoena.

26        First, 28 U.S.C. § 1782 does not create an end-around for the treaty negotiated between the U.S.

27   and Mexico to obtain this type of information.   Any evidence Mexican criminal authorities may need

28   should be requested by Mexican authorities through the MLAT, with appropriate safeguards.   Indeed,

the MLAT process was designed specifically to assist foreign criminal authorities. Granting Banco Azteca's request under Section 1782 robs Mexican authorities of the exercise of their discretion and the opportunity to obtain this information through their own investigative procedures. Banco Azteca should not be allowed to use Section 1782 as a basis to stand in the shoes of competent government authorities and obtain information those authorities have not sought. If applied as Banco Azteca seeks to do here, Section 1782 would allow anyone to obtain broad U.S. discovery simply by filing a foreign criminal complaint. The MLAT contains important protections to shield against this potential abuse. And it is well-established that a treaty like the MLAT must trump a statute like Section 1782. *See United States v. Global Fishing, Inc.*, 634 F.3d 557, 565 (9th Cir. 2011) (holding that the MLAT superseded the substantive aspects of Section 1782, including the court's "broad discretion" to deny requests).

Second, even if Section 1782 could displace the MLAT, the Subpoena still fails because there is no "foreign tribunal" to assist. Rather, the request is made by an alleged victim who filed a police report about alleged blackmail in Mexico. No government authority has begun an investigation involving the Google users identified in the Subpoena, much less presented any charges to a foreign tribunal. The Supreme Court has recently narrowed the definition of "foreign tribunal" under Section 1782. *See ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 620 (2022). That narrow construction should be respected here, excluding from Section 1782 a complaining witness in a foreign country where charges have not yet been filed and where only bare assertions support that a government authority has started the criminal investigation that Applicant seeks to advance.

Third, the discretionary *Intel* factors justify denial even if the MLAT were ignored and the threshold requirements of Section 1782 were satisfied. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 249 (2004). This Court's decisions in *Choi* and *Miyawaki* are instructive. Each court rejected Section 1782 applications made by private parties seeking information to assist in potential criminal investigations and found the *Intel* factors weighed against the Section 1782 applications. *In re Choi*, No. 5:24-mc-80043-EJD, 2024 U.S. Dist. LEXIS 45445, at *12 (N.D. Cal. Mar. 14, 2024); *Miyawaki v. Google*, LLC, No. 5:24-mc-80132-EJD, 2024 U.S. Dist. LEXIS 100227, at *11-12 (N.D. Cal. June 5, 2024). Furthermore, the *Intel* factors support quashing the Subpoena

because Banco Azteca seeks to unmask anonymous users, which raises First Amendment concerns. The chilling effect that the Subpoena has on Constitutional rights, including the freedom to remain anonymous, outweighs the Court's discretion to authorize the Subpoena under the *Intel* factors and the Ninth Circuit's two-part test articulated in *Highfields*.

These important protections support many courts' rejection of Section 1782 applications in favor of the MLAT process to aid in criminal proceedings. This Court should not depart from that trend. Google respectfully requests that the Court issue an order quashing the Subpoena and denying the amended application.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Alleged Social Media Posts Criticize Banco Azteca in November 2023

Applicant Banco Azteca is one of Mexico's largest banks. (ECF 39, Banco Azteca's Amended Memorandum of Points and Authorities at 8.) This Subpoena stems from Banco Azteca's allegations that, beginning around November 2023, several anonymous individuals engaged in a coordinated disinformation campaign designed to cause financial harm to Banco Azteca by undermining the public's confidence in its financial health. (*Id.* 8-10.) Specifically, Banco Azteca alleges that the anonymous individuals made false claims on multiple platforms including Google's YouTube platform, X, and Meta's Facebook platform, stating that Banco Azteca faced imminent bankruptcy. (Id.) According to Banco Azteca, the posts by the anonymous users caused the bank to suffer reputational harm and financial losses when hundreds of thousands of customers withdrew deposits from Banco Azteca. (Id. at 9.) Banco Azteca alleges that it lost approximately $1 billion in deposits over several months after the anonymous users posted content on social media platforms containing alleged false claims about Banco Azteca. (*Id.*)

### B.      Banco Azteca Seeks Criminal Prosecution of Anonymous Users for Blackmail

On January 19, 2024, Banco Azteca filed a criminal complaint, which purportedly initiated an investigation by the State of Jalisco prosecutor's office. (App. Mem. at 11.) The criminal complaint alleged that certain individuals claiming to represent the anonymous users blackmailed Banco Azteca by demanding payment in exchange for taking down videos containing the alleged falsities about the bank. (*Id.*) Banco Azteca further alleges that its criminal complaint "was registered under

investigation folder number 5101/2024 of Agency 4 of Bulk Processing of the Public Prosecutor's Office of the State of Jalisco." (*Id.*)

As a result of the criminal complaint, a State of Jalisco officer issued demands to the social media platforms Facebook (Meta), TikTok, and X to provide identifying information for the alleged accounts involved with the reported blackmail. (ECF 39. 11-12.) Notably, Google was not subject to the purported demands issued by State of Jalisco police investigators.

