Matthew E. Lewitz (SBN 325379)
  mlewitz@cozen.com
COZEN O'CONNOR
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
T: (213) 892-7937
F: (310) 394-4700

Michael A. Fernández (*Pro Hac Vice*)
  mfernandez@cozen.com
COZEN O'CONNOR
3 WTC, 175 Greenwich Street 55th Floor
New York, NY 10017
T: (212) 453-3713
F: (646) 461-2075

Attorneys for Non-Party
X Account Holders,
John Doe 1 a.k.a @FreddyOliviery;
John Doe 2 a.k.a. @PonchoGutz;
Meta Account Holders,
John Doe 3 a.k.a. "Luis Guillermo Hernández";
John Doe 4 a.k.a. "Hans Salazar"; and
Google LLC Account Holder,
John Doe 5 a.k.a. "SinCensuraTVMedia"

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* Application of BANCO AZTECA S.A. INSTITUCIÓN DE BANCA MÚLTIPLE, for an Order Pursuant to 28 U.S.C. § 1782 Authorizing Discovery for Use in a Foreign Proceeding | Case No.: 5:24-mc-80091-NC<br><br>**NON-PARTY X, META AND GOOGLE ACCOUNT HOLDERS' NOTICE OF MOTION AND MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: October 16, 2024<br>Hearing Time: 11:00 AM PT<br>Courtroom: 5 (Zoom)<br>Judge: Hon. Nathanael Cousins |

1

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 16, 2024 at 10:00 A.M. or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, located at the San Jose Courthouse, Courtroom 5 – 4th Floor, 280 South 1st Street, San Jose, CA 95113, the Non-Party Movants, X Corp. Account Holders, John Doe 1 a.k.a @FreddyOliviery and John Doe 2 a.ka. @PonchoGutz; Meta Account Holders, John Doe 3 a.k.a. "Luis Guillermo Hernández" and John Doe 4 a.k.a. "Hans Salazar"; and Google LLC Account Holder, John Doe 5 a.k.a. "SinCensuraTVMedia"  (collectively, the "Affected Account Holders" or "Non-Party Movants") will move, and hereby does move, this Court for an Order denying *Banco Azteca's Amended Notice of Application and Amended Ex Parte Application for an Order Pursuant to 28 U.S.C. §1782 Authorizing Discovery for Use in a Foreign proceeding* (the "Amended Application") (ECF No. 39), and quashing the subpoenas served on X Corp. ("X"), Meta and Google LLC ("Google") by Applicant Banco Azteca, S.A. Institutción de Banca Múltiple ("Banco Azteca"), pursuant to the Court's Order Approving Issuance of Requested Subpoenas (the "Subpoenas"). (ECF No. 18.) This Motion is brought pursuant to Fed. R. Civ. P. 45(d)(3) and 28 U.S.C. § 1782.

As set forth below, the Amended Application should be denied and any subpoenas should be quashed because Banco Azteca fails to satisfy the threshold conditions of 28 U.S.C. § 1782, as well as the discretionary factors articulated in the Supreme Court's decision in *Intel Corp. v Advanced Micro Devices*, 542 U.S. 241, 225 (2004).

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the accompanying Memorandum of Points and Authorities (3) the concurrently filed Declaration ("Dec.") of Michael A. Fernández (the "Fernández Dec."); (4) the concurrently filed Dec. of Ilan Katz (the "Katz Dec."); and (5) the [Proposed] Order; (6) all other filings and records in this proceeding; (7) any oral argument; (8) all other matters of which the Court may take judicial notice; and (9) any such other and further matters the Court may properly consider before ruling.

DATED: September 17, 2024

Respectfully submitted,

COZEN O'CONNOR

By: /s/ Michael A. Fernández

Matthew E. Lewitz (SBN 325379)
mlewitz@cozen.com
COZEN O'CONNOR
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
T: (213) 892-7937
F: (310) 394-4700

Michael A. Fernández (Pro Hac Vice)
mfernandez@cozen.com
COZEN O'CONNOR
3 WTC, 175 Greenwich Street
55th Floor
New York, NY 10017
T: (212) 453-3713
F: (646) 461-2075

*Attorneys for Non-Party*
*X Account Holders,*
*John Doe 1 a.k.a @FreddyOliviery;*
*John Doe 2 a.k.a. @PonchoGutz;*
*Meta Account Holders,*
*John Doe 3 a.k.a. "Luis Guillermo*
*Hernández";*
*John Doe 4 a.k.a. "Hans Salazar"; and*
*Google LLC Account Holder,*
*John Doe 5 a.k.a. "SinCensuraTVMedia"*

3

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.    INTRODUCTION ..................................................................................................... 1

II.   STATEMENT OF FACTS ......................................................................................... 3

  A.    Procedural History ............................................................................................. 3

    1.    Banco Azteca's Criminal Complaint ............................................................ 3

    2.    Banco Azteca's Civil Lawsuit ...................................................................... 4

  B.    The Non-Party Movants ..................................................................................... 5

III.  STANDING .............................................................................................................. 6

IV.   LEGAL STANDARD ............................................................................................... 6

V.    ARGUMENT ............................................................................................................ 7

  A.    Banco Azteca Has Failed to Satisfy the Threshold Requirement of § 1782 ......................... 7

    1.    Banco Azteca's Vague Description of the Criminal Matter Pending in Jalisco Fails to Satisfy Section 1782's "For Use" Threshold Condition ............................ 7

    2.    Banco Azteca's Contrived Civil Matter is Not Within "Reasonable Contemplation" and Fails to Satisfy Section 1782's "For Use" Threshold Condition ............................ 9

  B.    *Intel's* Discretionary Factors Weigh in Favor of Quashing the Subpoena .......................... 9

    1.    *Intel* Factors One and Three Weigh in Favor of Quashing the Subpoena ......................... 9

    2.    *Intel* Factor Two Weighs in Favor of Quashing the Subpoena ..................................... 11

    3.    *Intel* Factor Four Weighs in Favor of Quashing the Subpoena ..................................... 11

