Matthew E. Lewitz (SBN 325379)
  mlewitz@cozen.com
COZEN O'CONNOR
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
T: (213) 892-7937
F: (310) 394-4700

Michael A. Fernández (*Pro Hac Vice*)
  mfernandez@cozen.com
COZEN O'CONNOR
3 WTC, 175 Greenwich Street 55th Floor
New York, NY 10017
T: (212) 453-3713
F: (646) 461-2075

Attorneys for Non-Party
X Account Holders,
John Doe 1 a.k.a @FreddyOliviery;
John Doe 2 a.ka. @PonchoGutz;
Meta Account Holders,
John Doe 3 a.k.a. "Luis Guillermo Hernández";
John Doe 4 a.k.a. "Hans Salazar"; and
Google LLC Account Holder,
John Doe 5 a.k.a. "SinCensuraTVMedia"

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* Application of BANCO AZTECA S.A. INSTITUCIÓN DE BANCA MÚLTIPLE, for an Order Pursuant to 28 U.S.C. § 1782 Authorizing Discovery for Use in a Foreign Proceeding | Case 5:24-mc-80091-NC<br><br>**FACT AND EXPERT DECLARATION OF ILAN KATZ MAYO IN SUPPORT OF NON-PARTY X, META AND GOOGLE ACCOUNT HOLDERS'S - MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER** |

I, Ilan Katz Mayo, declare under the penalty of perjury:

1. I am a Mexican qualified attorney (*abogado* in México), registered to practice law in México.

1
DECLARATION OF ILAN KATZ MAYO IN SUPPORT OF
NON-PARTY X, META AND GOOGLE ACCOUNT HOLDERS'S
MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER
CASE 5:24-mc-80091-NC

2. I am a partner at the Katz & Gudiño S.C., a law firm in México with offices in Jalisco, Merida and Mexico City.

3. I am counsel in Mexico to X Corp. Account Holders, John Doe 1 a.k.a. @FreddyOliviery and John Doe 2 a.k.a. @PonchoGutz; Meta Account Holders, John Doe 3 a.k.a. "Luis Guillermo Hernández" and John Doe 4 a.k.a. "Hans Salazar"; and Google LLC Account Holder, John Doe 5 a.k.a. "SinCensuraTVMedia" (collectively, the "Affected Account Holders")

4. I submit this declaration in support of the Affected Account Holders' Notice of Motion and Motion to Quash and/or For Protective Order.

5. I am over the age of 18, and have personal knowledge of the facts contained herein, except where stated upon information and belief, which facts I believe to be true, and, if called as a witness in this proceeding, could and would competently testify thereto.

6. I am fully bi-lingual between English and Spanish and any translations from Spanish to English contained herein are mine.

**Qualifications**

7. I received my law degree from the Universidad Iberoamericana in Mexico City.

8. In addition to my formal studies, I have also received a Diploma in Money Laundering and Compliance, National and International Perspectives, sponsored by the Mexican Bar Association, College of Lawyers, A.C. and the Ibero-American Association of Economic and Business Criminal Law.

9. As a founding partner of Katz y Gudiño Abogados, S.C., I have worked at the firm since 2005. Recently, the firm was ranked Chambers Band 2 in Dispute Resolution: White-Collar Crime for México.

10. I have more than 20 years of experience as a litigator in criminal matters, specifically in property, banking and public servant crimes, both in local and federal jurisdictions throughout Mexico.

11. I've spoken extensively and taught on criminal law issues both domestically in

Mexico and internationally.

12. I'm also recognized for my significant legal contributions on television, radio and magazines in Mexico specialized in the legal field. I currently appear on Adela Micha's "La Saga" program in the "Y Legal" section to talk about legal issues every Tuesday.

13. I was the Coordinator of the Criminal Law Commission of the Mexican Bar Association, College of Lawyers A.C. and am currently the Coordinator of the Defense of the Defense Committee.

14. I'm also the Vice President of the Mexican Bar Association A.C. Foundation through which I offer my professional services free of charge and without expectation of any financial compensation. As a result of this work, I was awarded the "José Luis Nassar" Award for Pro Bono Social Service in 2022.

