Julie E. Schwartz, Bar No. 260624
JSchwartz@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile:  +1.206.359.9000

Attorney for Respondent
META PLATFORMS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re Application BANCO AZTECA S.A. INSTITUTIÓN DE BANCA MÚLTIPLE, for an Order Pursuant to 28 U.S.C. § 1782 Authorizing Discovery for Use in a Foreign Proceeding | Case No. 5:24-mc-80091-NC<br><br>**RESPONDENT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA AND OPPOSITION TO AMENDED APPLICATION**<br><br>Hearing Date:   October 16, 2024<br>Hearing Time:  11:00 a.m.<br>Courtroom:        5 – 4th Floor<br>Judge:       Magistrate Judge Nathanael M. Cousins |

## NOTICE OF MOTION AND MOTION TO QUASH

**PLEASE TAKE NOTICE** that on October 16, 2024 at 11:00 a.m. via a Zoom webinar, or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, located at the San Jose Courthouse, Courtroom 5 – 4th Floor, 280 South 1st Street, San Jose, CA 95113, Respondent Meta Platforms, Inc. ("Meta") will, and hereby does, move this Court for an order quashing Banco Azteca S.A. Institución de Banca Múltiple's ("Applicant") subpoena dated April 11, 2024 and served on July 2, 2024, ECF 19 (the "Subpoena") and denying Applicant's Amended Application for an Order Pursuant to 28 U.S.C. § 1782 Authorizing Discovery for Use in a Foreign Proceeding, ECF 39 ("Amended Application").

This Motion is brought pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iii), which requires a court to quash a subpoena that requires disclosure of protected matter. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Julie E. Schwartz, all pleadings and papers on file in this action, and such other matters as the Court may consider.

Meta respectfully requests that the Court quash the Subpoena and deny the Amended Application because Applicant has failed to satisfy the threshold conditions of 28 U.S.C. § 1782 and the discretionary factors articulated in the Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 264-65 (2004).

Dated:  September 17, 2024          **PERKINS COIE LLP**


By: */s/ Julie E. Schwartz*
Julie E. Schwartz, Bar No. 260624


Attorney for Respondent
META PLATFORMS, INC.

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 4

    A.    Initial Application, Order, and Objections.................................................. 4

    B.    Amended Application ................................................................................ 5

        1.    Applicant's Description of Alleged Mexican Criminal Proceedings........ 5

        2.    Applicant's Descriptions of Alleged Mexican Civil Proceedings ............ 7

        3.    Information Sought by Applicant............................................................ 8

III.  LEGAL STANDARD .......................................................................................... 8

IV.   ARGUMENT ...................................................................................................... 9

    A.    The Court Should Quash the Subpoena and Deny the Amended
        Application. ............................................................................................... 9

        1.    Applicant has not established the threshold requirement of Section
            1782 that the proposed discovery is "for use in a foreign
            proceeding." ........................................................................................ 9

            a.    Applicant has not shown that claims against the Anonymous
                Speakers are within reasonable contemplation. ........................... 10

            b.    Applicant has not shown that a criminal proceeding exists or
                is reasonably contemplated. ......................................................... 11

            c.    Applicant has not shown that a civil proceeding exists or is
                reasonably contemplated............................................................. 12

        2.    The Discretionary *Intel* Factors Weigh Against Applicant's
            Request. ............................................................................................ 13

            a.    Under the first *Intel* factor, the availability of the MLAT
                process weighs against discovery from Meta............................... 13

             b.    Under the third *Intel* factor, Applicant's proposed discovery
                appears to be an attempt to circumvent the policies of the
                United States and Mexico. ........................................................... 14

             c.    Under the fourth *Intel* factor, Applicant fails to meet the
                standards for unmasking the Anonymous Speakers...................... 16

                (i)    Applicant has not satisfied the *Highfields* test. ................. 16

                (ii)    Applicant has not satisfied even the lowest standard
                  of review for disclosure of identifying information. ........ 19

1

V.      CONCLUSION ............................................................................................................. 20

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bush v. Cardtronics, Inc.*,
   No. CV H-20-2642, 2020 WL 6261694 (S.D. Tex. Oct. 23, 2020)........................................ 10

*CFE Int'l LLC v. Denham Cap. Mgmt. LP*,
   No. 22-MC-91355-FDS, 2023 WL 2988745 (D. Mass. Mar. 6, 2023) ................................. 14

*Glassdoor, Inc. v. Superior Court*,
   9 Cal. App. 5th 623 (2017) ................................................................................................ 4

*Highfields Capital Mgmt., L.P. v. Doe*,
   385 F. Supp.2d 969 (N.D. Cal. 2005) .................................................................... 3, 17, 18, 19

*IJK Palm LLC v. Anholt Servs. USA, Inc.*,
   33 F.4th 669 (2d Cir. 2022).............................................................................................. 9, 10

*In re Anahara*,
   No. 22-MC-80063-JCS, 2022 WL 783896 (N.D. Cal. Mar. 15, 2022) ................................. 16

*In re Anonymous Online Speakers*,
   661 F.3d 1168 (9th Cir. 2011)............................................................................................. 16

*In re Application of Banco Mercantil del Norte, S.A.*,
   No. 3:23-mc-08, 2023 WL 6690708 (E.D. Va. Oct. 12, 2023)........................................ 10, 12

*In re Application of Ontario Principals' Council*,
   No. 2:13-MC-120-LKK-KJN, 2013 WL 6844545 (E.D. Cal. Dec. 23, 2013) ...................... 16

*In re Application of Republic of Turkey*,
   No. CV 2:20-MC-36, 2021 WL 671518 (S.D. Ohio Feb. 22, 2021) .................................... 15

*In re Choi*,
   No. 5:24-mc-80043-EJD, 2024 WL 1120130 (N.D. Cal. Mar. 14, 2024) ...................... 14, 15

*In re Ex Parte Application of HYBE Co., LTD.*,
   No. 24-MC-80117-VC, 2024 WL 3218386 (N.D. Cal. June 28, 2024)................................ 15

*In re Ex Parte Application of Qualcomm Inc.*,
   162 F. Supp.3d 1029 (N.D. Cal. 2016) .......................................................................... 13, 14

*In re Frontier Co., Ltd.*,
   No. 19-mc-80184-LB, 2019 WL 3345348 (N.D. Cal. July 25, 2019).................................. 17

*In re Grand Jury Investigation of Possible Violation of 18 U.S.C. 1461 et seq.*,
   706 F. Supp. 2d 11 (D.D.C. 2009) ........................................................................................ 4