Banco Azteca claims that on February 6, 2024, a Preliminary Criminal Judge in the State of Jalisco ordered that Meta and X remove the online content containing the alleged false statements about Banco Azteca, which were posted by at least ten user accounts, including those identified as La Catrina Norteña, Defensa del Consumidor, Alberto Rudo, Hanz Salazar, Red AMLO Mx, and El Chapucero. (*Id.* at 12.) Banco Azteca states that on February 9, 2024, the Preliminary Criminal Judge sent notices directly to Meta and X to comply with the February 6 order. (*Id.*) Banco Azteca provides no documentary evidence of the January 2024 criminal complaint or any subsequent orders issued by the judge in the State of Jalisco. Google was not subject to the purported orders issued by the State of Jalisco judge.

### C.   Banco Azteca Obtains A Subpoena to Google under Section 1782

On April 16, 2024, Banco Azteca filed an *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 Authorizing Discovery for Use in a Foreign Proceeding. (ECF No. 1.) The application states that Banco Azteca seeks information to identify certain individuals using accounts on Google and other platforms so that the users can be named as defendants "in a foreign criminal proceeding in Mexico." (App. Mem at 1.) The Court approved the Application on June 25, 2024, (ECF No. 18, at 3).

On July 2, 2024, Banco Azteca served the Subpoena on Google. (ECF No. 19-2). The application in support of the Subpoena listed more than a dozen users across Google's YouTube platform, Meta's Facebook platform, and X, which Banco Azteca believes were involved in the coordinated efforts to spread alleged falsities about the bank's financial health. (App. Mem. at 10.) More specifically, the Subpoena to Google requests identifying information for users associated with the following accounts, which Banco Azteca alleges were responsible for posting defamatory

content on Google's YouTube platform: El Chapucero; Sin Censura TV; Iber Alejandro; El Charro Político; and El Mexa Shorts.  (Subpoena; App. Mem. at 10).  For each of these Google account users, Banco Azteca seeks the names, addresses, phone numbers, e-mail addresses, and credit card numbers associated with the requested accounts, as well as the same identifying information corresponding to any payment methods tied to the requested accounts.  Additionally, the Subpoena requests IP access log data including dates, times, IP addresses, port numbers, and destination IP address recorded for each account.  The Subpoena does not specify a relevant time period for the requested documents and information.

Counsel for Google and Banco Azteca met and conferred on July 9, 2024, and discussed a potential resolution for the matter as well as Google's general objections to the use of Section 1782 by private litigants to aid foreign criminal proceedings when the MLAT is available to prosecutors in Mexico for this exact purpose.  (Declaration of Nicholas Kennedy ¶ 4.)  By July 23, 2024, the Parties were unable to reach a resolution, and Google served general and specific objections to the Subpoena.  (Kennedy Decl. ¶ 5, Exhibit 1).

Google searched for information in its possession responsive to the Subpoena.  (Declaration of Jordan Zuccarello ¶ 4.)  In doing so, Google obtained IP data associated with the YouTube channel identified by the user name "Sin Censura TV" or "youtube.com/@SinCensuraTVMedia."  (Zuccarello Decl. ¶ 5.)  The IP data associated with the primary Google account for this YouTube channel revealed that U.S.-based IP addresses were used to log into the account and to sign the Terms of Service Agreement to create this account.  (Zuccarello Decl. ¶ 6.)

### D.    Banco Azteca Files Amended 1782 Application

On August 20, 2024, Banco Azteca filed an amended *ex parte* application and memorandum of points and authorities in support of its request for Section 1782 discovery.  (ECF 39).  The amended *ex parte* application is substantially similar to the April 16 application except that it states that Banco Azteca *may* have initiated civil actions against certain anonymous individuals it seeks to unmask through this Subpoena.  While maintaining that both applications seek discovery for Banco Azteca's use in a foreign criminal proceeding (App. Mem. 1), the amended application also notes that Banco Azteca "is has [sic] filed civil lawsuits against the anonymous [users]" and "has taken active steps in

commencing those lawsuits" for claims including defamation and libel based on false statements resulting in compensatory and reputational damages.  (*Id.* at 13.)  Banco Azteca does not specify against which users it has filed civil lawsuits, and it is unclear whether those lawsuits have commenced or if Banco Azteca has only taken (undefined) "active steps" to do so.

Banco Azteca's amended *ex parte* application remains pending before the Court.  Google moves to quash the previously authorized Subpoena served on Google on July 2, 2024, and opposes Banco Azteca's amended *ex parte* application on the same grounds.

## III.  LEGAL STANDARD

### A.  Courts Quash Improper Subpoenas to Protect Third Parties.

Under Fed. R. Civ. P. 45(d)(3)(A)(iv), the Court must quash a subpoena if it "subjects a person to undue burden."  While the party moving to quash has the burden of persuasion, the party issuing the subpoena must demonstrate that the discovery sought is relevant and proportional to the burden imposed on the responding party.  *Baxalta Inc. v. Genentech, Inc.*, No. 16-mc-80087-EDL, 2016 U.S. Dist. LEXIS 195669, at *13 (N.D. Cal. Aug. 9, 2016) (granting motion to quash Section 1782 subpoenas when information sought was not proportional to burden of third-party).

### B.  28 U.S.C. § 1782 Provides A Narrow Avenue to Obtain Evidence For Use By A Foreign Tribunal In A Foreign Legal Proceeding.