  C.    Additional Considerations ................................................................................. 13

VI.   CONCLUSION ........................................................................................................ 15

i

NON-PARTY X, META AND GOOGLE ACCOUNT HOLDERS' NOTICE OF MOTION AND MOTION TO
QUASH AND/OR FOR PROTECTIVE ORDER - CASE NO.: 5:24-MC-80091-NC

## **TABLE OF AUTHORITIES**

**Cases**

*CFE Int'l LLC v. Antaeus Grp. LLC*, 2022 WL 17731821 (W.D. Tex. Aug. 26, 2022) ........ 6, 9, 15

*CFE Int'l LLC v. Antaeus Grp., LLC*, 2023 WL 7218045 (W.D. Tex. Sept. 5, 2023) .................... 7

*CFE Int'l LLC v. Denham Cap. Mgmt. LP*, 2023 WL 2988745 (D. Mass. Mar. 6, 2023) .............. 10

*Chevron Corp. v. Donziger*, 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) ................................ 6

*Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226(5th Cir. 2022) ................................ 14

*Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263 (5th Cir. 2024)..............................................13

*Free Speech Coal., Inc. v. Rokita*, 2024 WL 3228197 (S.D. Ind. June 28, 2024) ........................ 13

Highfields Capital Management, L.P. v. Doe, 385 F. Supp. 2d 969 (N.D. Cal. 2005)................... 14

*In re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011) ................................................ 14

*In re Application of Republic of Turkey*, 2021 WL 671518 (S.D. Ohio Feb. 22, 2021) ............. 9, 10

*In re Choi*, 2024 WL 1120130 (N.D. Cal. Mar. 14, 2024)............................................................ 9

*In re Hoteles City Express*, 2018 WL 3417551 (N.D. Cal. July 13, 2018). .................................. 12

*In re Path Network, Inc.*, 2023 WL 8115045 (N.D. Cal. Nov. 22, 2023) .................................... 16

*In re PGS Home Co. Ltd.*, 2019 WL 6311407 (N.D. Cal. Nov. 25, 2019). ................................... 14

*In re Pioneer Corp. for an Ord. Permitting Issuance of Subpoenas to Take Discovery in a Foreign*
*Proceeding*, 2018 WL 2146412 (C.D. Cal. May 9, 2018) ........................................................ 7

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557 (9th Cir. 2011)....... 7

*In re Republic of Turkey,* 2021 WL 3022318 (N.D. Ill. July 16, 2021) ..................................... 8, 9

*In re Request for Assistance for Ministry of Legal Affairs of Trinidad & Tobago*, 848 F.2d 1151
(11th Cir. 1998) ...................................................................................................................... 7

*In re Sargeant*, 278 F. Supp. 3d 814 (S.D.N.Y. 2017)............................................................... 7, 9

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ...................................... *passim*

*Khrapunov v. Prosyankin*, 931 F.3d 922 (9th Cir. 2019)............................................................ 15

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238 (2d Cir. 2018).................. 6

*Matter of Application of O2CNI Co., Ltd.*, 2013 WL 4442288 (N.D. Cal. Aug. 15, 2013). ........... 9

*Miyawaki v. Google LLC,*  2024 WL 2852142 (N.D. Cal. June 5, 2024)....................................... 9

*Mosafer Inc. v. Broidy*, 2022 WL 793029 (C.D. Cal. Feb. 4, 2022)........................................... 14

*Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397 (5th Cir. 1993) ................. 16

*Phillips ex rel. Ests. of Byrd v. General Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002) ................ 16

*Thunder Studios, Inc. v. Kazal*, 13 F.4th 736 (9th Cir. 2021) ...................................................... 13

ii

*Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, 2021 WL 4124216 (N.D. Cal. Sept. 9, 2021) .... 11, 12

*United States v. 18 Packages of Magazines*, 238 F. Supp. 846 (N. D. Cal. 1964) .......................... 13

*United States v. Bescond*, 24 F.4th 759 (2d Cir. 2021) .................................................................... 14

*United States v. Sealed 1, Letter of Request for Legal Assistance from the Deputy Prosecutor Gen. of the Russian Fed'n*, 235 F.3d 1200 (9th Cir. 2000) .................................................................... 6

## Statutes

28 U.S.C. § 1782 ........................................................................................................................... *passim*

Fed. R. Civ. P. 26(c) ............................................................................................................................ 16

Mut. Legal Assistance Treaties of the U.S., U.S. DEPT. OF JUSTICE S. Treaty Doc. No. 100-13 (Dec. 9, 1987) ................................................................................................................................ 2, 10

## Other Authorities

Fernando Pérez-Lozada, "Denial of Justice by Mexican Courts to Canadian Investment Fund under NAFTA: the First of its Kind," Kluwer Arbitration Blog, October 30, 2021 ..................... 4

*Fitch Downgrades Banco Azteca's IDRs to 'BB-'; Outlook Stable*, FITCH RATINGS, Mar. 24, 2024 1

Hon. Hillary Rodham Clinton, Remarks on Internet Freedom, U.S. DEP'T OF STATE, Jan 21. 2020 .................................................................................................................................................... 3

*Internet Freedom and Technology and Human Rights*, U.S. DEP'T OF STATE ................................. 3

José de Córdoba and Santiago Pérez, *Combative Billionaire's Bank Accused of Bribing a Texas Democrat*, WALL ST. J., May 8, 2024 ...................................................................................... 1

Santiago Pérez, *Mexican Tycoon's Retail Chain Ordered to Pay $1 Billion in Back Taxes,* WALL ST. J., June 13, 2024 .................................................................................................................... 1

Simon Schatzberg, "Jalisco identified as a 'red flag' for judicial corruption," Mexico News Daily (May 16, 2019) .......................................................................................................................... 4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Banco Azteca's parent company is chaired by, Ricardo Salinas Pliego, a wealthy Mexican magnate who, in the words of the Wall Street Journal, "built a retail and banking empire and became a controversial figure in Mexico for playing hardball with authorities and using TV Azteca to discredit adversaries."[1]  Perhaps seeking to distract from a variety of other problems,[2] Banco Azteca has sought to punch down and use the Mexican legal system and this proceeding to harass the perceived political adversaries—*i.e.*, the Non-Party Movants—of Ricardo Salinas Pliego.