**Summary of Opinion**

15. In its Amended Application, Banco Azteca has failed to offer any evidence that would justify or otherwise result in the imposition of criminal or civil liability against the Affected Account Holders. In that respect, there would be no merit to any of the criminal or civil proceedings referenced in the Amended Application.

16. Simply because Mexican prosecutors have commenced an "investigation" does not mean that Banco Azteca's allegations have merit.

17. Given that any proceeding, civil or criminal, against the Affected Account Holders lacks merit, Banco Azteca's Amended Applicant's is best understood as an attempt to circumvent the mechanisms under Mexican Law that protect the Affected Account Holders's right to privacy.

18. Under Mexican penal law, any information in possession of foreign entities must be obtained through international procedural cooperation procedures regulated under the National Penal Procedure Code ("NPPC") and the US-Mexico MLAT. Banco Azteca has not proven that these procedures have been exhausted. Even if Banco Azteca were to be granted a U.S. court order to obtain the information from Meta, X and Google, it couldn't be used on a Mexican criminal

procedure since it was obtained informally.

**Mexican Legal Framework**

**A.      Overview of Mexican Criminal Proceedings**

19.     Mexican criminal proceedings are regulated by the Constitution of the United Mexican States ("Mexican Constitution") and the NPPC.

20.     Under the Mexican Constitution, defendants have a presumption of innocence and defense. *See* Mexican Constitution, Article 20, section B.

21.     Under the NPPC, criminal matters should, as a conceptual matter, be understood to have three stages: 1) the investigation (*see generally* NPPC Articles 212-325); 2) the pre-trial preparation phase (*see generally* NPPC, Articles 326-347); and 3) the trial (*see generally* NPPC, Articles 348-413).

**1.      The Investigation**

22.     The investigation begins with the initial investigation following a denunciation or formal complaint of facts that probably constitute a crime (or the detention of the defendant if she was caught *in flagrante delicto*), which is received by a prosecutor who carries out inquiries to evaluate the merits of the case. *See generally* NPPC Articles 212-303.

23.     If the prosecutor concludes that he has sufficient evidence to proceed with a case, he will request an initial hearing before a judge to request the initiation of a criminal proceeding against the accused. *See generally* NPPC, Articles 307-320. At the initial hearing, the judge can authorize cautionary measures (which may last during the duration of the entire case) to ensure that the accused party is available for the process, that the investigation can continue or to ensure the security of the victims, witnesses and the community. Upon the conclusion of the initial hearing, the judge will rule on whether there's reasonable evidence that the crime was probably committed by the defendant that would warrant taking the case to Trial ("Auto de Vinculación a Proceso"/"Auto de No Vinculación a Proceso").

24.     When there's a "vinculación a proceso" ruling, there will be a complementary

investigation, which can last up to 6 months. During this complementary investigation, the prosecutor and the parties (defense and victim's attorneys) will make inquiries that confirm or rebut the facts, in order to verify if there's enough evidence to go to trial (proof beyond reasonable doubt of the crime and the liability of the defendant). *See generally* NPPC, Articles 321-325.

### 2. The Pre-Trial Stage

25. After the term for complementary investigation has concluded, the case transitions to the pre-trial stage to prepare the case for trial by establishing the evidence that will be produced during trial.

26. Following the "vinculación a proceso," the prosecutor has an on-going constitutional obligation to give access to the case file to the parties.

27. During the pre-trial stage, the prosecutor files their formal accusation within the next 15 days of the end of the complementary investigation, and the victim and defense attorney have time to file their responses to it –3 and 10 days, respectively–, as well as to exchange their discovery to the prosecution.

28. The pre-trial stage concludes with an oral phase, which consists of a hearing at which the parties can try to stipulate as to facts that will be proven during trial and confer regarding the admissibility of evidence that will be produced in trial.

29. At the end of the oral hearing, the judge issues an "Opening to Oral Trial" ruling ("Auto de Apertura a Juicio Oral") to inform the trial court of the evidence that was admitted and if there were any stipulations as to facts.