*In re Microsoft Corp.*,
No. C 06-80038JF (PVT), 2006 WL 825250 (N.D. Cal. Mar. 29, 2006) ............................... 9

*In re Planning. & Dev. of Educ., Inc.*,
No. 21-mc-80242-JCS, 2022 WL 228307 (N.D. Cal. Jan. 26, 2022) .................................... 16

*In re Tagami*,
No. 21-mc-80153-JCS, 2021 WL 5322711 (N.D. Cal. Nov. 16, 2021) ......................... 16, 19

*In re Takada*,
No. 22-MC-80221-VKD, 2023 WL 1442844 (N.D. Cal. Feb. 1, 2023)......................... 18, 19

*In re Team Co., Ltd.*,
No. 22-MC-80183-VKD, 2023 WL 1442886 (N.D. Cal. Feb. 1, 2023)................................. 18

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) ................................................................................................... passim

*Inv. Vehicles v. KPMG, L.L.P.*,
798 F.3d 113 (2d Cir. 2015) ..................................................................................... 10, 12

*Khrapunov v. Prosyankin*,
931 F.3d 922 (9th Cir. 2019) ............................................................................................ 8

*Lamont v. Postmaster General of U.S.*,
381 U.S. 301 (1965) ......................................................................................................... 18

*Leutheusser-Schnarrenberger v. Kogan*,
No. 18-MC-80171-JSC, 2018 WL 5095133 (N.D. Cal. Oct. 17, 2018) .................... 11, 12, 13

*Mangouras v. Squire Patton Boggs*,
980 F.3d 88 (2d Cir. 2020) ................................................................................................ 9

*Matter of Application of O2CNI Co., Ltd.*,
No. C 13-80125 (CRB) (LB), 2013 WL 4442288 ................................................................ 15

*Miyawaki v. Google LLC*,
*No.* 5:24-MC-80132-EJD, 2024 WL 2852142 (N.D. Cal. June 5, 2024) ............................. 14

*Music Grp. Macao Commercial Offshore Ltd. v. Does*,
82 F. Supp. 3d 979 (N.D. Cal. 2015) ......................................................................... 17, 19

*Suzlon Energy Ltd. v. Microsoft Corp.*,
671 F.3d 726 (9th Cir. 2011)............................................................................................ 18

*Thunder Studios v. Kazal*,
13 F.4th 736 (9th Cir. 2021) ................................................................................. 3, 17, 18

*United States v. 18 Packages of Magazines*,
238 F. Supp. 846 (N.D. Cal. 1964) .................................................................................. 18

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976) ............................................................................................. 18

*Zuru, Inc. v. Glassdoor, Inc.*,
    614 F. Supp. 3d 697 (N.D. Cal. 2022) .................................................................. 18

**STATUTES**

28 U.S.C. § 1782 ....................................................................................................... passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ........................................................................................................... 17

First Amendment to the United States Constitution ................................................. passim

## <u>MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA AND IN OPPOSITION TO AMENDED APPLICATION</u>

## I.      INTRODUCTION

The Court should quash Applicant Banco Azteca S.A. Institucion de Banca Múltiple's ("Applicant") subpoena to Respondent Meta Platforms, Inc. ("Meta") dated April 11, 2024 and served on July 2, 2024, ECF 19 (the "Subpoena")[1] and deny Applicant's Amended Application for an Order Pursuant to 28 U.S.C. § 1782 Authorizing Discovery for Use in a Foreign Proceeding, ECF 39 ("Amended Application").  Applicant has not satisfied the mandatory Section 1782 factors or the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ("*Intel*") for issuance of a subpoena.  Instead, the Amended Application sets forth inconsistent and contradictory grounds for its request and, rather than "narrowing the issues," calls into question Applicant's purpose in seeking the users' identities in this case.  Indeed, Applicant has not met the high threshold for compelling a provider to reveal the identity of an anonymous user.  And given the contradictions in the Amended Application, Applicant's stated justifications for the discovery sought here deserve close attention.

Meta operates the Facebook service, which allows users the ability to share their experiences and build communities online.  Applicant, a Mexican bank chain, claims it is the target of a "coordinated multi-national financial terrorism campaign effectuated by mostly Anonymous Speakers" on the X, YouTube, and Facebook services.  Applicant seeks discovery from Meta in an attempt to unmask the anonymous speakers on the Facebook platform ("Anonymous Speakers") in connection with purported criminal and/or civil proceedings in Mexico. ECF 39 at 7.

As noted above, Applicant has not met the statutory requirements for issuance of discovery under Section 1782.  In particular, although Applicant has partially pivoted from relying on a purported criminal case to relying on a civil case it is "exploring," Applicant has not

---

[1] The Subpoena issued in connection with Applicant's *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782, filed April 16, 2024 (the "Initial Application). ECF 1.

shown that either a criminal or civil proceeding against the Anonymous Speakers has been initiated or is within reasonable contemplation.  The Amended Application's inconsistency as to the type of proceeding for which user identities are sought also leaves Applicant's purpose or purposes unclear.  Applicant further has not identified a single statement made by the Anonymous Speakers or introduced any screenshots of the speech[2] that would predicate any action against them.  Instead, Applicant relies only on conclusory claims that the Anonymous Speakers are part of a broader campaign.  But Applicant has not established whether it could bring any claim against the Anonymous Speakers at all, let alone whether criminal and/or civil proceedings are within reasonable contemplation:

- The Initial Application relied upon a purported criminal case in which Applicant is the complainant but said nothing about whether Mexican law enforcement authorities intended to take any additional steps and indicated they had taken none that would require user identifying information.
- The Amended Application continues to seek information in connection with a purported criminal proceeding but provides even less information about the proceeding or how the information sought would be used.
- And as for the putative civil action, Applicant has not provided anything to suggest a civil action against the Anonymous Speakers is reasonably contemplated, or stated unequivocally that Applicant intends to initiate it, or described potential claims in any detail.

In addition, the majority of the four discretionary factors set forth in *Intel* weigh against disclosure.[3]

---

[2] Counsel for Banco Azteca provided counsel for Meta with screenshots from certain accounts that were not included with the Initial Application, but Applicant has not provided those screenshots, a description of them, or an analysis of their content to the Court.

[3] As discussed below, a court's discretion is guided by four factors:  (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the request is "unduly

1    The first *Intel* factor weighs against disclosure for a criminal proceeding because, if there

2    is an actual criminal investigation or case, the discovery is available to Mexican law enforcement

3    through the Mutual Legal Assistance Treaty ("MLAT") between the United States and Mexico.