A district court may order the production of documents or testimony for use in a foreign legal proceeding under Section 1782.  *See* 28 U.S.C. § 1782(a); *Intel*, 542 U.S. at 249.  This requires the applicant to prove that (1) the discovery is sought from a person residing in the district of the court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an "interested person."  *Id.*

But even if the statutory requirements are met, a "district court is not required to grant a Section 1782(a) discovery application simply because it has the authority to do so."  *Intel*, 542 U.S. at 264.  Courts must consider four factors when determining whether to exercise their discretion in granting a request for discovery under Section 1782: (1) whether the entity from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency

abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome. *Intel*, 542 U.S. at 241, 264-65. The *Intel* factors are a non-exhaustive list of considerations that the Court can assess in addition to other potential issues that arise in a particular dispute. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *4 (N.D. Cal. Jan. 17, 2023) (holding that a Special Master did not err in considering factors "he thought appropriate" beyond the *Intel* factors in Section 1782 case).

### C.   Cases that Present First Amendment and Free Speech Issues Require a Closer Examination of the Potential Harms and Chilling Effect on Free Speech.

The First Amendment's free-speech clause protects "an author's decision to remain anonymous." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995). Even when a Section 1782 applicant satisfies the statutory requirements the Court must still consider the potential chilling effect the subpoena would have on First Amendment rights by unmasking an anonymous speaker's identity. *See Tokyo Univ.*, 2021 U.S. Dist. LEXIS 171385, at *8. Although Section 1782 promotes assistance to foreign tribunals, such assistance may not breach the First Amendment protection of free speech unless the applicant provides a compelling need for the discovery. *In re PGS Home Co.*, No. 19-mc-80139-JCS, 2019 U.S. Dist. LEXIS 204520, at *13 (N.D. Cal. Nov. 25, 2019).

Where a Section 1782 applicant seeks authorization for a subpoena to identify an anonymous speaker online, courts have evaluated the request under the fourth *Intel* factor—whether the request is unduly intrusive or burdensome. *See, e.g.*, *In re Tokyo Univ.,* No. 21-mc-80102-DMR, 2021 U.S. Dist. LEXIS 171385, at *14 (N.D. Cal. Sept. 9, 2021); *Hey, Inc. v. Twitter, Inc.*, No. 22-mc-80034-DMR, 2023 U.S. Dist. LEXIS 98590, at *6 (N.D. Cal. Jun. 6, 2023); *In re Takada,* No. 22-mc-80221-VKD, 2023 U.S. Dist. LEXIS 17159, at *3 (N.D. Cal. Feb. 1, 2023). When such a request to unmask an anonymous user violates their constitutional right to express themselves freely, the subpoena should be quashed as unduly burdensome. *Tokyo Univ.*, No. 21-mc-80102-DMR, at *14 (granting motion to quash when Section 1782 applicant's subpoena was unduly burdensome under *Intel* because it violated user's First Amendment protections).

In order to unmask an anonymous speaker, applicants must first persuade the Court that there is "a real evidentiary basis" for believing that the defendant acted unlawfully and caused "real harm." *Highfields*, 385 F. Supp. 2d at 975. Applicants seeking disclosure must meet their evidentiary burden before discovery is authorized. *See In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (noting that identification is only appropriate where the compelling need for discovery outweighs the First Amendment privilege). Second, even if the applicant makes an evidentiary showing of "real harm," then the Court still must weigh the magnitude of the harm that would be caused by a ruling in either direction. *Id.* at 976. [1]

## IV.   **ARGUMENT**

### A.   **The MLAT, Not Section 1782, Is the Appropriate Means to Obtain International Judicial Assistance in Criminal Proceedings.**

Section 1782 should not be used to circumvent the MLAT between the United States and Mexico. The MLAT exists precisely to allow Mexican criminal authorities to obtain information they might need when investigating crimes like the alleged blackmail of which Banco Azteca complained. Indeed, MLATs like the one between the U.S. and Mexico were enacted to curtail the use of unilateral discovery procedures like Section 1782: "the principle incentive for many foreign governments to negotiate MLATs with the United States was, and remains, the desire to curtail the resort by U.S. prosecutors, police agents, and courts to unilateral, extraterritorial means of collecting evidence from abroad." *See* S. Exec. Rep. No. 104-23, at s. 9-13.524 (1996). The carefully crafted MLAT process should not be circumvented by a Section 1782 request, particularly where there is little

---

[1] Some courts have refused to apply the *Highfields* test to section 1782 applications seeking to unmask anonymous users where there is no indication that the anonymous online speakers are entitled to First Amendment protections. But even those courts have implicitly recognized that the evidentiary burden in *Highfields* is appropriate in cases where the anonymous speaker may be entitled to Free Speech protections. *Compare Tokyo Univ.*, 2021 U.S. Dist. LEXIS 171385, at *9 (applying *Highfields* evidentiary basis to quash section 1782 applicant's subpoena to unmask anonymous user) *with Hey, Inc.*, 2023 U.S. Dis. LEXIS 98590, at *8-*9 ("In *Tokyo University*, the court wrongly assumed without analysis that the speech at issue was entitled to First Amendment protection.").

evidence that an active proceeding before a competent foreign tribunal and that any competent law enforcement authority has even commenced a criminal investigation.