Rather than come forward with any evidence demonstrating that it has any causes of action against the Non-Party Movants, Banco Azteca relies on self-serving declarations by its employees, which fail to provide any documentary evidence regarding purported proceedings in Mexico or otherwise show what, if anything, Non-Party Movants have done that would expose them to criminal or civil liability. Banco Azteca's Amended Application is instead based on unsupported assertions and claims of a vast left wing conspiracy that are risible.

Before addressing Banco Azteca's Amended Application, it bears mentioning that it is bereft of evidence demonstrating:

- Any evidence that Banco Azteca is pursuing claims under Section III of Article 254 of the Federal Criminal Code.
- Any evidence that the Non-Party Movants participated in some kind of "conspiracy" to blackmail Banco Azteca.
- Any evidence that the Non-Party Movants have been actually named as parties in the criminal complaint that Banco Azteca filed in the State of Jalisco.
- Any evidence that Banco Azteca has a cause of action against Non-Party Movants sounding in defamation or libel.

The absence of any specific accusations against the Non-Party Movants is intentional. The Non-Party Movants have been critical of Ricardo Salinas Pliego and his political views, and he

---

[1] Santiago Pérez, *Mexican Tycoon's Retail Chain Ordered to Pay $1 Billion in Back Taxes,* WALL ST. J., June 13, 2024, https://www.wsj.com/world/americas/mexican-tycoons-retail-chain-ordered-to-pay-1-billion-in-back-taxes-d7b6e565.

[2] *E.g.,* José de Córdoba and Santiago Pérez, *Combative Billionaire's Bank Accused of Bribing a Texas Democrat*, WALL ST. J., May 8, 2024, https://www.wsj.com/world/americas/the-mexican-bank-behind-alleged-bribes-to-a-texas-democrat-4cf4cc17; *Fitch Downgrades Banco Azteca's IDRs to 'BB-'; Outlook Stable*, FITCH RATINGS, Mar. 24, 2024 https://www.fitchratings.com/research/banks/fitch-downgrades-banco-azteca-idrs-to-bb-outlook-stable-25-03-2024.

1

NON-PARTY X, META AND GOOGLE ACCOUNT HOLDERS' NOTICE OF MOTION AND
MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER - CASE NO.: 5:24-MC-80091-NC

has reciprocated by calling some "Marxist asshole [sons of bitches of their mothers]." (Katz Dec. ¶¶ 54-55, 59, 60.)

The Amended Application and Subpoenas raise significant concerns in the context of unmasking anonymous users and implicating free speech interests and should be denied for a number of reasons.

*First*, Banco Azteca fails to satisfy the threshold conditions of 28 U.S.C. § 1782. There is no showing that a dispositive ruling in a proceeding is "within reasonable contemplation," or that the information being sought will be "for use" in a Mexican proceeding. Specifically, there is no connection between the Non-Party Movants' purportedly problematic posts, which are notably not annexed to the Amended Application, and Banco Azteca's rationale for seeking information. This alone is sufficient to quash the Subpoenas.

*Second*, Banco Azteca fails to satisfy the discretionary factors articulated in the Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). The Amended Application fails to explain why the procedure that exists for seeking evidence in cross-border criminal matters—the Mutual Legal Assistance Treaty ("MLAT") between Mexico and the United States[3] —is seemingly not being pursued. It fails to explain why Banco Azteca is purporting to act as an investigator for Mexican authorities, without any indication of interest by those authorities in Banco Azteca's efforts here. It also fails to show that any eventual criminal indictment or civil complaint could survive a motion to dismiss. All of these concerns lead to the *Intel* factors weighing in favor of quashing the Subpoenas.

*Finally*, the Amended Application directly implicates several, significant First Amendment concerns. It seeks to unmask anonymous speakers who have expressed political views contrary to Banco Azteca's ownership. It risks a chilling effect on other anonymous speakers at-issue in the Subpoenas who have posted content on issues of public importance (i.e., the alleged health of a large financial institution) that, by unmasking them, could result in not only discouraging others from speaking, but also depriving U.S.-based listeners of their right to hear such speech.

---

[3] *See* Mut. Legal Assistance Treaties of the U.S., U.S. DEPT. OF JUSTICE S. Treaty Doc. No. 100-13 (Dec. 9, 1987), *available at* https://www.state.gov/91-503/.

It is the policy of the United States to promote internet access worldwide and to favor the freedom of speech worldwide.[4] Such a policy includes the promotion of anonymous speech; as recognized by former Secretary of State Hillary Clinton, "anonymity … permits people to come together in settings that gives them some basis for free expression without identifying themselves."[5] To vindicate this important aim of U.S. foreign policy, the Court should deny Banco Azteca's Amended Application.

Pursuant to 28 U.S.C. §1782 and Federal Rule of Civil Procedure 45(c), the Non-Party Movants hereby move for an order denying the Amended Application and quashing the Subpoenas seeking information to unmask the Non-Party Movants. By providing information to linking their identities with their speech, this information will reveal the location and associations of these non-parties in violation of their right to privacy.

## II.   **STATEMENT OF FACTS**

### A.   **Procedural History**

Banco Azteca's basis for seeking to unmask the Non-Party Movants has been as steady as the flickering of a butterfly. Initially, Banco Azteca sought to unmask the Non-Party Movants based on a criminal complaint that was filed in the State of Jalisco. (ECF No. 1.) Now Banco Azteca claims that it also entitled to unmask the Non-Party Movants in aid of a contemplated civil proceeding that has or hasn't been initiated. (ECF No. 39.)