### 3. The Trial Stage

30. A trial begins with the trial court receiving the "Opening to Oral Trial" ruling and setting dates during which evidence will be presented, which must begin within the next 20 to 60 days from the opening to trial ruling. The trial begins with the opening statements of the parties and proceeds to evaluate the evidence (witnesses, expert witnesses, material evidence and documents) produced by the parties through direct and cross examination. The prosecutor is first

5
DECLARATION OF ILAN KATZ MAYO IN SUPPORT OF
NON-PARTY X, META AND GOOGLE ACCOUNT HOLDERS'S
MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER
CASE 5:24-mc-80091-NC

to present their evidence. This is followed by the victim's attorney and the defense. After all the evidence is presented, the parties can make their closing arguments and then the court will make a recess to prepare their ruling. If the court makes an acquittal ruling, the sentence will be drafted and explained within the next 5 days. But if the ruling condemns the defendant, the court must set date for a new hearing to set the amount for penalties and reparations.

31. During the whole procedure the parties can have the right to challenge certain judicial decisions through appeal and/or amparo procedures, which also apply to the trial sentence.

**B.** **Mechanism to Unmask a Party Under Mexican Law**

32. In Mexico, personal data is protected as part of the constitutional right to privacy. *See* Mexican Constitution, Article 6.

33. Personal data is defined as any information concerning an identified or identifiable natural person and includes a person's name, address, family, financial information, phone numbers, email accounts, medical records.

34. Consistent with its protected nature, a prosecutor must obtain a judicial order whenever they will request or subpoena information that seeks personal data. *See* NPPC, Article 252 and 22, subsection III of the Personal Data Held by Obligated Subjects General Act.

35. In an international setting, a prosecutor that seeks personal data would seek the support of a foreign prosecutor through the use of a Mutual Legal Assistance Treaty or by means of letters rogatory.

**C.** **Overview of the U.S.-Mexico Mutual Legal Assistance Treaty (MLAT)**

36. Under the NPPC, any requests for assistance (both incoming and outgoing) must be processed through the Central Authority, which is the Attorney General of the Republic ("Fiscalía General de la República"). NPPC, Article 437. In evaluating a request, the Central Authority must follow the MLAT and NPPC. If the Central Authority receives any information without following the procedures provided for in an MLAT or Mexican law, it will be deemed informal assistance and must be perfected by going through the official request according to the applicable law.

NPPC, Article 455.

37. There's an MLAT between Mexico and the United States of America, which regulates the process for international procedural cooperation between these two countries.

38. In a local (*i.e.*, state) criminal investigation, a Mexican prosecutor must 1) obtain a court order requesting information and 2) have the order transmitted to the International Affairs Office of the Attorney General of the Republic in Mexico City, which will analyze the request and, if they deem it admissible, transmit the request to the Central Authority. *See* NPPC, Articles 441 and 443 and US-Mexico MLAT, Article 2.

39. For a request for assistance to be deemed admissible, it has to satisfy the minimum requirements contained in the NPPC—i.e., state the nature of the investigation or procedure, the purpose of the assistance, the names and addresses of the parties involved, etc.—and the MLAT. *See* NPPC, Articles 442 and US-Mexico MLAT, Article 4.2. In the specific case of request of documents, records or evidence, the request must contain the location of the requested records or documents. See NPPC, Article 447.

40. A request can be rejected by the requested State (i.e., the United States) if it exceeds its' legal authority or it's forbidden by the legal provisions in force of the requested State[1], among others. *See* NPPC, Article 440, subsection II and US-Mexico MLAT, Article 1.3, subsection a.

41. Finally, the information or evidence obtained through the assistance procedure cannot be used for purposes other than those stated in the request without the prior consent of the Coordinating Authority of the requested party and can be kept as confidential. *See* NPPC, Article 444 and US-Mexico MLAT, Article 6.