4    The Amended Application and Proposed Order expressly seek identifying information for use in a

5    criminal proceeding, and if Mexican law enforcement authorities need such information for a real

6    criminal case, they can, and should, seek it through the MLAT process.[4]

7    Relatedly, the third *Intel* factor weighs against disclosure because the Amended

8    Application appears to be "an attempt to circumvent foreign proof-gathering restrictions or other

9    policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.  Despite Applicant's

10    bare claim that it is not attempting to circumvent any proof-gathering restrictions or policies of

11    Mexico or the United States, ECF 39 at 19, the Amended Application would circumvent both by

12    seeking information for purposes of a criminal case while avoiding the MLAT process, which is

13    subject to legal and policy review (including assessment of free-speech issues) by the

14    governments of both countries.

15    Finally, under the fourth *Intel* factor, to unmask an anonymous speaker, the First

16    Amendment to the United States Constitution requires a litigant to establish a *prima facie* claim

17    under the foreign law against the defendant in question, and show that the balancing of harms

18    weighs in its favor. *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp.2d 969, 975-76 (N.D.

19    Cal. 2005) ("*Highfields*").  This unmasking test applies at least to the "MorenaNY1" account, as

20    there is evidence that the users are residents of the State of New York.[5] Declaration of Julie E.

21    Schwartz ("Schwartz Decl."), Ex. A ("About Morena New York Comité 1 . . . Somos ciudadanos

22    mexicanos que viven en Nueva York."); *Id*., Ex. B ("Page manager locations include United

23    States, Mexico").

24    Applicant has failed to make a sufficient showing under the *Highfields* test, as there is *no*

25

26    intrusive or burdensome." *Intel*, 542 U.S. at 265.
[4] Applicant has not provided sufficient information about the tribunal or alleged proceedings to
27    analyze the second factor.
[5] *See Thunder Studios v. Kazal*, 13 F.4th 736 (9th Cir. 2021) (First Amendment protects speech in
28    the United States, even by foreign citizens).

1   *evidence* before the Court that would establish a *prima facie* claim against the "MorenaNY1"

2   account holder.[6]  This conclusion should also apply to the remaining Anonymous Speakers, as it

3   is unclear whether they are United States persons and/or present in the United States.  But

4   regardless, Applicant's claims fail under *any* standard.  Applicant has not even identified a single

5   statement made by the Anonymous Speakers, let alone demonstrated that the statements are

6   somehow actionable under Mexican law.

7        Because Applicant has not established the predicate for an order under Section 1782 and

8   has not provided sufficient information to justify an order issuing discovery under the *Intel*

9   discretionary analysis, this Court should quash the Subpoena and deny the Amended Application.

10  **II.     BACKGROUND**

11       **A.     Initial Application, Order, and Objections**

12       Applicant is a Mexican bank chain that operates in Mexico, Panama, Guatemala, and

13  Honduras.  On April 16, 2024, Applicant filed the Initial Application. ECF 1.  The Initial

14  Application sought to compel Meta to reveal the identities of the Anonymous Speakers, who are

15  users of Meta services, in furtherance of a purported criminal investigation arising from allegedly

16  defamatory statements regarding Applicant that the Anonymous Speakers allegedly posted on

17  their Facebook accounts (the "Targeted Accounts").[7] ECF 1.

18       Counsel for Meta met and conferred with counsel for Applicant on May 23, 2024.

19  Schwartz Decl. ¶ 4.  During the call, counsel for Applicant stated that the Anonymous Speakers

20  had criminally defamed Applicant for political reasons, which caused a panic that resulted in

21  Applicant losing 8% of its deposits. *Id.*  Counsel for Applicant further stated that the users told

22  Applicant that they would stop posting messages if the bank paid them money. *Id.*  As a result,

23

24  [6] Meta has standing to raise First Amendment objections on behalf of its account holders. *See In*
    *re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*, 706 F. Supp. 2d 11,

25  17 n.3 (D.D.C. 2009) (company had standing to bring First Amendment challenge on behalf of its
    customers) (citing *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988); *see also*

26  *Glassdoor, Inc. v. Superior Court*, 9 Cal. App. 5th 623, 629 (2017) (company may "assert the
    First Amendment interests of [its] anonymous contributors in maintaining anonymity").

27  [7] Unless otherwise indicated, the initial Application presented materially the same facts and
    arguments regarding the purported Mexican criminal investigation that the Amended Application

28  recites and that are summarized herein.

1   Applicant was pursuing charges of criminal conspiracy and "financial terrorism." *Id.*

2       Meta did not oppose the issuance of the subpoena Applicant sought so long as it and

3   affected accountholders could object to the subpoena after issuance. ECF 17 at 2.  On June 25,

4   2024, the Court preliminarily found that the Application satisfied Section 1782 and met the *Intel*

5   discretionary factors. ECF 18 at 2.  The Court ordered the requested subpoenas to be served on

6   Meta, Google LLC, and X Corp. (the "Providers") but preserved each Provider's right to object.

7   ECF 18 at 2-3. The subpoena was served on July 2, 2024, and Meta timely objected on July 16,

8   2024. Schwartz Decl., Exs. D, E.

9       Counsel for Meta met and conferred with counsel for Applicant on July 24, 2024.  During

10  that conference, counsel for Applicant stated that Applicant would consider removing the

11  criminal action as a basis for the Amended Application and instead seek user information

12  exclusively for a civil action. Schwartz Decl. ¶ 5.

13      On August 14, 2024, in response to a Joint Stipulation by Applicant and X, this Court

14  approved a proposal for Applicant to file an Amended Application that "may narrow the issues"

15  on which the Providers objected. ECF 36 at 3.

16      **B.    Amended Application**

17      Applicant filed the Amended Application on August 20, 2024. ECF 39.  The Amended

18  Application did not meaningfully "narrow the issues" on which Meta objects.  Rather, it includes

19  substantially the same description of criminal proceedings as the initial Application, continues to

20  request information "for use" in the criminal proceeding, and requests an order exclusively on the

21  basis of a criminal proceeding (ECF 39-7 at 2), although Applicant no longer states how it would

22  use the information for that purpose.  The Amended Application also describes a putative civil

23  action, as described below, but does not clearly seek records for that hypothetical civil case and

24  does not provide details about its claims, structure, status, or merits.