The Mexico-United States MLAT became effective in 1991. Mexico-United States: Mutual Legal Assistance Cooperation Treaty, Dec. 9, 1987, Sen. Treaty Doc. No. 100-13, eff. May 3, 1991, 27 I.L.M. 443. This treaty provides that Mexico and the United States "shall cooperate with each other by taking all appropriate measures that they have legal authority to take, in order to provide mutual legal assistance in criminal matters" and that such assistance includes the prevention, investigation and prosecution of crimes and related criminal proceedings. *Id.* In other words, the MLAT was specifically designed to allow for criminal authorities in one country to obtain evidence in the other country for use in criminal investigations. For this reason, courts in this district have denied private litigants' attempts to obtain discovery under Section 1782 to support foreign criminal prosecutions. *See infra* Part IV.C; *see also, In re Choi*, 2024 U.S. Dist. LEXIS 45445, at *12 (denying 1782 application for use in criminal proceeding when foreign authorities had ability to obtain discovery through MLAT); *Miyawaki*, 2024 U.S. Dist. LEXIS 100227, at *11-12 (same); *In re Hybe Co., Ltd.,* No. 24-mc-80117-VC, 2024 U.S. Dist. LEXIS 114674, at *2 (N.D. Cal. June 28, 2024) (same); and *In re O2CNI Co.*, No. C-13-80125-CRB, 2013 U.S. Dist. LEXIS 116019, at *19 (N.D. Cal. Aug. 15, 2013) (same).

Importantly, the MLAT also includes safeguards for the accused about whom information is sought. *In re O2CNI Co.*, 2013 U.S. Dist. LEXIS 116019, at *25. It also promotes comity and consistency, which are especially critical in criminal matters. *See United States v. Global Fishing, Inc.*, 634 F.3d 557, 571 (9th Cir. 2011) (explaining that courts must grant requested discovery when faced with MLAT requests, which supersedes Section 1782 that affords courts discretion). And it includes rigorous assessment and screening by federal criminal authorities to ensure consistent outcomes that abide by constitutional requirements and DOJ policy. *See* 71 N.Y.U. Ann. Surv. Am. L. 687, 699 (2017); *In re Application*, No. 2:20-mc-36, 2021 U.S. Dist. LEXIS 32644, at *29 (S.D. Oh. Feb. 22, 2021) ("[The MLAT process] assures that the U.S. government's expertise and analytic rigor is applied to the application[.]").

Banco Azteca seeks to side-step this carefully crafted treaty altogether by demanding information through Section 1782 before Mexican authorities have even decided whether to pursue

criminal charges, thus evading the important safeguards established in the MLAT.  This would violate the MLAT's requirement that the request be made and reviewed by Mexico and United States' designated coordinating authorities, *i.e.*, the United States Department of Justice and Mexico's Procuraduría General de la República, rather than a private party.  *See* MLAT at art. 2.1.  It would also bypass the prosecutorial discretion and policy considerations inherent in the required review by the DOJ.  *See In re Application,* No. 2:20-mc-36, 2021 U.S. Dist. LEXIS 32644, at *28 (S.D. Ohio Feb. 22, 2021).  The Court should not assist in this disregard for this treaty.

Additionally, because the MLAT process allows Mexican authorities to obtain necessary information – if such authorities indeed pursue criminal prosecution – then granting the Section 1782 request here does nothing to further the twin aims of that statute.  *See In re O2CNI Co.*, 2013 U.S. Dist. LEXIS 116019, at *25.  First, this request would not provide efficient assistance to participants in international litigation because Banco Azteca is not part of any active litigation.  Second, it would not encourage foreign countries by example to provide similar assistance to our courts because it directly contradicts the treaty negotiated with Mexico to provide for such assistance.  This result should be avoided, particularly in light of the fact that international treaties like the MLAT trump statutes like Section 1782.  *Global Fishing, Inc.*, 634 F.3d at 565.

Mexican authorities have an appropriate and well-established vehicle to obtain this information if they so choose.  For now, those authorities have not taken any steps to seek the information through an MLAT request.  Banco Azteca should not be permitted to usurp the role of Mexican prosecutors, circumvent the MLAT process, and eviscerate the negotiated safeguards incorporated into that treaty by the United States and Mexican governments.  The Subpoena should be quashed because the MLAT, not Section 1782, is the appropriate method to obtain this information for use in any foreign criminal proceeding.  *See Miyawaki*, 2024 U.S. Dist. LEXIS 100227, at *12.

**B.**     **Banco Azteca Has Not Shown that Discovery Sought is For Use in a Foreign Proceeding**

Even if this Court determines a Section 1782 request remains available notwithstanding the MLAT, the subpoena should still be quashed.  A district court cannot allow Section 1782 discovery unless (1) the discovery is sought from a person residing in the district of the court to which the

application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an "interested person." *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (quoting 28 U.S.C. § 1782(a)).

Banco Azteca does not meet the statutory requirements because there is no foreign criminal proceeding and thus no "foreign tribunal" in which that discovery can be used. Section 1782(a)'s "foreign tribunal" requirement necessitates that a "reviewable, dispositive ruling in an investigatory body be in reasonable contemplation." *In re: Core Compass Ltd*., No. :23-MC-735, 2023 U.S. Dist. LEXIS 114080, at *7 (S.D. Cal. Jun. 30, 2023). Importantly, "the mere fact of a complaint is not sufficient to establish an actual or reasonably foreseeable proceeding." *In re Fagan,* No. CV 19-mc-91210-ADB, 2019 U.S. Dist. LEXIS 88547, at *3 (D. Mass. May 28, 2019).