#### 1.   Banco Azteca's Criminal Complaint

Banco Azteca's Amended Application claims that, on January 19, 2024, it filed a criminal complaint with the Public Prosecutor's Office in the State of Jalisco. (ECF No. 39 at 11.) Banco Azteca states the complaint "was registered under investigation folder number 5101/2024 of Agency 4 of Bulk Processing of the Public Prosecutor's Office of the State of Jalisco." (*Id.*) It also

---

[4] *Internet Freedom and Technology and Human Rights*, U.S. DEP'T OF STATE ("Just as people must be able to exercise their rights to freedoms of expression, association, religion or belief, and peaceful assembly offline, they must also be able to exercise these same rights online."), *available at* https://www.state.gov/internet-freedom-and-technology-and-human-rights/ (last visited September 16, 2024).
[5] Hon. Hillary Rodham Clinton, Remarks on Internet Freedom, U.S. DEP'T OF STATE (Jan 21. 2020), https://2009-2017.state.gov/secretary/20092013clinton/rm/2010/01/135519.htm.

states Banco Azteca "ratified the criminal complaint and was recognized as the offending party."
(*Id.*) In connection with that filing, Banco Azteca further states that "a Preliminary Criminal Judge
ordered that Meta and X remove the offending publications from at least ten accounts, including
those relating to the La Catrina Norteña, Defensa del Consumidor, Alberto Rudo, Hanz Salazar,
Red AMLO Mx, and El Chapucero accounts." (*Id.* at 12.)

Despite repeated requests since August 13, 2023, Banco Azteca has refused to provide any
documents evidencing the purported criminal allegations brought against the Non-Party Movants
or provide any information about what has happened or is happening in Jalisco.  (*See* Fernández,
Dec. ¶¶ 5-12, Exhibit ("Ex.") B-D.)  Banco Azteca has likewise offered no justification for its
decision to initiate a proceeding in one of Mexico's most corrupt judiciaries. (*Id* ¶¶ 9-12; Exs. E-
F.)[6]

## 2. Banco Azteca's Civil Lawsuit

Banco Azteca's Amended Application states that "Applicant intends to file a civil lawsuit
against all the individuals behind the social media accounts that injured Applicant, and has
commenced a civil action against certain individuals." (ECF No. 39-3 at 5.)[7] Despite this
seemingly categorial statement, however, Banco Azteca then states that "[c]onfirmation of this
information, namely the identity of the anonymous individuals, as well as IP addresses and other
information like time signatures relating to the posts at issue, will enable Applicant to properly
and accurately assess any arguments by the Defendants in the civil action that they did not
circulate these posts." (ECF No. 39-3 at 6.) Further muddling Banco Azteca's position is a further
statement that "[i]f Banco Azteca deems it appropriate to file a civil lawsuit and presents evidence
proving that certain defendants published false information about the institution on social media

---

[6] For context, "Jalisco is one of five problem states for corrupt judges according to a map of
corruption allegations against federal judges and magistrates across [Mexico]." Simon Schatzberg,
"Jalisco identified as a 'red flag' for judicial corruption," Mexico News Daily (May 16, 2019),
https://mexiconewsdaily.com/news/red-flag-for-judicial-corruption/; *see also* Fernando Pérez-
Lozada, "Denial of Justice by Mexican Courts to Canadian Investment Fund under NAFTA: the
First of its Kind," Kluwer Arbitration Blog (October 30, 2021),
https://arbitrationblog.kluwerarbitration.com/2021/10/30/denial-of-justice-by-mexican-courts-to-
canadian-investment-fund-under-nafta-the-first-of-its-kind/.
[7] Banco Azteca has, to date, not clarified against whom it has been able to initiate a civil lawsuit.
(Fernández Dec. ¶12.)

4

platforms, Banco Azteca has a viable claim for defamation and damages under Mexican law."
(ECF 39-4 at 4.)

The Amended Application does not specify against which of the anonymous social media users any civil action(s) have been commenced. With respect to the Non-Party Movants, the Amended Application also does not provide any evidence of what purportedly "false information" they published about Banco Azteca.

### B.   The Non-Party Movants[8]

All of the Non-Party Movants have followers in the U.S. (Katz Dec. ¶ 67.)

Broadly speaking, the John Does 1-4 use their social media accounts to provide social and political commentary. (*E.g.,* Katz Dec. ¶¶ 59, 63-64.) John Doe 5, in turn, "is an unprecedented effort by both free and independent journalists, as well as experts in different disciplines and fields, who seek to incite the critical spirit of audiences tired of lies and manipulation in corporate or conventional media. All of us who work at Sin Censura seek to serve you with truth and justice, thus displacing robotic and hypocritical journalism, through human, real and participatory information work, and whose objective will always be the establishment of increasingly democratic societies." Katz Dec. ¶52

Banco Azteca's Amended Application is bereft of any statements made by John Does 1-4 that would give rise to civil and/or criminal liability. While Banco Azteca takes umbrage with news report by John Doe 5, a transcription of the actual video reflects that it is simply a news report on an event of public interest. (*E.g.,* Katz Dec. ¶¶ 57-58.)

None of the Non-Party Movants has engaged, retained or otherwise directed any individuals to represent them and communicate with Banco Azteca to demand blackmail money. (Katz Dec. ¶ 67.)

---

[8] Because Banco Azteca previously raised questions about the Affected Account Holders ability to proceed anonymously (Fernández Dec. ¶4), they are proffering information about certain facts through the Dec. of Ilan Katz. If required by the Court, they would provide a declaration under oath affirming the statements contained therein with appropriate safeguards for their anonymity. (Katz Dec. ¶ 68.)

**III.**     <u>**STANDING**</u>

Banco Azteca is seeking the Non-Party Movants' personal identifying information. Because of this, the Non-Party Movants "have standing to move to quash the subpoenas only with respect to the [accounts] they claim to own." *Chevron Corp. v. Donziger*, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) (Cousins, M.J.).