42. In conclusion, any information on personal data from a suspect or probable defendant, obtained from foreign entities must fulfill the requirements provided for both the NPPC and the US-Mexico MLAT. Failure to comply with these requirements could result in rejection of

---

[1] In which case the Coordinating Authorities shall consult with each other to identify alternative lawful means for securing assistance.

the evidence. *See* NPPC, Article 97-102.

**D.     Protection of Free Speech in Mexico**

43.     The Mexican Constitution protects individuals' freedom to disseminate opinions, information and ideas, through any means, forbidding government controls and prior censorship *See* Mexican Constitution, Article 7.

44.     In recent years, the Mexican Supreme Court of Justice (SCJN) has issued numerous precedents regarding freedom of speech. For the purposes of this declaration I will focus on the SCJN's more notable precedents.

45.     Broadly speaking, Mexico's free speech caselaw recognizes a distinction between speech that is private versus speech that is of public interest as follows:[2]

   a. An individual's private speech is protected as part of the right to personal autonomy, regardless of its' public relevance, and can't be invaded by the State.
   b. Political speech, in turn, is protected by the State to ensure the participation of individuals in decisions of public interest.
   c. Speech that if of public interest only loses its constitutional protection when the speaker acts with real malice[3], which requires the message to have false information that was included with the intent of causing damage. In that regard, the speaker must have previously known that the information was false or acted with disregard for the truth. Therefore, inflammatory or outrageous statements are protected, if they have a truthful factual basis.

46.     In addition, Mexico's free speech caselaw recognizes the differences between information and opinions. Significantly, any opinions cannot be regulated by the State and cannot

---

[2] Decision issued by the First Chamber of Mexico's Supreme Court of Justice (October 22, 2014). Reporting Justice: Arturo Zaldívar Lelo de Larrea. Action For Constitutional Relief Through Direct Injunction 1434/2013.
[3] Decision issued by the First Chamber of Mexico's Supreme Court of Justice (May 14, 2014). Reporting Justice: Arturo Zaldívar Lelo de Larrea. Action For Constitutional Relief Through Direct Injunction 1434/2013 and others.

serve as a basis for the imposition of liability.[4]

47. Regarding speech from anonymous individuals there are few precedents, but the SCJN has said that the Internet represents a major advance as an interactive medium and has emphasized the value of its "its speed, global reach, and *relative anonymity*" [5].

### E. Remedies for Libel or Defamatory Speech

48. With respect to any speech that damages another party and that doesn't receive constitutional protection, the remedies available turn on the extent of the damage. When the damages caused are light and against a private individual, the affected party can exercise their right of reply; if there is more than de minimis damages against a private individual or serious damages to the detriment of a public figure or group, then civil sanctions are in order (such as reparation of damages); and penal sanctions will only be applied when the speech causes serious damages to private individuals[6].

### Documents Reviewed

49. I have reviewed *Banco Azteca's Notice of Application and Ex Parte Application for an Order Pursuant to 28 U.S.C. § 1782 Authorizing Discovery for Use In A Foreign Proceeding* and related documents.

50. I have also reviewed *Banco Azteca's Amended Notice of Application and Ex Parte Application for an Order Pursuant to 28 U.S.C. § 1782 Authorizing Discovery for Use In A Foreign Proceeding* and related documents (the "Amended Application").

51. I have also reviewed the publicly accessible versions of the social media accounts for the Affected Account Holders. For the Court's benefit, I summarize below my research findings.

---

[4] Decision issued by the First Chamber of Mexico's Supreme Court of Justice (May 14, 2014). Reporting Justice: Jorge Mario Pardo Rebolledo. Action For Constitutional Relief Through Direct Injunction 3111/2013.

[5] Decision issued by the Second Chamber of Mexico's Supreme Court of Justice (April 19, 2017). Reporting Justice: Alberto Pérez Dayán. Action For Constitutional Relief Through Injunction 1/2017.

[6] Decision issued by the First Chamber of Mexico's Supreme Court of Justice (November 23, 2011). Reporting Justice: Arturo Zaldívar Lelo de Larrea. Direct Injunction 28/2010 and others.