25      **1.    Applicant's Description of Alleged Mexican Criminal Proceedings**

26      Although Applicant told Meta that Applicant would remove the criminal action as a basis

27  for Applicant's requests, the Amended Application flatly states that "Applicant requests

28  information . . . regarding the identity of the anonymous individuals, *for use in a current criminal*

*proceeding* in Mexico." ECF 39 at 15 (emphasis added).  In fact, Applicant's proposed Order cites only the purported criminal action and does not refer to *any* civil action, despite the reference to a putative civil action in the Amended Application. ECF 39-7.  And Applicant provides no evidence that a criminal proceeding is ongoing or anticipated.[8]

The Amended Application suggests there may not be any such proceeding.  While Applicant "filed a criminal complaint" on January 19, 2024 with the Public Prosecutor's Office of the State of Jalisco,[9] ratified the criminal complaint, and was "recognized as the offended party,[10] the Amended Application indicates that Mexican authorities have taken no visible action in nearly seven months, if not longer. ECF 39 at 11.  According to Applicant, "the Investigating Police Officer in charge of the coordination of the Cybernetic Police assigned to the General Director of Intelligence of the State of Jalisco,[11] in accordance with a resolution granted, proceeded to issue demands" to Meta and other providers for user identification information for the Targeted Accounts. ECF 39 at 11-12.[12]  The lack of action by Mexican authorities – as described by Applicant – indicates that there is no ongoing criminal investigation into the users of the Targeted

---

[8] Counsel for Applicant has outright refused to provide the Providers' counsel with copies of the underlying documents filed with or issued by the court in the supposed proceeding and stated in an email that "Banco Azteca has no duty to share those materials in this context under Mexico or United States law." Schwartz Decl., Ex. C.

[9] Applicant has not provided a copy of the complaint or described its legal significance under Mexican law beyond Applicant's own attorney's conclusory statement that the complaint "is legally sufficient in that it alleges the necessary facts that, if proved, would result in the conviction of whomever is responsible." ECF 1-3 ¶ 11.

[10] Neither the Amended Application nor the supporting materials indicate the legal significance of such ratification or recognition. For example, it is not clear whether ratification is the equivalent of swearing to or otherwise verifying an application, and it is not clear whether the prosecutor's recognition of Applicant as an offended party reflects any endorsement of Applicant's complaint.

[11] The Amended Application does not make clear whether the "General Director of Intelligence" is a law enforcement entity and does not describe the role of the police officer assigned to what appears to be a liaison capacity.

[12] Applicant has not described what legal predication is required for such a request or what legal force it has under Mexican law. The Amended Application does not state what type of "resolution" was granted, what entity granted it, what legal significance such a resolution bears, or whether it has anything to do with criminal law as opposed to, for example, a simple request or a national security authority of the General Director of Intelligence. The fact that neither Applicant nor the prosecutor have received notices of that request may reflect that this process was not part of a criminal investigation; Applicant does not provide an explanation of the process.

Accounts.

Instead, the Amended Application suggests that Applicant and Mexican authorities have spent their efforts elsewhere, undertaking to remove the alleged defamatory content and disable the Targeted Accounts.  On February 16, Applicant asked the Preliminary Criminal Judge to send notices to Meta and X of orders directing the removal of content "with the aid of the judicial authorities of Mexico City by means of an interstate communication."[13] ECF 39 at 13.  As of the August 20, 2024 filing of the Amended Application, the Mexico City judicial authorities had not responded or even acknowledged receipt of the communication. ECF 39 at 13.

## 2.    Applicant's Descriptions of Alleged Mexican Civil Proceedings

In the Amended Application, Applicant also describes a purported civil lawsuit in a variety of less than consistent ways.  Applicant states variously that it "is has [*sic*] filed civil lawsuits against the Anonymous Speakers, and without waiving any privilege has taken active steps in commencing those lawsuits already[,]" ECF 39 at 13; that it "has begun filing civil lawsuits," ECF 39 at 17; that Applicant is "exploring" a civil suit, ECF 39 at 27; and that Applicant cannot bring a civil claim against an individual unless that person is "fully identified," ECF 39 at 13.  Whether Applicant "is filing," "has filed," "has begun filing," "has taken active steps" toward filing, or is merely "exploring" a suit is a mystery.  Applicant provides no evidence that it has taken any particular step toward initiating a civil action or that any such action would be likely to proceed under Mexican law.  Applicant's reference to privilege regarding steps it has taken toward initiating a civil matter (ECF 39 at 13) suggests that it has not taken any overt, non-confidential step to initiate an action, let alone submitted any pleading that would enable a court to assess its allegations.  Applicant's statement that a party can only bring a civil claim against an individual that it has "fully identified," ECF 39 at 13, likewise indicates that Applicant has not filed any claims.  The Amended Application provides no independent expert analysis of whether Applicant could initiate and sustain a civil action in Mexico if it obtained the identities of putative defendants.

---

[13] Neither the Amended Application nor the supporting materials reflect the legal significance of this action, when it occurred, or whether it may lead to additional steps.

**3.      Information Sought by Applicant**

The Amended Application seeks the same information as the Initial Application. Specifically, Applicant seeks subscriber information that would, among other things, reveal the identities of the users of the eight Targeted Accounts. ECF 39 at 8-11.  Specifically, for each Targeted Account *and* "any other associated account," Applicant seeks:

- All names
- All addresses
- All email addresses
- All telephone numbers
- All names, addresses and credit card number of all credit cards registered (without expiration date or card validation code)
- All names, addresses, email addresses, telephone numbers, and names of payment methods for all non-credit card payment methods
- Access logs (without listing any date restriction), including dates, times, Internet Protocol (IP) addresses, port numbers, and destination IP addresses

## III.   LEGAL STANDARD

A district court may, but is not required to, order a U.S.-based person or entity to provide testimony or produce documents for use in proceedings outside the United States if an applicant establishes that:  (1) the person from whom the discovery is sought "resides or is found" in the district of the district court where the application is made; (2) the discovery is "for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation;" and (3) the application is made by a foreign or international tribunal or "any interested person." 28 U.S.C. § 1782(a); *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019).

If an applicant satisfies those statutory criteria, a court has discretion whether to order the requested testimony or production.  A court's discretion is guided by four factors:  (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of

the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.