In other words, the fact that the Banco Azteca filed a criminal complaint to Jalisco State law enforcement authorities, and the purported orders issued by the State of Jalisco Preliminary Criminal Judge is not the same as initiating an action before a "foreign tribunal." *See In re App. for an Ord. Seeking Discovery under 28 U.S.C. § 1782,* No. 24-Misc. 152-GHW, 2024 U.S. Dist. LEXIS 88725, at *13 (S.D.N.Y. May 16, 2024); *see also Petitioner v. Denham Mgmt. LP (In re Ex)*, No. 22-mc-91355-FDS, 2023 U.S. Dist. LEXIS 69683, at *7 (D. Mass. Mar. 6, 2023) (denying Section 1782 request upon finding that "the [foreign] criminal investigation is not, and may never be, in a stage where judicial proceedings are even under reasonable contemplation" where petitioner only filed a criminal complaint).[2]

Although Section 1782 provides that assistance may be appropriate to support criminal investigations before formal accusation, Banco Azteca does not even assert that any criminal investigation exists that would require Google to disclose identifying information of the users that are

---

[2] The Supreme Court's recent ruling narrowing the definition of "foreign tribunal" supports this line of cases. In *ZF Auto. US, Inc. v. Luxshare, Ltd.*, the Supreme Court emphasized that the term "foreign tribunal" necessarily requires that a nation has imbued the tribunal with "official power to adjudicate disputes." 596 U.S. 619, 620 (2022). There, the Supreme Court found that an arbitration tribunal did not fall within Section 1782's statutory requirements because it was driven by purely private parties even though it was authorized by statutes. *Id.* So too here where the police complaint was filed by private parties and there is no foreign tribunal to which this evidence could be submitted if obtained.

identified in the Subpoena.  The purported complaint filed with authorities in the State of Jalisco in January 2024 resulted in authorities issuing demands to other platforms, but notably did not prompt any demands to Google.  Banco Azteca has not attached copies of the purported criminal complaint or provided sufficient information demonstrating how the requested Google account information is relevant to the alleged attempted blackmail which is the basis for their complaint.  Moreover, Banco Azteca asserts that preliminary criminal proceedings were undertaken by prosecutors in the State of Jalisco, but there is no indication that those proceedings involved the Google users that Banco Azteca wishes to unmask by the Subpoena.  Instead, Banco Azteca appears to seek discovery from Google to pass that information to law enforcement and prosecutors in the State of Jalisco to convince them to start a criminal proceeding in Mexico against those who Banco Azteca believes were working in concert with users on other platforms.

The fact that this information is sought by a private party complicates the issue.  Unlike when operating under the MLAT, there is no assurance here that Banco Azteca will provide this information to the police and not otherwise use or disclose it.  Indeed, permitting Banco Azteca to obtain this discovery without limitation would cast aside the confidentiality protections that restrict the disclosure of discovery exchanged through the MLAT, which require coordination between authorities in both Mexico and the U.S. to determine the appropriate scope of its use.  MLAT Art. 6.  Granting the request would thus expand the potential use of Section 1782 to any private individual who claims that they were a victim of a crime, thus rendering the statutory requirement that the information is sought to assist a criminal investigation meaningless.  In other words, there is no proceeding and no evidence of any charges within "reasonable contemplation" as required.  As a result, Section 1782's requirement that the request assist a proceeding before a "foreign tribunal" is not satisfied.

### C.  The Discretionary *Intel* Factors Weigh in Favor of Quashing the Subpoena.

Even if the Court finds that the threshold Section 1782 requirements are satisfied, the request should still fail under the discretionary *Intel* factors.  *See Intel,* 542 U.S. at 247.

Both *Choi and Miyawaki* are instructive.  *Miyawaki*, 2024 U.S. Dist. LEXIS 100227, at *11; *In re Choi*, 2024 U.S. Dist. LEXIS 45445, at *12.  *Choi* and *Miyawaki* involved Korean nationals filing a criminal complaint with local police against unknown individuals who allegedly posted defamatory

and insulting videos on YouTube.  To obtain identifying information, in both matters the Korean nationals petitioned the Northern District of California under Section 1782 to serve Google with a subpoena.  *Miyawaki*, 2024 U.S. Dist. LEXIS 100227, at *11; *In re Choi*, 2024 U.S. Dist. LEXIS 45445, at *12.  The court denied the applications after applying the *Intel* factors due to the possibility that Korean authorities could obtain this information through the MLAT process.  *Id.*

Just as in these recent cases seeking discovery to support criminal prosecutions, the *Intel* factors support denying Banco Azteca's Section 1782 request and quashing the Subpoena.

### 1. Intel *Factor One - Lack of Participation by Mexican Authorities Supports Quashing the Subpoena.*

The first *Intel* factor favors quashing the subpoena because Mexican authorities can obtain the information Applicant seeks through the MLAT.  Although this factor addresses whether the person from whom discovery is sought is a party to the foreign proceeding, "the key issue is whether the material is obtainable through the foreign proceeding."  *In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 U.S. Dist. LEXIS 38911, at *2 (N.D. Cal. Mar. 24, 2016).  This factor "militates against allowing § 1782 discovery when the petitioner effectively seeks discovery from a participant in the foreign tribunal even though it is seeking discovery from a related, but technically distinct entity."  *Id.* at *4.