**IV.**     <u>**LEGAL STANDARD**</u>

28 U.S.C. § 1782 authorizes U.S. courts to order discovery in aid of a foreign proceeding only where an applicant shows that the requested materials are "for use in a proceeding before a foreign or international tribunal." 28 U.S.C. § 1782. Section 1782 has three threshold requirements: (1) the person or entity from whom discovery is sought resides in or can be found in the court's district; (2) the application is made by a foreign or international tribunal or "any interested person;" and (3) the discovery is "for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." *CFE Int'l LLC v. Antaeus Grp. LLC*, 2022 WL 17731821, at *5 (W.D. Tex. Aug. 26, 2022), *report and recommendation adopted*, 2022 WL 19569581 (W.D. Tex. Dec. 6, 2022).

Satisfying the threshold requirements merely "authorizes, but does not require" a court to permit discovery, which is wholly discretionary. *See e.g., Intel Corp.* 542 U.S. at 255.  In that regard, the Supreme Court has identified four non-exhaustive factors to guide a court's exercise of its discretion in granting discovery: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature and character of the foreign proceeding and the receptivity of the foreign government, court, or agency to federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the requests are unduly intrusive or burdensome. *Id.* at 264. In addition, "[a] district court should also take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018).  This includes the "substance to the allegations, and whether the foreign [party] is proceeding in good faith." *United States v. Sealed 1,*

6

*Letter of Request for Legal Assistance from the Deputy Prosecutor Gen. of the Russian Fed'n*, 235 F.3d 1200, 1205–06 (9th Cir. 2000).

## V.  ARGUMENT

### A.  Banco Azteca Has Failed to Satisfy the Threshold Requirement of § 1782

As noted above, Section 1782 requires a party to demonstrate that the discovery sought will be "for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782. To satisfy this requirement, "[t]he applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated." *In re Pioneer Corp. for an Ord. Permitting Issuance of Subpoenas to Take Discovery in a Foreign Proceeding*, 2018 WL 2146412, at *6 (C.D. Cal. May 9, 2018). In that connection, "[c]ourts must guard against the specter that parties may use § 1782 to investigate whether litigation is possible before launching." *In re Sargeant*, 278 F. Supp. 3d 814, 823 (S.D.N.Y. 2017). Thus, a court should deny a Section 1782 request when it "'suspects that the request is a 'fishing expedition' or a vehicle for harassment.'" *In re Request for Assistance for Ministry of Legal Affairs of Trinidad & Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1998) *cited by In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011); *CFE Int'l LLC v. Antaeus Grp., LLC*, 2023 WL 7218045, at *5 (W.D. Tex. Sept. 5, 2023) (denying discovery where petitioner seeks "to gather information and documents for its own unspecified alternative purposes.") (collecting cases), *report and recommendation adopted in part*, 2023 WL 7181266 (W.D. Tex. Nov. 1, 2023).

The Amended Application fails to provide sworn proof concerning the links or posts by the Non-Party Movants that that have been raised (or would be raised) in any proceeding in Mexico. As explained below, Banco Azteca's Amended Application is little more than a dressed up vehicle to harass Ricardo Salinas Pliegos's political adversaries in Mexico.

1.  <u>Banco Azteca's Vague Description of the Criminal Matter Pending in Jalisco Fails to Satisfy Section 1782's "For Use" Threshold Condition</u>

With respect to the criminal "matter" pending in Jalisco, the Amended Application's vague

7

1   description of the allegations in the criminal complaint and status of any criminal investigation or

2   proceeding fails to satisfy Section 1782's "for use" threshold condition.

3         In *Antaeus Grp. LLC*, a private Mexican company filed an *ex parte* application under

4   section 1782 seeking discovery from U.S. companies. The application represented that the

5   discovery was "in aid of a Mexican criminal investigation" concerning a third party. *Antaeus Grp.*

6   *LLC*, 2022 WL 17731821, at *1. The application further represented that "the Office of the

7   Mexican Special Anti-Corruption Prosecutor in Mexico City opened an investigation" and that the

8   Mexican Attorney General "asked a court in Mexico to hold a hearing to allow prosecutors to

9   present an *imputación* . . . in order to initiate a criminal case." According to the applicant, "once

10  the *imputación* has been presented and accepted by the judge, the [Attorney General] can continue

11  to investigate for six months or more, after which it will decide to proceed to trial." *Id.* In denying

12  the application, the court noted that the applicant "did not attach the purported criminal complaint

13  and provided no other primary documentation describing the current status or scope of the

14  Mexican Investigation that would enable the court to independently assess the proceedings." *Id.* at

15  *5. Because the application had a "dearth of concrete information about the subject matter, scope,

16  and status of the Mexican Investigation," it was too "difficult" to conclude "that a dispositive

17  ruling is within reasonable contemplation, as required by the Supreme Court in *Intel*." *Id.*

18        Here, as in *Antaeus Grp. LLC*, the Amended Application does not state who is leading the

19  investigation or any concrete information about the subject matter, scope, and status of the

20  criminal "matter." Nor has Banco Azteca attached the criminal complaint, hearing transcripts, or

21  any other documentation that could enable the Court to assess the proceedings in Mexico. For

22  example, the Amended Application does not state whether X and Meta users John Does 1-3 were

23  referenced in the order purportedly issued by the Preliminary Criminal Judge on February 6, 2024.

24  (ECF No. 39 at 12.) The omission raises many questions. After all, the Preliminary Criminal Judge

25  could very well have dismissed the criminal complaint as to John Does 1-3 (or never granted relief

26  because they weren't listed as parties in the first instance). Because of the application's "dearth of

27  concrete information" about Banco Azteca's criminal and civil "matters," this Court cannot

28

8

conclude that a dispositive ruling is within reasonable contemplation. *See, e.g., In re Republic of Turkey,* 2021 WL 3022318, at *4 (N.D. Ill. July 16, 2021) ("The respondents argue that the petitioner's failure to provide specific details about the investigation and how it plans to use the requested discovery forecloses it from satisfying the second statutory requirement. The Court finds the respondents' argument persuasive.").