9
DECLARATION OF ILAN KATZ MAYO IN SUPPORT OF
NON-PARTY X, META AND GOOGLE ACCOUNT HOLDERS'S
MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER
CASE 5:24-mc-80091-NC

A. **John Doe 5—Sin Censura TV**

52. As explained by Sin Censura TV on its website: "Sin Censura TV is an unprecedented effort by both free and independent journalists, as well as experts in different disciplines and fields, who seek to incite the critical spirit of audiences tired of lies and manipulation in corporate or conventional media. All of us who work at Sin Censura seek to serve you with truth and justice, thus displacing robotic and hypocritical journalism, through human, real and participatory information work, and whose objective will always be the establishment of increasingly democratic societies."[7]

53. Here are the details of the channel:

**Channel details**
- www.youtube.com/@SinCensuraTVMedia
- 1.37M subscribers
- 108,176 videos
- 1,095,350,535 views
- Joined Sep 28, 2015
- United States

54. Over the years, Sin Censura has been critical of Ricardo Salinas Pliego's political activities and views. *E.g.,* #MARTÍNORTA #SINCENSURA: RICARDO SALINAS PLIEGO ES OTRO MISERABLE... - YouTube, https://www.youtube.com/watch?v=UdmPoliSdV0 ("Ricardo Salinas Pliego is Another Miserable") (translation mine).

55. Unsurprisingly, Ricardo Salinas Pliego has shown animosity towards Sin Censura TV going so far as to use vulgar terms to describe it. *E.g.,* https://x.com/RicardoBSalinas/status/1687145596476661760 ("I am against social resentment, of encouraging hatred through forcing a 'class struggle', I am against the violence and authoritarianism that Marxist asshole [sons of bitches of their mothers] proclaim as . . . [Sin Censura TV]") (translation mine).

---

[7] For the avoidance of doubt, I have translated the About Me from Sin Censuras website at: ¿Quiénes somos? – Sin Censura TV, https://sincensuratv.com/quienes-somos-2/

56. In the Amended Application, Banco Azteca cites to one video clip published on Sin Censura TV entitled "WITHDRAW YOUR SAVINGS FROM BANCO AZTECA! THE CAMPAIGN THAT IS SOUNDING LOUD ON THE NETWORKS".[8]

57. The video clip consists of a news report from November 9, 2023 about a social media campaign concerning Banco Azteca. For context, here is a transcription of the news report which I have translated:

| Spanish Original | English Translation |
|---|---|
| 0:00: muy fuerte en las redes sociales hay una | 0:00: There is a very strong campaign on social media |
| 0:02: campaña muy fuerte en las redes sociales | 0:02: So strong campaign on social media |
| 0:05: para para que la gente invitar a la | 0:05: So people can invite people to |
| 0:07: gente a que retire sus ahorros de Banco | 0:07: Withdraw their savings from the Bank of |
| 0:09: Azteca porque hay una supuestamente un | 0:09: Azteca because there is supposedly a |
| 0:12: peligro de inminente quiebra este va a | 0:12: Danger of imminent bankruptcy. This is going to |
| 0:15: funcionar la campaña o no Ya lo veremos | 0:15: Whether the campaign works or not, we will see |
| 0:17: en los siguientes meses pero mire | 0:17 In the following months, but look |
| 0:20: también tenemos para analizar las | 0:20 We also have to analyze the |
| 0:21: noticias del día | 0:21 News of the day |

58. Notably, the video clip does not suggest that Banco Azteca was bankrupt, that it would cease to exist in Mexico, or urging the public to withdraw their money from Banco Azteca financial institutions.