In exercising this discretion, district courts consider the twin aims of the statute: "providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to U.S. courts." *Id.* at 252. And where an applicant obtains an order allowing it to serve subpoenas under Section 1782 on an *ex parte* basis, the district court should vacate the order and quash discovery where, upon reconsideration, it determines the applicant failed to show that a Section 1782 order was warranted in the first instance. *See In re Microsoft Corp.*, No. C 06-80038 JF (PVT), 2006 WL 825250, at *2 n.3 (N.D. Cal. Mar. 29, 2006).

## IV.    ARGUMENT

### A.    The Court Should Quash the Subpoena and Deny the Amended Application.

#### 1.    Applicant has not established the threshold requirement of Section 1782 that the proposed discovery is "for use in a foreign proceeding."

Section 1782 only authorizes discovery orders "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). Such a proceeding does not have to be "pending" or "imminent," but it must be "within reasonable contemplation." *Intel*, 542 U.S. at 259; *see also IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 680 (2d Cir. 2022) ("if a movant's ability to initiate a proceeding depends on some intervening event or decision, it must provide an objective basis on which to conclude that the event will occur or the requisite decision will be favorable"); *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 100-02 (2d Cir. 2020) (noting that Section 1782 applications have been denied "where it was 'apparent that all that the [applicants] alleged before the district court was that they had retained counsel and were discussing the *possibility* of initiating litigation'") (quoting *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 124 (2d Cir. 2015)) (emphasis added).

"Reasonable contemplation" of use in a foreign proceeding requires Applicant to show

-9-

"more than a subjective intent to undertake some legal action;" Applicant "must provide *some objective indicium* that the action is being contemplated." *Certain Funds*, 798 F.3d at 123 (emphases added). "At a minimum, a § 1782 applicant must present to the district court *some concrete basis* from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Id.* at 124 (emphases added).

As discussed below, Applicant's sparse and conclusory assertions fall short of the documentation and analysis that should be available in a meritorious foreign proceeding. *See, e.g.*, *In re Application of Banco Mercantil del Norte, S.A.*, No. 3:23-mc-08, 2023 WL 6690708, at *4-5 (E.D. Va. Oct. 12, 2023) (describing application that "identified the specific civil proceedings in Mexico at issue" including "several pages of the Application," a declaration from counsel in the civil proceedings, and "*hundreds of pages of Mexican proceeding court documents*" and "explained why the information would be relevant and necessary to the ongoing legal proceedings in Mexico") (emphasis added).

### a. Applicant has not shown that claims against the Anonymous Speakers are within reasonable contemplation.

At the outset, Applicant has not established that the Anonymous Speakers reasonably could be found liable in a criminal or civil proceeding. *See, e.g.*, *IJK Palm*, 33 F.4th at 681 ("Merely retaining counsel and sketching a vague outline of a proposed suit does not . . . establish that its proposed suit [] is within reasonable contemplation); *Bush v. Cardtronics, Inc.*, No. CV H-20-2642, 2020 WL 6261694, at *3 (S.D. Tex. Oct. 23, 2020) (foreign proceeding not within reasonable contemplation, despite applicant claiming to have hired a Mexican law firm, where applicant had not provided "an affidavit from counsel *detailing* the planned litigation") (emphasis added).

Applicant does not provide any evidence that the Anonymous Speakers engaged in purportedly defamatory or criminal activity or how such activity could be criminally or civilly prosecuted. Indeed, Applicant does not quote a single statement made using a Facebook account or attach screenshots to a declaration. Nor does Applicant otherwise provide facts that link any of the Facebook accounts to any purported criminal or defamatory activity. Instead, Applicant

offers only conclusory statements that an amorphous alleged campaign was "effectuated by mostly anonymous users" on X, Facebook, and YouTube and that "[o]ther users spread the same campaign" or "spread content" related to Applicant. ECF 39 at 7, 10; *see* ECF 39-2 ¶¶ 20, 21. Accordingly, Applicant has not articulated a legal theory of liability against the Anonymous Speakers such that any proceedings are reasonably contemplated.

### b. Applicant has not shown that a criminal proceeding exists or is reasonably contemplated.

In addition, Applicant has not sufficiently established that there is a pending criminal proceeding or that one is within reasonable contemplation. "Section 1782 is not meant to allow parties to obtain discovery to conduct an investigation that is untethered to a specifically contemplated or actualized foreign proceeding." *See Leutheusser-Schnarrenberger v. Kogan*, No. 18-MC-80171-JSC, 2018 WL 5095133, at *4 (N.D. Cal. Oct. 17, 2018).

Applicant states that it filed a criminal complaint in Mexico with a public prosecutor. ECF 39 at 11. Applicant has not, however, alleged or provided evidence that a prosecutor or court, or even a neutral legal expert, has found any merit to the allegations in the complaint. Instead, Applicant has only provided the opinion of its own attorney, whose qualifications are not described in detail, that the complaint is legally sufficient to support a conviction. Applicant has not described any ongoing investigation beyond a police officer in an undefined role issuing a request based on an undefined legal authority for information identifying the Anonymous Speakers. ECF 39 at 11-12. And when asked, Applicant has refused to provide any additional information regarding the purported criminal proceeding. Schwartz Decl. Ex. C ("Our position remains the same as before: Banco Azteca will not share a copy of the 'underlying documents filed with and/or issued by the Jalisco court.'").

All of the subsequent Mexican official actions Applicant describes appear to be on a separate track that is solely directed at removing public content and disabling the Targeted Accounts, and not at pursuing the criminal charges Applicant sought. ECF 39-3 ¶ 17. The orders and notices Applicant describes all relate to processes that are injunctive, rather than investigative, in nature. *Id*. ¶¶ 17-19. Critically, none of those processes – assuming that they are

legally supportable – require disclosure of the information Applicant seeks.[14]  As a result, Applicant has not shown that criminal proceedings are either pending or within reasonable contemplation.

**c.**   **Applicant has not shown that a civil proceeding exists or is reasonably contemplated.**

Likewise, Applicant has not shown that a civil proceeding is reasonably contemplated. *See Certain Funds,* 798 F.3d at 123-25 (requiring concrete basis for a court to determine a proceeding is reasonably contemplated).  The Amended Application vacillates among describing a civil case that has been filed, is being filed, might be filed at some point, or is merely a hypothetical future option for which Applicant would have a viable claim "*[i]f*" applicant "deems it appropriate." ECF 39-4 ¶ 11 (emphasis added); *see also infra* Section II(B)(2).  Far from unequivocally stating that it will initiate a civil action, Applicant does not provide documentation such as a draft complaint that would (a) demonstrate Applicant's intent to file a civil lawsuit; (b) establish that Applicant has actually taken steps to proceed and that its case is more than speculative; and (c) permit independent review of the legal merits and free-speech interests it would implicate. *Cf. In re Application of Banco Mercantil del Norte, S.A.*, 2023 WL 6690708, at *4-5 (attaching hundreds of pages from the civil proceeding in Mexico).