Google will not be a party to the criminal action Banco Azteca hopes to pursue, but the State of Jalisco authorities that Banco Azteca hopes to assist in pursuing criminal charges could obtain the information through the MLAT process.  *See e.g., Miyawaki,* 2024 U.S. Dist. LEXIS 100227, at *5; *In re Choi*, 2024 U.S. Dist. LEXIS 45445, at *6.  Banco Azteca should not usurp the role of prosecutors or circumvent a bilateral treaty by using Section 1782 to independently investigate a potential criminal claim and affirmatively seek discovery that prosecutors in Mexico have not yet requested from Google.  *In re O2CNI*, 2013 U.S. Dist. LEXIS 116019, at *19 ("O2CNI wants to act as investigator for the Korean authorities against the entities that it wants the Korean authorities to charge.").  This court should deny the Section 1782 request and allow the evidence in the foreign criminal investigation to "develop through the authorities investigating it."  *Id.*

### 2. Intel *Factor Two Weighs in Favor of Quashing the Subpoena because Mexican Authorities Have Not Requested This Information.*

The second *Intel* factor requires that the Court consider the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance. *Intel*, 542 U.S. at 241, 264-65. This factor weighs against authorizing Banco Azteca to obtain the discovery they seek. "This factor focuses on whether the foreign tribunal is willing to consider the information sought." *In re Varian Med. Sys.,* 2016 U.S. Dist. LEXIS 38911, at *4. Mexican prosecutors should have discretion to pursue, indict, and direct police investigations stemming from criminal complaints, without intervention from private litigants. For this reason, this court has noted in reviewing Section 1782 applications from private individuals to support criminal prosecutions that "the fact that the prosecutor has the discretion to carry out investigations but has not . . . sought this information from the court directly leads the Court to question the receptivity of this evidence." *See Miyawaki,* 2024 U.S. Dist. LEXIS 100227, at *7. Furthermore, issues of comity weigh against allowing discovery because that would interfere with Mexico's handling of its own enforcement proceedings. *See In re Microsoft Corp.*, 20006 U.S. Dist. LEXIS 24870, at *12 (N.D. Cal. Mar. 29, 2006) (noting that by enacting Section 1782 "Congress did not seek to place itself on a collision course with foreign tribunals and legislatures, which have carefully chosen the procedures and laws best suited to their concepts of litigation.").

The Northern District of California recently denied a Section 1782 request by a Korean company that tried to obtain identifying information for use in a foreign criminal proceeding. *See In re Hybe Co., Ltd.*, No. 24-mc-80117-VC, 2024 U.S. Dist. LEXIS 114674, at *2 (N.D. Cal. Jun. 28, 2024). There, the court noted that a foreign private citizen's use of an American court to access another foreign private citizen's personal information simply by filing a criminal complaint in their home country "raises abuse of process concerns." *Id.* at *1. The court denied the Section 1782 application, noting that the discretion to carry out criminal investigations resides with the prosecutor, not the alleged victim. *Id.* at *2.

The fact that Mexican authorities in the State of Jalisco have not sought this information from Google is telling. It appears that the prosecutors in Jalisco have exercised their discretion *not* to request

1  this information from Google, despite requesting it from several other platforms.  There is no basis for

2  this Court to substitute its judgment for that of the Mexican authorities who have thus far declined to

3  request the information Banco Azteca seeks.  Because Mexican authorities have not pursued this

4  information, this factor therefore weighs against discovery under Section 1782.

5                  **3.**   **Intel** *Factor Three Favors Quashing the Subpoena Because Banco Azteca*
6                       *Attempts to Circumvent Foreign Proof-Gathering Restrictions.*

7       Banco Azteca's attempt to circumvent the safeguards of the MLAT and bypass review of the

8  request by Mexican and U.S. government authorities favors denial of the Section 1782 request and

9  quashing the subpoena.

10       For this factor, the Court assesses whether Applicant's request for discovery "conceals an

11  attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the

12  United States."  *Intel*, 542 at 265.  "A perception that an applicant has side-stepped less-than favorable

13  discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis." *In re Varian*

14  *Med. Sys.,* 2016 U.S. Dist. LEXIS 38911, at *5.

15       Banco Azteca has sought discovery under Section 1782 without any formal indication by the

16  Mexico authorities that they will indict the alleged perpetrator.  And it did so in circumvention of the

17  MLAT, avoiding the review by both Mexican and U.S. authorities required by the MLAT.  Allowing

18  discovery to continue here under Section 1782 rewards Banco Azteca's attempt to sidestep the

19  established MLAT process and undermines the purpose behind both Section 1782 and the MLAT, *i.e.*

20  "encouraging foreign countries by example to provide similar assistance to our courts" and to provide

21  "mutual assistance . . . in connection with the prevention, investigation, and prosecution of offenses,

22  and in proceedings related to criminal matters."  This justifies denial of the request and quashing the

23  subpoena.  *See In re Choi*, 2024 U.S. Dist. LEXIS 45445, at *10 ("the MLAT process would better

24  provide safeguards appropriate to a criminal case…").

25       Because the 1782 request ignores a well-established process to obtain this information and

26  violates important protections for user privacy, this factor weighs in favor of quashing the subpoena.

27                  **4.**   **Intel** *Factor Four Supports Rejecting the Section 1782 Request and*
                     *Quashing the Subpoena Because the Subpoena Is Unduly Intrusive and*
28                       *Burdensome.*

The fourth *Intel* factor weighs in favor of denying the Section 1782 request and granting Google's Motion to Quash because the requested information is broad, unduly intrusive, and goes beyond the stated purpose of the application: to obtain information necessary to identify the alleged perpetrators.