> 2.      <u>Banco Azteca's Contrived Civil Matter is Not Within "Reasonable Contemplation" and Fails to Satisfy Section 1782's "For Use" Threshold Condition</u>

Similarly, the Amended Application's suggestion that Banco Azteca may or may not bring civil proceedings depending on what the discovery reveals undermines its claim that its actions are not within "reasonable contemplation." *See e.g., In re Sargeant*, 278 F. Supp. 3d at 823. This admission casts doubt on whether the Amended Application seeks this discovery "for use" in the Mexican criminal proceeding or is instead going on a "fishing expedition district courts are counseled to guard against." *Antaeus Grp. LLC*, 2022 WL 17731821, at *5.

****

For these reasons, the Application falls far short of the threshold conditions of Section 1782 and X Corp.'s Motion to Quash should be granted on this basis alone.

**B.**      ***Intel's* Discretionary Factors Weigh in Favor of Quashing the Subpoena**

> 1.      <u>*Intel* Factors One and Three Weigh in Favor of Quashing the Subpoena</u>

Federal district courts have weighed the first *Intel* factor—i.e. whether the discovery sought is within the foreign tribunal's jurisdictional reach and, thus, accessible without Section 1782 aid (*Intel*, 542 U.S. at 241)—as well as the third *Intel* factor—i.e., "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States" (*id.* at 265)—against granting an application where discovery is sought for a criminal proceeding and the country's criminal authorities have the option to proceed with the MLAT process but have chosen not to. *See Miyawaki v. Google LLC,* 2024 WL 2852142, at *2 (N.D. Cal. June 5, 2024); *In re Choi*, 2024 WL 1120130, at *2 (N.D. Cal. Mar. 14, 2024); *In re Republic of Turkey,* 2021 WL 3022318, at *4; *In re Application*

9

*of Republic of Turkey*, 2021 WL 671518, at *10 (S.D. Ohio Feb. 22, 2021); *Matter of Application of O2CNI Co., Ltd.*, 2013 WL 4442288, at *8 (N.D. Cal. Aug. 15, 2013).

Mexico is party to an MLAT that gives its criminal authorities the ability to seek information from the social media companies in the United States.[9]  The MLAT process provides vital safeguards to protect entities from questionable criminal proceedings or investigations by (1) permitting the criminal authorities in the foreign jurisdiction to decide whether to invoke MLAT (Katz Dec. ¶¶38-40) and (2) permitting DOJ review of the discovery requests.  *In re Application of Republic of Turkey*, 2021 WL 671518, at *10 (citations omitted).  By following this process, "the U.S. government's expertise and analytic rigor is applied to the application, including to assure that the discovery is not sought for ulterior (nonprosecutive) ends." *Id.*

Here, a prosecutor in Mexico could use the MLAT process to obtain the identity of the Non-Party Movants. Where Banco Azteca is seeking to unmask anonymous users to face criminal charges abroad, it is particularly important for the prosecutors to assess such requests. As the *Denham Cap. Mgmt. LP* court observed:

> [I]f the Mexican prosecutors want the evidence that [Applicant] seeks, such evidence appears to be well within their reach through MLAT channels. In fact, Mexican prosecutors and law enforcement are directed to use MLAT procedures and other diplomatic means to collect evidence for their case as it preserves the custody and control of the evidence. Therefore, the rationale for the first factor, i.e., the need for foreign discovery that would otherwise be unavailable, is lessened here.

*CFE Int'l LLC v. Denham Cap. Mgmt. LP*, 2023 WL 2988745, at *7 (D. Mass. Mar. 6, 2023).

The Amended Application fails to explain whether a request under MLAT has not been pursued or otherwise requested. To the extent that such a process has been initiated, "Petitioner does not explain why time is of particular concern here." *In re Application of Republic of Turkey*, 2021 WL 671518, at *10. The safeguards of independent prosecutorial review are important where Banco Azteca is seeking to unmask anonymous users, many of whom hold themselves out as using their accounts for political speech and are regularly critical of Ricardo Salinas Pliego, for potential use in a corrupt jurisdiction. Banco Azteca's "weak justification for circumventing the

---

[9] *See* Mut. Legal Assistance Treaties of the U.S., U.S. DEPT. OF JUSTICE S. Treaty Doc. No. 100-13 (Dec. 9, 1987), *available at* https://www.state.gov/91-503/.

MLAT process, cannot go unnoticed, especially where that process seems tailor-made for the circumstances Petitioner identifies." *Id.* at *12.

### 2. *Intel* Factor Two Weighs in Favor of Quashing the Subpoena

The second *Intel* factor requires the court to "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel,* 542 U.S. at 264. Here, the Amended Application fails to provide any details regarding the current status of the criminal and civil proceedings initiated by Banco Azteca in Mexico and whether evidence obtained by a Section 1782 proceeding could be used (which it may not be) (Katz Dec. ¶18), thereby making it impossible to adequately discern the "character of the proceedings underway abroad." *Intel,* 542 U.S. at 264. Moreover, the fact that Banco Azteca has, by its own admission, "commenced a civil action against certain individuals" (ECF No. 39-3 at 5) raises questions about its need for discovery in order to bring any potential civil proceeding.  Given Banco Azteca's repeated failure to provide any evidence regarding the nature of the proceedings in Mexico (Fernandez Dec. ¶ 5 & Exs. B-D), the Court should conclude that this factor weighs in favor of quashing the Amended Application.