B.   **John Doe 4—Hans Salazar**

59. Over the years, Hans Salazar has been critical of Ricardo Salinas Pliego's political

---

[8] The video clip of the news report can be found at: ¡RETIRA TUS AHORROS DE BANCO AZTECA! LA CAMPAÑA QUE ESTÁ SONANDO FUERTE EN REDES (youtube.com), https://www.youtube.com/watch?v=he60OghtHFw

activities and views. *E.g., Hans Salazar MXPS on X: "Esto no lo presume en sus medios de desinformación: El magnate evasor de impuestos, Ricardo Salinas Pliego, pierde más de 2 mil MDP en tres meses https://t.co/S59cgDBXgu" / X*, https://mobile.x.com/Hans2412/status/1722994489742999758 ("This is not presumed in their disinformation media: The tax evading tycoon, Ricardo Salinas Pliego, loses more than 2 thousand million pesos in three months.") (translation mine)

60.  In response, Ricardo Salinas Pliego has shown animosity towards Hans Salazar going so far as to use vulgar terms to describe him. *E.g.*, https://x.com/RicardoBSalinas/status/1687145596476661760 ("I am against social resentment, of encouraging hatred through forcing a 'class struggle', I am against the violence and authoritarianism that Marxist asshole [sons of bitches of their mothers] proclaim as . . . [Sin Censura TV]") (translation mine).

61.  I ran a search on Hans Salazar's Facebook page of publicly available posts referencing "Banco Azteca". I have identified no posts by him in the period from November 2023 to February 2024 referencing Banco Azteca.

### C.  **John Doe 3—Luis Guillermo Hernández**

62.  I ran a search on Luis Guillerno Hernández's Facebook page of publicly available posts referencing "Banco Azteca". I have identified only one post by him in the period from November 2023 to February 2024 that is critical of Banco Azteca.

### D.  **John Doe 2—@PonchoGutz**

63.  @PonchoGutz is a "Director in ElDeforma and SDPitorreo, creative en SDPNoticias, Milenio and Multimedios. Voice of El Heraldo de México." *Poncho Gutiérrez (@PonchoGutz) / X*, https://x.com/PonchoGutz

64.  Over the years, @PonchoGutz has been critical of Ricardo Salinas. *E.g., Poncho Gutiérrez on X: "Don Richard, páseme su cuenta de Banco Azteca, ya voy para el Oxxo." / X*, https://x.com/PonchoGutz/status/1638599054681681921 ("Don Richard, give me your Banco

Azteca account, I'm going to Oxxo[9].) (translation mine).

65. Using "X," I ran a search of publicly available posts referencing "Banco Azteca" on @PonchoGutz. I have identified no posts by him in the period from November 2023 to February 2024 referencing Banco Azteca.

**E.    John Doe 1—@FreddyOliviery**

66. Using "X," I ran a search of publicly available posts referencing "Banco Azteca" on @FreddyOliviery. I identified several posts by him in the period from November 2023 to February 2024 that are critical of Banco Azteca.

**Facts Considered**

67. To preserve their anonymity, the Affected Account Holders users have asked that I relay the following facts on their behalf:

    a.  They have followers in the United States.

    b.  They did not engage, retain or otherwise direct any individuals to represent them and communicate with Banco Azteca to demand blackmail money.

    c.  They have not demanded blackmail money from Banco Azteca.

68. I am authorized by John Does 1-5 to state that they would provide a declaration under oath affirming the statements set out in the preceding paragraph if required by the court with appropriate safeguards for their anonymity.

**Analysis of Legal Proceedings against the Non-Party X, Meta and Google Account Holders**

69. I've reviewed the Banco Azteca's Amended Application and, in my opinion, it doesn't present sufficient evidence to prove any statements that would result in any criminal or civil consequences for the Affected Account Holders.

70. Banco Azteca offers no analysis of how any statements by the Affected Account Holders would constitute defamation.

71. Based on my own affirmative research, I located no posts by John Doe 2 a.ka.

---

[9] Oxxo is a popular convenience store in Mexico.

@PonchoGutz and John Doe 4 a.k.a. "Hans Salazar" referencing Banco Azteca between November 2023 and February 2024.

72. With respect to the commentary by John Does 1, 3 and 5 that reference Banco Azteca between November 2023 and February 2024, it is my opinion that they would be considered constitutionally protected opinions under Mexican Law and would not be subject to criminal or civil liability.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this __17__ day of September, 2024, at Mexico City, Mexico

By: _____
Ilan Katz Mayo