In that regard, Applicant argues, without citation and through conclusory analysis of its own attorney, that it cannot initiate a lawsuit in Mexico against the Anonymous Speakers without first identifying them. ECF 39-4 ¶ 7.  Assuming – without conceding – that there is no avenue under Mexican law to file a pleading establishing a *prima facie* case against unidentified defendants, Applicant does not describe or demonstrate any steps it has taken toward bringing a lawsuit and does not state unequivocally that it intends to. *See Leutheusser-Schnarrenberger*, 2018 WL 5095133, at *4.  And although Applicant presents conclusory declarations of two of its own attorneys that suggest that Applicant *could* bring a meritorious claim if it obtained the

---

[14] To the extent that Meta would agree to remove public content or disable an account based on a terms of service violation, such actions of course would also not require disclosure of account users' identities to law enforcement.

1  anonymous users' identities, ECF 39-3 ¶ 45 *and* ECF 39-4 ¶ 11, Applicant does not provide a

2  draft complaint, neutral legal opinion, or any other sufficient basis for this Court or an

3  independent expert to *either* establish the likelihood that Applicant will file *or* test the merits of

4  Applicant's putative action before compelling Meta to reveal the identity of anonymous  users.

5       Indeed, at the beginning of its "Argument" section, the Amended Application states

6  exclusively that it seeks to identify the users of the Targeted Accounts "for use in a current

7  criminal proceeding." ECF 39 at 15.  Applicant refers to a civil proceeding as a step it is

8  "exploring," ECF 39 at 17, which is insufficient in any event. *See Leutheusser-Schnarrenberger*,

9  2018 WL 5095133, at *4 ("Courts must guard against the specter that parties may use § 1782 to

10  investigate whether litigation is possible before launching it.") (citation omitted).  Thus,

11  Applicant has not established that such an action is within reasonable contemplation.

12            **2.      The Discretionary *Intel* Factors Weigh Against Applicant's Request.**

13       The Court, respectfully, should quash the Subpoena and deny the Amended Application

14  based on Applicant's failure to meet the threshold requirements for discovery under Section 1782

15  alone.  In addition, the discretionary *Intel* factors weigh against Applicant's discovery requests,

16  and the Court should quash the Subpoena and deny the Amended Application for this reason as

17  well.

18            **a.      Under the first *Intel* factor, the availability of the MLAT process weighs against discovery from Meta.**

19       The first discretionary factor, which examines whether the "person from whom discovery

20  is sought is a participant in the foreign proceeding," weighs against granting Applicant's request

21  on criminal grounds because the MLAT process is available to Mexican law enforcement. *See*

22  *Intel,* 542 U.S. at 264.  Although an entity's status as a non-party often supports a Section 1782

23  application, Meta's non-party status in this case is not dispositive. *See In re Ex Parte Application*

24  *of Qualcomm Inc.*, 162 F. Supp.3d 1029, 1039 (N.D. Cal. 2016).  In most cases, a U.S.-based

25  entity that is not a party to a proceeding in a foreign court is not subject to a foreign court's

26  jurisdiction. *Intel*, 542 U.S. at 264.  Here, however, Applicant claims to seek records for use in a

27  criminal investigation by Mexican law enforcement.  If that is the case, and if Mexican law

28

1    enforcement requires these records for an ongoing investigation, then they should use the MLAT

2    between Mexico and the United States.

3        An MLAT provides a "foreign tribunal . . . the authority to order an entity to produce the .

4    . . evidence." *Qualcomm*, 162 F.3d at 1039; *see also Miyawaki v. Google LLC,* No. 5:24-MC-

5    80132-EJD, 2024 WL 2852142, at *2 (N.D. Cal. June 5, 2024) (same); *CFE Int'l LLC v. Denham*

6    *Cap. Mgmt. LP*, No. 22-MC-91355-FDS, 2023 WL 2988745, at *7 (D. Mass. Mar. 6, 2023)

7    (finding reduced need for discovery under the first *Intel* factor because "evidence appears to be

8    well within [Mexican authorities'] reach through MLAT channels"); *In re Choi*, No. 5:24-mc-

9    80043-EJD, 2024 WL 1120130, at *2 (N.D. Cal. Mar. 14, 2024) (denying Section 1782 request in

10   part because Korean criminal authorities had investigatory tools, including the MLAT process, to

11   obtain evidence from relevant entities).  Applicant claims that Mexican law enforcement

12   authorities have issued or plan to issue requests to Meta seeking information to unmask the

13   Targeted Accounts.  If that is the case, the MLAT process is available. ECF 39 at 11-12.

14   Accordingly, this factor weighs against the proposed discovery for use in a criminal proceeding.

15
         **b.**    **Under the third *Intel* factor, Applicant's proposed discovery**
                    **appears to be an attempt to circumvent the policies of the**
16                  **United States and Mexico.**

17        The third *Intel* factor considers "whether the § 1782(a) request conceals an attempt to

18   circumvent foreign proof-gathering restrictions or other policies of a foreign country or the

19   United States." *Intel*, 542 U.S. at 265.  Despite Applicant's bare claim that it is not attempting to

20   circumvent any proof-gathering restrictions or policies of Mexico or the United States, ECF 39 at

21   19, the Amended Application and Subpoena would circumvent both.

22        As discussed above, Applicant has not satisfied Section 1782's requirement of

23   demonstrating that the discovery requested from Meta is "for use" in a foreign criminal or civil

24   proceeding.  Applicant provides no indication that a criminal proceeding is reasonably

25   foreseeable or that prosecutors have taken any initial steps in the six months since Applicant filed

26   its complaint.  Significantly, an important investigative step that prosecutors *could* take would be

27   a request under the U.S.-Mexico MLAT.  While not dispositive, the absence of an MLAT request

28   – particularly given the lack of criminal legal analysis in the Amended Application and the

1   unresolved free-speech considerations it implicates – could indicate Mexican law enforcement's

2   lack of commitment to the case, negative assessment of the case's merit, concern over domestic

3   Constitutional or policy factors, and/or a decision to avoid implicating U.S. Constitutional or

4   policy-based free-speech considerations.