Under this factor, the Court considers whether the discovery sought is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. Here, the subpoena seeks broad and intrusive discovery, including identifying information for multiple Google users associated with five YouTube channels, along with business-sensitive information including billing information and login history. *See In re Choi*, 2024 U.S. Dist. 45445, at *11 (finding 1782 request seeking data associated with anonymous YouTube users to be unduly intrusive and burdensome, including all names, all dates of birth, email addresses, recovery authentication, telephone numbers, names and addresses of all credit cards, billing instruments, and names of payment methods for all non-credit card payment methods).

Both *In re Med Corp. H&S* and *Miyawaki* are instructive. In *In re Med Corp. H&S*, despite granting the request in part, the Court refused to authorize a subpoena to Google for billing information and login history without adequate justification or specifying a relevant time frame for the requested data. *In re Med. Corp. H&S*, No.19-mc-80058-VKD, 2019 U.S. Dist. LEXIS 42926, at *9 (N.D. Cal. Mar. 15, 2019). In *Miyawaki*, applicants sought identifying information for an alleged perpetrator based upon the perpetrator's YouTube channel. *Miyawaki*, 2024 U.S. Dist. LEXIS 100227, at *3. The court found that forcing Google to produce access logs for over four months "would likely produce personal information entirely unrelated to the criminal complaint" and refused to authorize the subpoena. *Id.* at *11; *see also, In re Ex Parte Med. Inc.*, No. 21-mc-80111-VKD, 2021 U.S. Dist. LEXIS 105689, at *12 (N.D. Cal. Jun. 4, 2021) (denying Section 1782 application without prejudice when subpoena invaded Google users' privacy information).

So too here. Banco Azteca seeks a broad swath of IP access log data and billing information for each of the five YouTube channels, none which is necessary to ascertain the identities of the perpetrator. Moreover, the requests for access log information for each account does not appear to be limited by a specific time period relevant to the alleged blackmail or defamatory posts Banco Azteca seeks to address in legal proceedings in Mexico. Both *In re Med Corp. H&S* and *Miyawaki* demonstrate

21

that the Subpoena is overbroad, unduly intrusive, and likely to produce personal information unrelated to Banco Azteca's criminal complaint and contemplated civil suit.  Therefore, the fourth *Intel* factor favors quashing the subpoena on this basis alone.

        *a.*        *The Ex Parte Application Fails to Demonstrate that the Alleged Proceedings Could Withstand a Motion to Dismiss.*

      The Court should quash the Subpoena because Banco Azteca has not shown that the alleged proceedings could withstand a Motion to Dismiss.  Under the fourth *Intel* factor, courts require Section 1782 applications to show that the proceedings could withstand a motion to dismiss before unmasking an anonymous user.  *See e.g., In re Tokyo Univ.*, No. 21-mc-80102-DMR, 2021 U.S. Dist. LEXIS 171385*, at *7 (N.D. Cal. Sept. 9, 2021); *In re PGS Home Co.*, No. 19-mc-80139-JCS, 2019 U.S. Dist. LEXIS 204520, at *7 (N.D. Cal. Nov. 19, 2019); *In re Hoteles City Express*, No. 18-mc-80112-JSC, 2018 U.S. Dist. LEXIS 117444, at *8 (N.D. Cal. July 13, 2018).  Conclusory statements and mere allegations fail to satisfy this burden and justify the expedited discovery request.  *Tokyo Univ.*, 2021 U.S. Dist. LEXIS 121385, at *5 (finding attorney 's statement that the facts constitute defamation to be "entirely conclusory" and insufficient to justify unmasking an anonymous user).

      Banco Azteca's statement here is wholly conclusory and would not satisfy a motion to dismiss.  Banco Azteca asserts that "[t]he facts alleged herein would be sufficient to withstand a Motion to Dismiss in this Court and under Mexican law," but provides nothing to support this contention.  (*See* App. Mem. at 21.).  Banco Azteca has not demonstrated how the purported preliminary actions taken by State of Jalisco investigators and prosecutors in response to reported blackmail meet the elements of the claims Banco Azteca purports to assert.  (*See* ECF 39, App. Mem. at 24.)  Likewise, Banco Azteca fails to demonstrate how the civil suit for defamation and libel against the anonymous users would (independent of the criminal proceeding) survive a motion to dismiss.  Banco Azteca claims that the users "engaged in a concerted pattern of publishing repeated false statements about Banco Azteca's financial situation" (*Id.* at 25.)  The problem is, however, that assertion relies on Banco Azteca's speculative belief that the handful of platform users Banco Azteca has identified in the Subpoena were working in concert and that these users' anonymous posts actually caused alleged economic and reputational harm to the bank, which is unsupported by Banco Azteca's *ex parte* application.

Without evidence that such claims could survive a motion to dismiss, Banco Azteca thus asks this Court to set an improperly low bar to justify the disclosure of anonymous users' identity.

### 5.   *The Subpoena Chills First Amendment Right to Free Expression.*

The First Amendment's free-speech clause protects "an author's decision to remain anonymous." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995).  Even when a Section 1782 applicant satisfies the statutory requirements and has shown good cause for their proposed subpoena, the Court must still consider the potential chilling effect the Subpoena would have on First Amendment rights by unmasking an anonymous speaker's identity.  *See Tokyo Univ.*, 2021 U.S. Dist. LEXIS 171385, at *8.  Although Section 1782 promotes assistance to foreign tribunals, such assistance may not breach the First Amendment protection of free speech unless the applicant provides a compelling need for the discovery.  *In re PGS Home Co.*, No. 19-mc-80139-JCS, 2019 U.S. Dist. LEXIS 204520, at *13 (N.D. Cal. Nov. 25, 2019).