### 3. *Intel* Factor Four Weighs in Favor of Quashing the Subpoena

"Where a section 1782 applicant seeks leave to conduct discovery to identify an anonymous speaker, courts have evaluated the request under the fourth *Intel* factor—whether the request is unduly intrusive or burdensome" by applying the good cause standard that governs Rule 26(d) requests for early discovery. *Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, 2021 WL 4124216, at *3 (N.D. Cal. Sept. 9, 2021).  To that end, federal courts will consider whether the petition (1) identifies the missing defendant with sufficient specificity such that the court can determine that it is a real person subject to a lawsuit; (2) identifies all previous steps taken to locate and identify the elusive defendant; (3) demonstrates that the action against the defendant can withstand a motion to dismiss; and (4) proves that the discovery is likely to lead to the identification of the defendant such that service of process would be possible. *Id.*. If an applicant

---

11

satisfies all four good cause factors, the court must then also consider the potential chilling effect on First Amendment rights of ordering disclosure of an anonymous speaker's identity. *Id.*

Here, there is no evidence that all possible options available to Banco Azteca to discover the identities of the Non-Party Movants have been exhausted. In addition, the Amended Application fails to offer little more than conclusory assertions of how the purported Mexican proceedings could survive the equivalent of a motion to dismiss in Mexico. Specifically, the Amended Application simply asserts that "[t]he facts alleged herein would be sufficient to withstand a Motion to Dismiss in this Court and under Mexican law." (ECF No. 39 at 24.) That fails to explain *how* the facts would survive a motion to dismiss under Mexican or even U.S. law. Indeed, the barebones information that Banco Azteca has shared does not establish that there is a meritorious civil or criminal case against the Non-Party Movants. (Katz Dec. ¶¶ 15-16, 69-72.)

*In re Hoteles City Express* underscores the inadequacy of the Amended Application. In that case, "[t]he Declaration of Yolanda Medina Rodriguez offered in support of the ex parte application attests to the legal conclusion that Jose Juan Espinosa Torres's statement were 'slanderous/libelous,' but does not describe what the statements actually were." 2018 WL 3417551, at *3 (N.D. Cal. July 13, 2018). As a result, the court found that "Hoteles has provided insufficient information for the Court to determine whether it could actually state a claim for defamation under Mexican law. Without further information regarding the statements themselves and the law governing any claim based on the statements, the Court declines to grant the Section 1782 application." *Id.*

Similarly, the *Tokyo University of Social Welfare* court found the fourth *Intel* factor weighed in favor of quashing a subpoena where the applicant's attorney "offers an opinion as a Japanese lawyer that the Subject Tweet was posted for harassment purposes and constitutes defamation under Japanese law." 2021 WL 4124216, at *4. The court found this opinion was "entirely conclusory" and failed to explain how the tweets were defamatory or false. *Id.* at *5.

With respect to the criminal matter, Banco Azteca simply points to the alleged investigation by "Mexican law enforcement authorities" in efforts to demonstrate that it would

12

NON-PARTY X, META AND GOOGLE ACCOUNT HOLDERS' NOTICE OF MOTION AND
MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER - CASE NO.: 5:24-MC-80091-NC

survive a amotion to dismiss. (ECF No. 39-4.) That is insufficient. Simply because Mexican prosecutors have commenced an "investigation" does not mean that Banco Azteca's allegations would survive a motion to dismiss. (Katz Dec. ¶16.) This is particularly so where Banco Azteca has offered absolutely no evidence  by a percipient witness that Non-Party Movants are part of some "conspiracy" aimed at blackmailing Banco Azteca and there is evidence to the contrary. (Katz Dec. ¶ 67.)

With respect to the civil proceeding, Banco Azteca merely lays out the elements of a defamation claim and, in conclusory fashion, states that it would have a claim as against Non-Party Movants. Banco Azteca offers no analysis of how any statements by the Non-Party Movants would constitute defamation. (Katz Dec. ¶¶ 71-72.)

## C.     Additional Considerations

The Non-Party Movants are entitled to the protections of the First Amendment.

*First*, the Non-Party Movants have followers in the U.S. (Katz Dec. ¶ 67.) An order unmasking the Non-Party Movants would undermine their ability to freely communicate with their U.S.-based audience and thereby the right of free speech of their recipients in the U.S. As the Ninth Circuit has explained, "[t]he First Amendment protects speech for the sake of both the speaker and the recipient." *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 743 (9th Cir. 2021); *id.* at 740-744 (holding that the First Amendment protected the speech and speech-related conduct of noncitizens that took place in the United Arab Emirates and Australia); *see also Free Speech Coal., Inc. v. Rokita*, 2024 WL 3228197, at *6 (S.D. Ind. June 28, 2024) (concluding that foreign websites have the "ability to vindicate the First Amendment rights of its Indiana visitors through a facial challenge.") (citing *Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 306 (5th Cir.) (Higginbotham, J., concurring in part and dissenting in part)*, cert. granted*, 144 S. Ct. 2714 (2024); *see also United States v. 18 Packages of Magazines*, 238 F. Supp. 846, 847-48 (N. D. Cal. 1964) ("The [First Amendment] rights of readers are not to be curtailed because of the geographical origin of printed materials").

*Second*, the Non-Party Movants are anonymous in Mexico and/or the United States. The

13

Affected Account Holders can only lose their anonymity if this U.S.-based proceeding results in an order directing U.S. based social media companies to share their identifying information with Banco Azteca. Because any violation of the Affected Account Holders' rights can occur only within the United States, they are entitled to invoke the First Amendment to shield their right to free speech. *Cf. Mosafer Inc. v. Broidy*, 2022 WL 793029, at *10 (C.D. Cal. Feb. 4, 2022) (applying anti-SLAPP statute to statements by foreign defendants published abroad), *aff'd*, No. 22-55265, 2023 WL 8295921 (9th Cir. Dec. 1, 2023); *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 232 (5th Cir. 2022) ("Here, however, NYK invokes its constitutional due process rights in the course of litigation in the United States. Therefore, any constitutional violation can occur only in the United States") *cert. denied sub nom. Douglass v. Kaisha*, 143 S. Ct. 1021 (2023); *United States v. Bescond*, 24 F.4th 759, 768 (2d Cir. 2021) ("Bescond is not a free-floating foreigner invoking the jurisdiction of our federal courts to vindicate a Constitutional right. It is the *government* that invoked such jurisdiction when it pursued indictment; Bescond is a defendant in a U.S. criminal court. As such, she is not without rights.")

The United States' policy in favor of free speech extends to anonymous speech on the Internet: "[a]lthough the Internet is the latest platform for anonymous speech, online speech stands on the same footing as other speech…." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011).  That policy includes the promotion of anonymous speech abroad.[10] In that vein, courts have recognized that a "request for identifying information" that undermines First Amendment protections "is unduly burdensome under *Intel*." *In re PGS Home Co. Ltd*., 2019 WL 6311407, at *6 (N.D. Cal. Nov. 25, 2019).