5       Indeed, courts have expressed concern under the third *Intel* factor where Section 1782 is

6   utilized when the MLAT process was available for use by foreign prosecutors. *See Matter of*

7   *Application of O2CNI Co., Ltd.*, No. C 13-80125 (CRB) (LB), 2013 WL 4442288, at *8 (N.D.

8   Cal. Aug. 15, 2013) ("it is an extra and perhaps unusual effort to use tools [such as Section 1782]

9   also available to those authorities through the MLAT process"); *In re Choi*, 2024 WL 1120130, at

10  *4 ("The Court is reticent to allow discovery through the Application here considering the

11  safeguards available" through channels such as the MLAT process); *see also In re Application of*

12  *Republic of Turkey*, No. CV 2:20-MC-36, 2021 WL 671518, at *12 (S.D. Ohio Feb. 22, 2021)

13  (finding Applicant's justification for forgoing MLAT process to be "weak" when the

14  circumstances were "tailor-made" for employing an MLAT request); *see also In re Ex Parte*

15  *Application of HYBE Co., LTD.*, No. 24-MC-80117-VC, 2024 WL 3218386, at *1 (N.D. Cal.

16  June 28, 2024) (noting "[i]t seems odd that a foreign private citizen could use an American court

17  to access another foreign private citizen's personal information just by filing a criminal complaint

18  in their home country.  That alone raises abuse of process concerns.").

19      Given that Applicant seeks criminal charges against the Anonymous Speakers based on

20  their public speech, such concern may be particularly warranted.  The MLAT between the United

21  States and Mexico provides that the requested party may deny a request to the extent that

22  execution would be legally prohibited, would prejudice the requested party's essential public

23  policy or interest, or concerns an offense that is political or of a political character.  MLAT Art.1

24  § 3(a), (b), (c).  Applicant has simply not provided enough information for the Court to determine

25  whether compelling Meta to pierce the anonymity of online speakers – some of whom may be in

26  the United States – is justified by the potential criminal case Applicant seeks to make or support.

27  Absent a thorough explanation of the interests of Mexican law enforcement – which apparently

28  has taken no steps to identify the Facebook users in this case – identifying the users to Applicant,

1  a private party, would lack justification and enable Applicant to take steps against the users

2  unbound by the MLAT's limitations.

3      Especially given the sensitivities of this case, prosecutors and judges in Mexico and the

4  United States are best positioned to conduct such analyses under their respective domestic laws

5  and the MLAT itself.  Rather than precipitously granting a private party access to private

6  subscriber information, the Court should permit government agencies on both sides of the border

7  to ensure that the proposed case and request for evidence meets both countries' Constitutional,

8  legal, and discretionary standards.  This factor thus weighs against the proposed discovery.[15]

9

10
    **c.      Under the fourth *Intel* factor, Applicant fails to meet the standards for unmasking the Anonymous Speakers.**

11      The fourth *Intel* factor considers whether the proposed discovery is unduly intrusive or

12  burdensome. *Intel*, 542 U.S. at 265.  Here, the proposed discovery is an unwarranted intrusion on

13  anonymous online speech, and this factor weighs against disclosure as well.

14
    **(i)      Applicant has not satisfied the *Highfields* test.**

15      Anonymous online speech is protected by the First Amendment to the United States

16  Constitution.  The Ninth Circuit has recognized that, "[a]s with other forms of expression, the

17  ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows

18  individuals to express themselves freely without 'fear of economic or official retaliation … [or]

19  concern about social ostracism.'" *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th

20  Cir. 2011) (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995)).

21

22
23
24
25
26
27
28
[15] As discussed below, the Amended Application and Subpoena implicate the First Amendment right to anonymous speech. Thus, Applicant also appears to be attempting to circumvent the policies of the United States. Indeed, "an attempt to contravene the First Amendment's purpose without justification" weighs heavily against granting a discovery request in the context of Section 1782. *In re Planning. & Dev. of Educ., Inc.*, No. 21-mc-80242-JCS, 2022 WL 228307, at *4 n.3 (N.D. Cal. Jan. 26, 2022). Courts have cautioned against granting Section 1782 requests where such requests would "aid in punishing speech that would be protected in this country." *In re Tagami*, No. 21-mc-80153-JCS, 2021 WL 5322711, at *3 n.1 (N.D. Cal. Nov. 16, 2021); *see also In re Application of Ontario Principals' Council*, No. 2:13-MC-120-LKK-KJN, 2013 WL 6844545, at *3–4 (E.D. Cal. Dec. 23, 2013) (suggesting that general First Amendment principles would preclude unmasking where the speech does not support defamation or libel claims); *In re Anahara*, No. 22-MC-80063-JCS, 2022 WL 783896, at *3 n.1 (N.D. Cal. Mar. 15, 2022) (same).

-16-

1      Courts have held that, because Section 1782 actions are evaluated in the context of the

2  Federal Rules of Civil Procedure, foreign litigants must demonstrate good cause under Federal

3  Rule of Civil Procedure 26(d) and courts must consider whether the applicant:

> (1) identifies the party with sufficient specificity that the court can
> determine that the party is a real person subject to suit; (2) identifies
> all previous steps taken to locate and identify the party; (3)
> demonstrates that the action can withstand a motion to dismiss; and
> (4) proves that the discovery is likely to lead to identifying
> information.

8  *In re Frontier Co., Ltd.*, No. 19-mc-80184-LB, 2019 WL 3345348, at *3 (N.D. Cal. July 25,

9  2019) (citing *In re Ex Parte Application of Jommi*, No. C 13-80212 CRB (EDL), 2013 WL

10  6058201, at *4 (N.D. Cal. Nov. 15, 2013)).  However, merely demonstrating that the action for

11  which an applicant seeks a subpoena could survive a motion to dismiss is not enough in the

12  context of anonymous speech.  Instead, anonymous speech implicates the *Highfields* test, which

13  requires a court to establish an evidentiary basis for the proposed discovery. *Highfields*, 385 F.

14  Supp.2d at 975.

15      Under the first step of the *Highfields* test, a litigant must first demonstrate a *prima facie*

16  cause of action supported by "competent evidence." *Music Grp. Macao Commercial Offshore*

17  *Ltd. v. Does*, 82 F. Supp.3d 979, 984 (N.D. Cal. 2015) (citing *Highfields*, 385 F. Supp.2d at 975-

18  76).  "Allegation and speculation are insufficient." *Highfields*, 385 F. Supp.2d at 975.  If "any

19  *essential* fact or finding lacks the requisite evidentiary support," a court may not enforce the

20  subpoena. *Id.* at 976 (emphasis in original).