Courts in the Ninth Circuit have applied the two-part *Highfields* to determine whether requests to unmask anonymous speakers is justifiable under Section 1782 in light of free speech concerns.  *In re PGS*, 2019 U.S. Dist. LEXIS 204520, at *5 (citing *Highfields*, 285 F. Supp. 2d at 975).  Under that test, the Court must assess the Subpoena first by looking "beyond the pleadings to determine if there is an evidentiary basis for concluding that the requested discovery is appropriate." *Id.*  Second, even if the applicant makes an evidentiary showing of "real harm," then the Court must weigh the magnitude of the harm that would be caused by a ruling in either direction.  *Id.* at 976.  The Court should apply the *Highfields* test here particularly because the Subpoena seeks to unmask a primary Google account user associated with the YouTube channel, "Sin Censura TV" or "youtube.com/@SinCensuraTVMedia" who appears to be located in the United States according to IP data.  (Zuccarello Decl. ¶ 5.)

#### a.   *Banco Azteca's ex parte application does not meet Highfields' evidentiary requirement.*

Banco Azteca has not presented competent evidence to support its purported claims under Mexican law as required by the *Highfields* test.  As discussed above, Banco Azteca makes only conclusory statements that the YouTube videos posted by certain Google account users it now seeks to

unmask were defamatory and that videos from these specific users caused the alleged financial and reputational harm. But other than claiming the words would constitute defamation under Mexican law, Banco Azteca merely speculates that various users it has targeted with subpoenas were acting in concert and that the alleged financial losses it suffered were attributable to these specific videos critical of Banco Azteca. As a result, Banco Azteca has failed to satisfy the first step of the *Highfields* test because its application lacks evidentiary support for the conclusion that the videos posted by over a dozen different anonymous users across multiple platforms establishes a *prima facie* case against them for defamation and libel under Mexican law.

> b.  The balance of harms weighs in favor of protecting anonymous users'
>     freedom of expression.

Even if Banco Azteca had presented evidence sufficient to meet the first prong of the *Highfields* test, which it has not, the Subpoena still fails the second prong of the *Highfields* test. The Court should quash the Subpoena because the potential harm that would flow from unmasking the anonymous user and depriving them of their First Amendment protection to speak anonymously outweighs the alleged harm to Banco Azteca. The potential harm to the anonymous users would be violating their constitutional rights, disclosing their identity, and exposing the users to potential criminal prosecution and civil damages claims as a consequence of posting videos that report on the financial health of one of Mexico's largest banks. Authorizing the Subpoena would thus silence the anonymous user and have a chilling effect on their free expression on matters of public interest. The harm to Banco Azteca, on the other hand, is minimal. Banco Azteca may be able to obtain from Google unverified personal information associated with the YouTube channels and Google accounts, but may still investigate the identity of the anonymous user through other means. Indeed, Banco Azteca states that it identified certain individuals associated with requested user accounts apparently without the need for discovery from Google. (ECF 39-2, Declaration of Jose Manuel Azpiroz ¶ 24.) This does not preclude Banco Azteca from exercising any rights, and does not prevent the lawsuits it seeks to commence in Mexico. This minimal harm to Banco Azteca is outweighed by the First Amendment concerns relating to disclosing the anonymous user's identity. *See In re PGS*, 2019 U.S. Dist. LEXIS 204520, at *17 (finding anonymous Tweets to constitute legitimate commercial speech that enjoys First Amendment

protection that outweighed any harm caused from the Tweets).  For these reasons, Banco Azteca cannot satisfy the *Highfields* test and the Court should quash the Subpoena.

### D.     The Subpoena is an Improper Vehicle for Harassment.

Finally, the Court should quash the Subpoena because it is being used as a vehicle for harassment.  Independent of the *Intel* factors, the Court may quash any Section 1782 subpoena that it finds to be unduly intrusive or a fishing expedition.  *See In re Komanokai*, No. 4:20-mc-80149-KAW, 2020 U.S. Dist. LEXIS 211774, at *6 (N.D. Cal. Nov. 12, 2020). (denying Section 1782 application to unmask an anonymous user where *Intel* factors were met but its purpose was to intimidate or harass the user into taking down negative business review).  As noted above, this Subpoena seeks broad categories of personal and business-sensitive information without limitation and without adequate justification.  Banco Azteca circumvents the MLAT, casting aside well-established procedural safeguards.  Banco Azteca cannot state a viable claim for defamation under Mexican law.  And the anonymous users are entitled to anonymously express "legitimate commercial speech" of which "the public may well be interested." *Music Grp.*, 82 F. Supp. 3d at 985.  Against this backdrop, the true purpose of Banco Azteca's Subpoena becomes clear: to silence critics of Banco Azteca and intimidate them with the threat of criminal prosecution in Jalisco.  Thus, the Subpoena is being used as a vehicle for harassment and should be quashed.  *See In re Komanokai*, at *6 (denying Section 1782 application where on its face, the Court could not ascertain whether the speech would state a viable claim for defamation under foreign law).

## V.     CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court quash the July 2, 2024 subpoena and deny Banco Azteca's Amended *Ex Parte* Application (ECF 39) and award to Google any and all other relief to which it is justly entitled.

Dated: September 17, 2024

Respectfully submitted,

**BAKER & McKENZIE LLP**

By:  */s/ Nicholas O. Kennedy*
       Nicholas O. Kennedy
       Attorney for Non-Party
       GOOGLE LLC