Courts in the Ninth Circuit typically apply the test set forth in *Highfields Capital Management, L.P. v. Doe*, which applies subpoenas brought under Section 1782 and requires the applicant to present a "real evidentiary basis" for the claims it seeks to assert. 385 F. Supp. 2d 969, 975-967 (N.D. Cal. 2005). If the applicant does so, the court must determine whether "enforcing the subpoena would cause relatively little harm to the defendant's First Amendment and privacy

---

[10] *E.g.*, Hon. Hillary Rodham Clinton, Remarks on Internet Freedom, U.S. DEP'T OF STATE (Jan 21. 2020), https://2009-2017.state.gov/secretary/20092013clinton/rm/2010/01/135519.htm.

1  rights and that its issuance is necessary to enable plaintiff to protect against or remedy serious

2  wrongs." *Id.*

3      As set forth above, the Amended Application does not provide any "real evidentiary basis"

4  for the claims purportedly being asserted in Mexico. That factor is thus not satisfied, and the

5  analysis should end there. But even assuming arguendo that a "real evidentiary basis" were shown,

6  the Court should conclude that unmasking the anonymous account holders would harm First

7  Amendment rights. The Non-Party Movants are media organizations or individuals who

8  disseminate political speech that is core to the First Amendment's purpose, and the U.S.-based

9  public's right to hear that speech would be burdened if the account holders' speech was chilled.

10  That is a significant First Amendment concern as recognized by the case law cited above, and

11  counsels for denying the Application, particularly under the circumstances as set forth above.

12  **VI.    <u>CONCLUSION</u>**

13      Banco Azteca ironically claims that it "defer[s] to the processes and regulations followed

14  by the relevant law enforcement divisions in that jurisdiction and related law, including, but not

15  limited to, confidentiality requirements." (Fernández Dec., Ex. D.) This very proceeding is

16  predicated on evading such processes and regulations. (Katz Dec. ¶¶ 17-18.)

17      The real purpose of the Amended Application is to harass and intimidate social media

18  users and journalists who are perceived opponents of Ricardo Salinas Pliego. The Court should not

19  permit Banco Azteca's unnecessary and unwarranted fishing expedition to unmask the Affected

20  Account Holders without a serious and well-documented showing that each of these social media

21  users have done something that violates Mexican law. While unmasking the Non-Party Movants

22  would necessarily prejudice them, Banco Azteca "is not prejudiced because the MLAT procedure

23  remains available to Mexican prosecutorial or judicial authorities to seek the evidence if they

24  deem it necessary." *Antaeus Grp. LLC*, 2022 WL 17731821, at *9. The Court should thus exercise

25  its discretion to channel Banco Azteca's request through formal channels that will provide

26  appropriate safeguards.

27      In the alternative, the Court should defer consideration of the Amended Application and

28

NON-PARTY X, META AND GOOGLE ACCOUNT HOLDERS' NOTICE OF MOTION AND
MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER - CASE NO.: 5:24-MC-80091-NC

direct that Banco Azteca produce a copy of the criminal complaint and any other documents in its possession—attorneys' eyes only—to conduct further fact finding about what is transpiring in Mexico. *Cf. Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (reversing for "fact-finding about the nature of [an] English 'proceeding'" to account for procedural developments in the case). "[F]ederal courts are vested with certain inherent discovery powers owing to the equitable power of Chancery courts to issue bills of discovery." *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1409 (5th Cir. 1993). Discovery concerning the Mexican criminal would permit the Court to confirm that Banco Azteca has filed the Application and Amended Application to inappropriately harass political adversaries. This is particularly warranted where it appears that Banco Azteca's U.S. counsel has not reviewed any documents concerning the criminal matter in Mexico. (Fernández Dec. ¶10 & Exs. C & D.)

If the Non-Party Movants' Motion to Quash is denied, they respectfully request that the Court enter a protective order barring certain Subpoena requests and limiting the dissemination of other requests. Courts have discretion to issue a protective order for "good cause" in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c).  To establish "good cause," there must be a demonstration of specific prejudice or harm that would result from the absence of a protective order. *Phillips ex rel. Ests. of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002).

Here, the Subpoenas' request for the Affected Account Holders' credit card information is overbroad and should be barred under a protective order. Significant harm to the account holders could arise from their credit card information being disclosed to a Mexican bank, and Banco Azteca's Amended Application provides no reason why it needs this information to identify the account holders. *See In re Path Network, Inc.*, 2023 WL 8115045, at *17 (N.D. Cal. Nov. 22, 2023) ("Here, good cause exists to protect the privacy and rights of the persons whose information . . . may be produced by Discord in response to an appropriate subpoena ..")

16

NON-PARTY X, META AND GOOGLE ACCOUNT HOLDERS' NOTICE OF MOTION AND MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER - CASE NO.: 5:24-MC-80091-NC

DATED: September 17, 2024

Respectfully submitted,

COZEN O'CONNOR

By: /s/ Michael A. Fernández

Matthew E. Lewitz (SBN 325379)
mlewitz@cozen.com
COZEN O'CONNOR
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
T: (213) 892-7937
F: (310) 394-4700

Michael A. Fernández (Pro Hac Vice)
mfernandez@cozen.com
COZEN O'CONNOR
3 WTC, 175 Greenwich Street
55th Floor
New York, NY 10017
T: (212) 453-3713
F: (646) 461-2075

*Attorneys for Non-Party*
*X Account Holders,*
*John Doe 1 a.k.a @FreddyOliviery;*
*John Doe 2 a.k.a. @PonchoGutz;*
*Meta Account Holders,*
*John Doe 3 a.k.a. "Luis Guillermo*
*Hernández";*
*John Doe 4 a.k.a. "Hans Salazar"; and*
*Google LLC Account Holder,*
*John Doe 5 a.k.a. "SinCensuraTVMedia"*

17