21      Even if a plaintiff satisfies the first step of *Highfields*, a court must still weigh the harm

22  that would be caused to the plaintiff and defendant's interests, should the court order disclosure of

23  the defendant's identity. *Id.*  Absent satisfaction of both steps of the *Highfields* test, the plaintiff

24  cannot discover the anonymous speaker's identity. *Music Grp. Macao*, 82 F. Supp.3d at 985-87.

25      The Court must apply the *Highfields* standard to the "MorenaNY1" account because there

26  is evidence that the account holder(s) reside in the State of New York. Schwartz Decl., Ex. B

27  ("Page manager locations include United States, Mexico"); *see also Thunder Studios*, 13 F.4th at

28  743-44 ("[T]he First Amendment right to receive information includes the right to receive

information from outside the United States.").  Specifically, that account makes the following declaration under its About section: "We are Mexican citizens *living in New York*.  We are independent because we believe in democracy and alternation.  It's time to change the country."  *See* Schwartz Decl., Ex. A (translated and emphasis added).  Indeed, the Page Transparency section reflects that the locations of the account's manager(s) include the United States and Mexico.  *Id.* Ex. B.

        The Court should also apply *Highfields* to the remaining Anonymous Speakers because it is unclear whether they are United States citizens or residents.  Meta recognizes that some courts in this District have rejected this argument,[16] but Meta respectfully takes the position that those cases are wrongly decided.  In most cases, there will be no way to determine whether account holders reside in the United States or are United States citizens living abroad.  In addition, although IP address information may indicate a user's location, use of common tools such as virtual private networks can render IP address-based location data unreliable.  Meta also generally cannot assess whether any particular Facebook account holder is a United States citizen. *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 730 (9th Cir. 2011) (opining, in dicta, that it would put service providers in "an untenable position" to always "need to assess whether a particular account holder was at all times a U.S. citizen, or later became a citizen, or was a resident alien" entitled to Fourth Amendment protection).[17]

---

[16] *See, e.g., Zuru, Inc. v. Glassdoor, Inc.*, 614 F. Supp.3d 697, 706 (N.D. Cal. 2022) (declining to apply *Highfields* because "there's no reason to believe [the anonymous speakers] were U.S. citizens"); *In re hey, Inc.,* No. 22-MC-80034-DMR, 2023 WL 3874022 (N.D. Cal. June 6, 2023) (same); *In re Takada*, No. 22-MC-80221-VKD, 2023 WL 1442844 (N.D. Cal. Feb. 1, 2023) (same); *In re Team Co., Ltd.*, No. 22-MC-80183-VKD, 2023 WL 1442886 (N.D. Cal. Feb. 1, 2023) (same).

[17] In addition, the First Amendment protects the rights of domestic *listeners*–including the "MorenaNY1" account–to receive information from, and communicate with, foreign sources. *See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976) (where a speaker exists … the protection afforded is to the communication, to its source and to its recipients both."); *Lamont v. Postmaster General of U.S.*, 381 U.S. 301, 302, 306-07 (1965) (invalidating federal statute that ordered seizure of communist propaganda that was "printed or otherwise prepared in a foreign country" based on the First Amendment right to receive information); *Thunder Studios*, 13 F.4th at 744 (there is a "First Amendment right of domestic listeners to receive speech from foreign speakers") (citing *Kleindienst v. Mandel*, 408 U.S. 753 (1972)); *United States v. 18 Packages of Magazines*, 238 F. Supp. 846, 847-48 (N.D.

1    Here, Applicant has not even identified any statements made on Facebook's platform that

2  *could* be used as the basis of a claim under Mexican law, much less shown that the claims are

3  supported by evidence.  Indeed, as to the Anonymous Speakers, Applicant merely makes the

4  conclusory assertion that messages on X were "spread...over Meta's Facebook platform." ECF

5  39 at 10.  Applicant's bare assertions fall short of the requisite showing of a *prima facie* claim

6  under the *Highfields* test protecting anonymous speech. *See Music Grp. Macao*, 82 F. Supp. 3d at

7  983-84 (requiring a *prima facie* claim of defamation supported by competent evidence) (citing

8  *Highfields*, 385 F. Supp.2d at 975-76).

9    As a result, while there does not appear to be any real need for Applicant to obtain the

10  identifying information it seeks, there is a tangible risk of harm if the Court orders disclosure of

11  that information.  Unmasking the Anonymous Speakers would not only run afoul of important

12  First Amendment policies but also pose "a real threat to chill protected comment on matters of

13  interest to the public." *Highfields*, 385 F. Supp. 2d at 980-81; *see also In re Tagami*, 2021 WL

14  5322711, at *4 n.2 (expressing concern that Section 1782 requests to identify anonymous

15  speakers "will create a chilling effect on the speech of anonymous reviewers or embolden entities

16  which seek only to harass or intimidate the speakers").

17    Because Applicant has failed to satisfy both steps of the *Highfields* test, Applicant is not

18  entitled to discover any of the identities of the Anonymous Speakers. *See Music Grp. Macao*, 82

19  F. Supp.3d at 985-88.

20          **(ii)    Applicant has not satisfied even the lowest standard of
21                  review for disclosure of identifying information.**

22    Finally, even if the Court declines to apply the *Highfields* test to the remaining

23  Anonymous speakers, the request remains unduly intrusive and burdensome.  In rejecting both the

24  good cause and *Highfields* standards of review, some district courts have stated that "at a

25  minimum, a district court can require an applicant to describe the legal and factual bases for a

26  contemplated foreign legal proceeding, and to explain how the discovery the applicant seeks will

27
28  Cal. 1964) ("The [First Amendment] rights of readers are not to be curtailed because of the
     geographical origin of printed materials.").

1  aid prosecution of that proceeding." *In re Takada,* 2023 WL 1442844, at *6.  As discussed above,

2  there is no analysis regarding the claims against the Anonymous Speakers *at all*.  Thus, even

3  under the lowest standard of review, Applicant has not shown that discovery is warranted here.

4  **V.      CONCLUSION**

5          For the foregoing reasons, Meta respectfully requests that the Court quash the Subpoena

6  and deny the Amended Application in its entirety.

7

8

9  Dated:  September 17, 2024                          **PERKINS COIE LLP**

10

11                                                     By: */s/ Julie E. Schwartz*
                                                          Julie E. Schwartz, Bar No. 260624
12

13                                                     Attorney for Respondent
                                                       META PLATFORMS, INC.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28