1  **NELSON MULLINS RILEY &**
   **SCARBOROUGH, LLP**
2  P. John Veysey (SBN: 296923)
   john.veysey@nelsonmullins.com
3  One Financial Center, Suite 3500
   Boston, MA 02111
4  Tel: (617) 217.4645 Fax: (617) 217.4710

5  **NELSON MULLINS RILEY &**
   **SCARBOROUGH, LLP**
6  Michael J. Hurvitz (SBN: 249050)
   mike.hurvitz@nelsonmullins.com
7  750 B Street, Suite 2200
   San Diego, CA 92101
8  Tel: (619) 489.6110 Fax: (619) 821.2834

9  Attorneys for Applicant Banco Azteca S.A.
   Institución de Banca Múltiple

10

11                          **UNITED STATES DISTRICT COURT**

12                          **NORTHERN DISTRICT OF CALIFORNIA**

13  *In re* Application of BANCO AZTECA S.A.          Case No. 5:24-MC-80091-NC
    INSTITUCIÓN DE BANCA MÚLTIPLE, for an
14  Order Pursuant to 28 U.S.C. § 1782 Authorizing    **BANCO AZTECA S.A.**
    Discovery for Use in a Foreign Proceeding         **INSTITUCIÓN DE BANCA**
15                                                    **MÚLTIPLE'S OPPOSITION TO**
                                                      **NON-PARTY X, META AND**
16                                                    **GOOGLE ACCOUNT HOLDERS'**
                                                      **NOTICE OF MOTION AND**
17                                                    **MOTION TO QUASH BANCO**
                                                      **AZTECA'S SUBPOENA**
18

19                                                    Hearing Date: November 13, 2024
                                                      Hearing Time: 11:00 AM
20                                                    Courtroom: Zoom Webinar
                                                      Judge: Hon. Nathanael M. Cousins
21

22

23

24

25

26

27

28

                                                                               5:24-MC-80091-NC

# TABLE OF CONTENTS

I. INTRODUCTION……………………………………………………………………………1

II. FACTS……………………………………………………………………………………..2

III. ARGUMENT ........................................................................................................4

    1. Banco Azteca Meets the Section 1782 "For Use" Threshold ........................................................................................ 4

    2. Banco Azteca Application and Subpoenas are Permissible Under the *Intel* Discretionary Factors.............................................. 6

        a. *Intel* Discretionary Factors One and Three Weigh in Favor of Banco Azteca's Application and Discovery ……………………….6

        b. *Intel* Discretionary Factor Two Weighs in Favor of Banco Azteca's Application and Discovery ……………………….8

        c. *Intel* Discretionary Factor Four Weighs in Favor of Banco Azteca's Application and Discovery ……………………….9

    3. Additional Considerations: The First Amendment Does Not Shield the Anonymity of Account Holders who make Defamatory Statements in the form of Commercial Speech ...................................................................................... 11

        a. Account Holders' Motion asserts an incorrect standard to assess First Amendment issues in this action……………………………………………11

        b. Banco Azteca's subpoenas nonetheless satisfy *Highfields*……………………………………………...……………………12

        c. This Court should disregard Account Holders' focus on the political environment in Mexico ……………………………………………15

IV. CONCLUSION ...................................................................................... 16

i                  5:24-MC-80091-NC

BANCO AZTECA'S OPPOSITION TO NON-PARTY X, META AND GOOGLE ACCOUNT HOLDERS'
NOTICE OF MOTION AND MOTION TO QUASH BANCO AZTECA'S SUBPOENA

# TABLE OF AUTHORITIES

**Cases**                                                   **Page(s)**

*Akebia Therapeutics, Inc. v. FibroGen, Inc.*,
   793 F.3d 1108 (9th Cir. 2015) .................................................................................................5
*Art of Living Found. v. Does 1-10*,
   No. 10-CV-05022-LHK, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011)....................................14
*Bd. of Trustees of SUNY v. Fox*,
   492 U.S. 469 (1989)................................................................................................................15
*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*,
   27 F.4th 136 (2d Cir. 2022) ......................................................................................................7
*hey, Inc. v. Twitter, Inc.*,
   No. 22-MC-80034-DMR, 2023 WL 3874022 (N.D. Cal. June 6, 2023)..................................12
*Highfields Cap. Mgmt., L.P. v. Doe*,
   385 F. Supp. 2d 969 (N.D. Cal. 2005) .....................................................................................13
*In re Anonymous Online Speakers*,
   661 F.3d 1168, (9th Cir. 2011) ................................................................................................15
*In re Ex Parte Application of Jommi*, C 13-80212 CRB (EDL),
   2013 WL 6058201 (N.D. Cal. Nov. 15, 2013) .........................................................................6
*In re Frontier Co., Ltd.*,
   No. 19-mc-80184-LB, 2019 WL 3345348 (N.D. Cal. July 25, 2019).....................................10
*In re Hoteles City Express*,
   2018 WL 3417551 (N.D. Cal. July 13, 2018)..........................................................................11
*In re Takada*,
   No. 22-mc-80221-VKD, 2023 WL 1442844 (N.D. Cal. Feb. 1, 2023)..............................12, 13
*In re Takagi*,
   No. 23-MC-80124-JSC, 2023 WL 4551074 (N.D. Cal. July 13, 2023) ...................................7
*In re Yasuda*,
   No. 19-mc-80156-TSH, 2020 WL 759404 (N.D. Cal. Feb. 14, 2020) ....................................10
*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004).............................................................................................................5, 7
*Lefkoe v. Jos. A. Bank Clothiers, Inc.*,
   577 F.3d 240 (4th Cir. 2009) .............................................................................................15, 16
*SI03, Inc. v. Bodybuilding.com, LLC*,
   441 Fed. Appx. 431 (9th Cir. 2011).................................................................................14, 15
*Takagi v. Twitter, Inc.*,
   No. 22-MC-80240-VKD, 2023 WL 1442893 (N.D. Cal. Feb. 1, 2023)..................................12
*United States v. Alvarez*,
   617 F.3d 1198 (9th Cir. 2010) .................................................................................................14
*Weber v. Finker*,
   554 F. 3d 1379 (11th Cir. 2009) ............................................................................................8, 9
*Zuru, Inc. v. Glassdoor, Inc.*,
   614 F. Supp. 3d 697 (N.D. Cal. 2022) ...............................................................................12, 14

**Statutes**

28 U.S.C. § 178.......................................................................................................... passim
28 U.S.C. § 1782(a) .........................................................................................................8

Applicant Banco Azteca, S.A. Institución de Banca Múltiple (the "**Applicant**" or "**Banco Azteca**") submits the following Opposition in response to Non-Party X, Meta, and Google Account Holders' Motion to Quash Banco Azteca's Subpoena (the "**Motion**") (ECF 44). Banco Azteca respectfully asserts that Non-Party X, Meta and Google Account Holders' (the "**Account Holders**") Motion overlooks why Banco Azteca's Amended *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 Application Authorizing Discovery in a Foreign Proceeding (the "**Application**") (ECF 39) meets all necessary factors for its related subpoenas to issue, misunderstands or fails to account for certain key facts, and overlooks controlling case law.

## I.   INTRODUCTION

The principal flaw in Account Holders' Motion is that applicable law, in this District and elsewhere, allow subpoenas to issue where an applicant is considering asserting a civil action in a foreign tribunal to remedy unprotected commercially harmful online speech by anonymous individuals. Additionally, Courts in this District allow such discovery where a parallel criminal investigation into the same conduct is underway. Banco Azteca, after discussions with Account Holders' counsel and other entities involved in this matter, worked to take a cooperative route by amending its initial Application (the "**First Application**") to better clarify that it seeks discovery through its subpoenas to help litigate contemplated and ongoing civil claims in Mexico.

Despite this, the Account Holders' Motion asks the Court to overlook the coordination among the accounts at issue and the harmful and deliberate false posts by those accounts designed to exact specific economic harm on Banco Azteca. The notion that online parties, by mere virtue of their political preferences, can hide their identities after making malicious and false statements of a commercial nature designed to cause catastrophic harm ignores longstanding limitations of the First Amendment and Section 1782 jurisprudence; neither which offer protection for tortious and criminal acts. Banco Azteca also asks the Court to ignore Account Holders' ad hominem assertions against Banco Azteca's ownership, which are immaterial as it is Banco Azteca that is the victim in the Mexican criminal action and the plaintiff in the Mexican civil complaint. Account Holders hope these attacks on non-parties divert the Court's attention from what is at issue. Indeed, this reveals the weakness of their positions.

1   At their core, the defamatory statements lack political subtext, but instead are levied at Banco Azteca's financial health and reputation. The defamatory statements were a concerted effort to spread a false narrative that Banco Azteca was bankrupt, not honoring its deposits, and urging Banco Azteca's customers to flee or risk losing their deposits. These statements extensively damaged Banco Azteca to the tune of hundreds of millions of dollars in quantifiable losses and harmfully disrupted the broader financial markets in Mexico. The parties who made these statements celebrated the success of their false smear campaign revealing a malicious and criminal intent. Looking at the actual harm and statements at issue and ignoring Account Holders' inflammatory statements and ad hominem attacks on non-parties, the First Amendment offers no barricade behind which wrongdoers can lob defamatory grenades with impunity.

Finally, and most importantly, the Motion fails to account for key facts and overlooks controlling case law concerning the threshold factors under Section 1782. As demonstrated in the Application, and described in more detail below, Banco Azteca has met all necessary burdens and this Court should grant the Application and authorize the issuance of the subpoenas.

## II.   FACTS

Banco Azteca incorporates, by reference, its factual summary and supporting Declarations in its Application. (ECF 39). Account Holders' Motion strongly implies, without competent evidence, that Banco Azteca has not filed a civil action to remedy the harm at issue, and that it does not plan to do so. (ECF 44, at 1–2, 4–5). Banco Azteca points to the Declaration of Gabriel Alejandro Rodriguez Chavez (ECF 39-3), and Mr. Rodriguez Chavez's Second Declaration, filed here, which includes a copy of its pending civil complaint [Ex. A, Exhibit 1 thereto] outlining the posts of eight users since identified, which resolve this issue. Those declarations provide sworn testimony from practicing attorneys confirming that Banco Azteca is currently pursuing a civil action against eight individuals and detail their offending statements. (ECF 39-3 at ¶¶ 32–33, 35, 38–40, 45); *see* **Exhibit A**, Second Declaration of Gabriel Alejandro Rodriguez Chavez, at ¶¶ 6–8. Those declarations also affirm Banco Azteca's intent to expand its civil action against the other posters who remain unidentified. *Id*.

/ / /

As Banco Azteca details in its Application, beginning in late 2023, anonymous individuals using various accounts on different social media platforms began a smear campaign against Banco Azteca, stating that the Applicant was bankrupt, that it would cease to exist in Mexico, and urged the public to withdraw their money from Applicant's financial institutions. (ECF 39 at 8–13). Banco Azteca commenced a civil action in Mexico against certain individuals behind the social media accounts that injured it. Ex. A, Ex. 1 attached thereto. Banco Azteca intends to file similar civil lawsuits against the other individuals behind the social media accounts whose identities remain unknown. *Id*. at ¶¶ 7–8. Banco Azteca needs the discovery sought here to identify those unknown individuals and gather evidence from the Respondent platforms concerning the individuals named in Exhibit 1 to confirm their identity. *Id*. at ¶¶ 7–8.

As Banco Azteca's declarations cite, the law in Mexico does not permit a party to file a lawsuit against unknown or anonymous parties. (ECF 39-4 at ¶ 7). Thus, Banco Azteca cannot initiate civil action against these unidentified individuals. Given that several users have non-descript account names, Banco Azteca also seeks the information in its subpoenas to confirm the identity of those posters already named in its civil complaint. *Id*.

Because each of these users made actionable defamatory statements, Banco Azteca's subpoenas seek information on various Account Holders: (1) @FreddyOliviery;[1] (2) Luis Guillermo Hernández;[2] (3) Hans Salazar;[3] and (4) Sin Censura TV[4].[5] As shown in Banco Azteca's Application, attached declarations, and the declarations filed here, these accounts posted about Banco Azteca's

---

[1]   *See* Ex. B, Exhibit 1 thereto, at 16 ("If you have your money in @BancoAzteca, the recommendation is to withdraw your funds from there. It's for your safety [emoji]"); *Id*. at 17 (". . . if you have money in @BancoAzteca, withdraw it."); *Id*. at 32 ("they do well to withdraw their money from @BancoAzteca. The imminent bankruptcy of @Azteca is inevitable.").

[2]   *See* Ex. B, Exhibit 2 thereto, at 4 (". . . If I was you and had my money with [Banco Azteca], I would take it out immediately. . .").

[3]   *See* Ex. A, Exhibit 1 thereto, at 12–13 (outlining posts subject of civil complaint in Mexico by @Hans2412).

[4]   ECF 39-2, ¶ 22 (translated video title: "WITHDRAW YOUR SAVINGS FROM BANCO AZTECA! THE CAMPAIGN THAT IS SOUNDING LOUD ON THE NETWORKS"); *See also* Ex. A, Exhibit 1 thereto, at 7–18 (outlining posts subject of civil complaint in Mexico).

[5]   Banco Azteca will withdraw its subpoenas for information concerning @PonchoGutz (John Doe 2).

purported insolvency and encouraged people to withdraw money from their Banco Azteca accounts, and as such the discovery sought is necessary for use in a civil action in Mexico. (ECF 39 at 8–10; ECF 39-2 at ¶¶ 7–22); **Exhibit B**, Second Declaration of Jose Manuel Azpiroz Bravo.

## III. ARGUMENT

### 1. Banco Azteca Meets the Section 1782 "For Use" Threshold.

The discovery Banco Azteca seeks is "for use" in a proceeding before a foreign or international tribunal. (ECF 39-3 at ¶¶ 32–33, 35, 38–40, 45); Ex. A at ¶¶ 6–8. As Banco Azteca states in its Application, this requirement is not limited to pending adjudicative proceedings, but also applies to proceedings that are "likely to occur" or are "within reasonable contemplation." (ECF 39 at 16). Courts in this District allow Section 1782 applicants to seek discovery where a parallel criminal investigation into the same conduct underlying a civil claim is underway. *Id*. at 16–17.

As a preliminary point, Account Holders' assertion that the Application fails to properly document whether a criminal investigation is underway[6] is immaterial to whether the Court should allow Banco Azteca's subpoenas to issue, because the discovery sought is for use in a civil action in Mexico. While the Account Holders fixate on language, they argue is inconsistent, Banco Azteca expressly described in its Application that it has indeed commenced a civil action in Mexico for compensatory and reputational damages arising from certain individuals' defamatory statements. *See*, *e.g.*, (ECF 39, Ex. C at ¶¶ 30, 32–33, 35–36, 38–40, 45).

Banco Azteca commenced the existing civil action against certain posters whose identities are known and seeks the information in the subpoenas here to confirm the identity of those posters and

---

[6] Contrary to Account Holders' assertions, Section 1782 discovery applications are allowed for use in criminal investigations conducted before formal accusations, and "[t]he term 'tribunal' includes investigating magistrates, administrative and arbitral tribunals . . .". *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1111 (9th Cir. 2015); *Intel Corp. v. Advanced Micro Devices, Inc*., 542 U.S. 241, 259 (2004). Here, there is unrebutted evidence from the attorneys participating in the criminal proceeding that there is an ongoing criminal action, that an investigatory judge is presiding over the criminal case, and that a dispositive ruling is within reasonable contemplation. (ECF 39 at 11–13; ECF 39-3 at ¶¶ 9, 17–18, 25–26); Ex. B at ¶¶ 9–14. This is sufficient under Section 1782. *See In re Ex Parte Application of Jommi*, C 13-80212 CRB (EDL), 2013 WL 6058201, at *1 (N.D. Cal. Nov. 15, 2013) (granting discovery application for use in *suspended criminal investigation* for defamation against anonymous posters, stating that the discovery sought is properly for use before a "foreign tribunal; a Swiss criminal investigation that has been suspended due to the unavailability of the information sought.").

pursue action against those whose identities are not known. *Id*. The subpoenas aim to uncover those individuals' identities. *See id.*, Ex. D at ¶ 7 (explaining that to bring a civil action in Mexico, defendants must be identified by their legal name; civil processes cannot be filed against indeterminate persons.) Further, even on those accounts where Banco Azteca was able to identify underlying owners or posters, the subpoenas seek IP addresses and other information like time signatures relating to the posts at issue to collect other evidence only available in this district. *Id*. Banco Azteca will use this information in both its pending and contemplated civil actions.

Finally, the Application and its related declarations state facts sufficient to sustain Banco Azteca's pending and contemplated civil claims in Mexico. *See*, *e.g.*, (ECF 39, Ex. D at ¶¶ 6, 8, 11–12) (explaining the elements of defamation in Mexico and confirming that Banco Azteca has a viable claim for defamation and damages under Mexican law). As such, this Court should grant Banco Azteca's Application and deny the Account Holders' Motion because the discovery is indeed for use in civil proceedings in Mexico.

   **2.   Banco Azteca's Application and Subpoenas Are Permissible Under the *Intel* Discretionary Factors.**

In determining whether to grant a Section 1782 application, courts consider the four discretionary *Intel* factors. The *Intel* factors are: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the discovery request is an "attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the discovery requested is "unduly intrusive or burdensome." *In re Takagi*, 23-MC-80124-JSC, 2023 WL 4551074, at *3 (N.D. Cal. July 13, 2023) (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004)). Account Holders' Motion fails to argue that Banco Azteca's Application and subpoenas do not satisfy the *Intel* factors.

   **a.   *Intel* Discretionary Factors One and Three Weigh in Favor of Banco Azteca's Application and Discovery.**

The entire basis of Account Holders' argument as to *Intel* factors one and three is a misguided belief that the Mutual Legal Assistance in Criminal Matters ("MLAT") somehow

prevents Banco Azteca from seeking discovery through a Section 1782 application. Applicable case law does not support this contention. *See, e.g. Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 141 (2d Cir. 2022) (holding that Section 1782 expands the options for lawful foreign discovery beyond mechanisms like MLAT).

A plain reading of the U.S.-Mexico MLAT indicates that it is primarily designed to assist the Mexican and U.S. governments in criminal matters, whereas Section 1782 applies to any "interested person" seeking discovery assistance from the United States in a foreign tribunal. Indeed, Article 1 of the U.S.-Mexico MLAT states that "[t]he *Governments* of the United States of America and the United Mexican States (the Parties) … shall cooperate with each other by taking all appropriate measures that they have legal authority to take, in order to provide mutual legal assistance in criminal matters …." Treaty Between the United States of America and Mexico, U.S.—Mex., art 1, May 3, 1991 (emphasis added). In contrast, 28 U.S.C. § 1782(a) provides that "[t]he district court of the district in which a person resides or is found may order him … to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." The section also provides that an "order may be made … upon the application of *any interested person…*" 28 U.S.C. § 1782(a)(emphasis added). This distinction is essential to the Court's analysis and determination as to the viability of Banco Azteca's Application, given the MLAT on which the Account Holders rely in support of their Motion focuses on facilitating discovery for the "Parties" as they are defined in the Treaty, namely, the United States and Mexican governments. Indeed, the Treaty is silent as to discovery requests made by non-government entities, contradicting Account Holders' arguments that the first and third *Intel* factors weigh in favor of their Motion. *See Weber v. Finker*, 554 F. 3d 1379, 1383 (11th Cir. 2009) (finding Section 1782 applicable to a request where judicial assistance was sought among private parties, outside of formal accusations by the Swiss government.)

Further, even if the MLAT was applicable here, which it is not, there is no evidence to support Account Holders' contention that MLAT is the more appropriate procedure, in place of the Banco Azteca's Section 1782 Application and related subpoenas. Indeed, Article 15 of the U.S.-Mexico MLAT states that "[t]he Parties may also provide assistance pursuant to any bilateral or

multilateral arrangement, agreement, or practice which may be applicable." *See* Treaty Between the United States of America and Mexico, U.S.—Mex., art 15, May 3, 1991 ("Compatibility of this Treaty with other International Agreements and Domestic Laws."). Instead, like the Eleventh Circuit in *Weber*, the Court should interpret the language of Article 15 of the U.S.-Mexico MLAT as "consistent with one another." *Weber*, 554 F. 3d at 1383. As the Eleventh Circuit explained in *Weber*, when a treaty, such as the MLAT here, is "silent on its applicability to discovery requests by non-States Parties" and Section 1782 is available and "specifically provides that 'any interested person' may apply to a United States district court for foreign discovery assistance," such mechanisms should be read as "consistent with one another." *Id*.

Applying *Weber*, it is clear the U.S.-Mexico MLAT does not tip the scale in favor of a motion to quash. If anything, it is clear guidance on why Section 1782 is the preferred application for Banco Azteca's request and issuances of its subpoenas.

> **b.** ***Intel* Discretionary Factor Two Weighs in Favor of Banco Azteca's Application and Discovery.**

As stated above, the second *Intel* factor involves "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *In re Takagi*, 2023 WL 4551074, at *3. Account Holders' arguments that the "Amended Application fails to provide any details regarding the current status of the criminal and civil proceedings underway abroad," are without merit. (ECF 44 at 11) As Banco Azteca clearly explains in its Application (ECF 39), a criminal investigation is underway in Mexico, and Banco Azteca initiated its own civil proceedings against parties for whom it was able to locate limited information. Specifically, as mentioned above, a preliminary hearing in the criminal action resulted in an order to various posters to take down certain posts defaming Banco Azteca and its affiliates. This is the limit of the Account Holders' arguments regarding this factor in their Motion, as they otherwise do not offer any argument why a civil tribunal would not be receptive to judicial assistance in the U.S. federal courts, which is otherwise supported by the applicable precedent Banco Azteca cites in its Application.

/ / /

### c. *Intel* Factor Four Weighs in Favor of Banco Azteca's Application and Discovery.

In support of their argument that the fourth *Intel* factor weighs in favor of quashing the subpoena, Account Holders claim that Banco Azteca "fails to offer little more than conclusory assertions of how the purported Mexican proceedings could survive the equivalent of a motion to dismiss in Mexico," without little to no factual or legal support for such a contention. (ECF 44 at 12). As stated in Banco Azteca's oppositions to the other Respondent Parties' Motions to Quash that make similar arguments, the record alone and Banco Azteca's Application and related declarations defeat this point. For example, and to eliminate any doubt here why the subpoenas should issue, as it relates to the Account Holders themselves, Banco Azteca identifies the offending posts at issue above. *See e.g.*, p. 3, n. 1–5, *supra*. Banco Azteca further demonstrates that these statements were consistent with others belonging to a coordinated group of online posters, including the Account Holders, who published knowingly false claims to go viral that Banco Azteca was facing bankruptcy and those knowing false statements extensively damaged Banco Azteca's reputation and financial position. As explained above, Banco Azteca asserts a real evidentiary basis for its defamation claim against these anonymous users by quoting the posts of the anonymous users and outlining damages it suffered. *See*, *e.g.*, (ECF 39-4, ¶¶ 6, 8, 11–12). For the reasons described below, Banco Azteca's declarations separately present the elements necessary to sustain its civil claims for defamation in Mexico and connect those to the facts at issue. Banco Azteca easily meets the motion to dismiss standard and the Court should reject the Account Holders' positions.

To this point, the Account Holders' application of *Tokyo University of Social Welfare* in support of their position that Banco Azteca failed to explain how the posts in question are defamatory, is misguided as the findings and facts of that case are inapposite to those presented and at issue here. Account Holders' Motion ignores the actual content of Banco Azteca's Application and the attached Luque Declaration, each of which present the facts and law with clarity. Indeed, the Application provides sufficient detail to support a finding that Banco Azteca could sustain its defamation claim in Mexico. *See, e.g. In re Yasuda*, No. 19-mc-80156-TSH, 2020 WL 759404 (N.D. Cal. Feb. 14, 2020) (finding one tweet sufficient to constitute defamation and evidence of

1   applicant's ability to withstand a motion to dismiss). After the declarant qualifies himself, the Luque
2   Declaration breaks down each element to sustain a claim of for defamation under Mexican law.
3   (ECF 39-4. at ¶ 8.) Mr. Luque then describes the general facts, cited in the Application, that support
4   each of these claims. Mr. Luque then concludes that "[i]f Banco Azteca deems it appropriate to file
5   a civil lawsuit and presents evidence proving that certain defendants published false information
6   about the institution on social media platforms, Banco Azteca has a viable claim for defamation and
7   damages under Mexican law." *Id.* at ¶ 11. He further clarifies that "all the necessary elements that
8   need to be proven are alleged in the Application." *Id.* at ¶ 12. The Application's cited facts, and
9   other exhibits, independently demonstrate that Banco Azteca would survive a motion to dismiss for
10  each account. The statements made by the accounts identified above, which posted about Banco
11  Azteca and its alleged insolvency, ultimately led to numerous individuals withdrawing their money
12  from the institution.

13        Finally, a quick review of the declaration from *In re Hoteles City Express*, 2018 WL
14  3417551, at *3 (N.D. Cal. July 13, 2018), on which Account Holders rely on to argue that Banco
15  Azteca's is unable to withstand a motion to dismiss relating to a claim for defamation under Mexican
16  law, is easily distinguishable from the declarations provided here. (ECF 44 at 12). Unlike the
17  declaration here, the *In re Hoteles City Express* declaration did not describe the statements alleged
18  to be defamatory with any reasonable particularity, which ultimately resulted in favor of quashing
19  the application. *In re Hoteles City Express*, 2018 WL 3417551, at *3, *passim*. For the reasons
20  described above, Mr. Luque's declaration does not suffer from the same deficiencies, and as such
21  the Account Holders' reliance on that case is unpersuasive. In fact, it proves exactly why this Court
22  should deny Account Holders' Motion and allow Banco Azteca to seek the discovery it is
23  requesting.
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

### 3. Additional Considerations: The First Amendment Does Not Automatically Shield the Anonymity of Account Holders Who Make Defamatory Statements in the Form of Commercial Speech.

#### a. Account Holders' Motion asserts an incorrect standard to assess First Amendment issues in this action.

For several reasons, the Court should not credit Account Holders' arguments to adopt the heightened test set forth in *Highfields Capital Management, L.P*. First, courts in this District will decline application of the *Highfields* standard in Section 1782 commercial speech matters, particularly where the speakers may not be United States citizens. "[W]here the record does not indicate that anonymous speakers are U.S. citizens and thus possess First Amendment rights, section 1782 applicants need not satisfy *Highfields's* 'real evidentiary basis' standard.'" *hey, Inc.*, 22-MC-80034-DMR, 2023 WL 3874022, at *3 (citing *Zuru, Inc. v. Glassdoor, Inc.*, 614 F. Supp. 3d 697, 706 (N.D. Cal. 2022); *see also In re Takada*, No. 22-mc-80221-VKD, 2023 WL 1442844, at *3–4 (N.D. Cal. Feb. 1, 2023) (declining to apply *Highfields*, holding that "the Court is not persuaded that [applicant's] subpoena implicates the First Amendment" where there was "no reason to believe that the anonymous poster is a U.S. citizen" and )[7]; *Takagi v. Twitter, Inc.*, No. 22-MC-80240-VKD, 2023 WL 1442893, at *3–4 (N.D. Cal. Feb. 1, 2023) (same).

In this case, as in *hey, Inc.*, *Zuru, Takada, and Takagi*, no evidence suggests that the anonymous speakers are U.S. citizens entitled to First Amendment protections. As in *hey, Inc.*, the posts are in a foreign language, regarding a foreign company, directed at foreign individuals, concerning foreign issues. *See* (ECF 39 at 3-13); Ex. B. The Account Holders appear to be in Mexico and there is no indication that they are U.S. citizens. (ECF 42 at 8; ECF 26-1 at ¶ 2). Notably, the Account Holders make no argument to the contrary. As reasoned in *Takada*, Banco Azteca is not required to demonstrate definitively that the anonymous posters are *not* U.S. citizens, which would be impossible given that it does not know their identity, and the Court is not required to assume that

---

[7] "*Zuru* expressly considered and rejected the proposition that the Court must apply First Amendment scrutiny to an application for discovery under 28 U.S.C. § 1782 where the discovery is sought in aid of a foreign defamation action against anonymous posters of reviews critical of a foreign company . . ." *In re Takada*, 22-MC-80221-VKD, 2023 WL 1442844, at *3 .

the posters enjoy First Amendment protections absent evidence to the contrary. *In re Takada*, 2023 WL 1442844, at *4. As such, this Court should decline to accept Account Holders' "expansive position," as the Court in *Takada* did, that "anonymous speech implicates First Amendment protections if that speech is merely accessible to U.S. citizens over the Internet." *Id*. at *3.

### b. Banco Azteca's subpoenas nonetheless satisfy *Highfields*.

Even if *Highfields'* standards did apply, Account Holders' reliance on it is misplaced. The background of that case is informative. In *Highfields*, an investment fund tried to subpoena information leading to the identity of certain message board posters from the providers that hosted those message boards. *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 972–974 (N.D. Cal. 2005). The fund's claims centered entirely around three posts that the court correctly noted even a casual observer would identify as a "sardonic" "parody" of the fund and its consistently volatile performance in the market, and the ironic depiction of what the poster clearly regarded as the fund's corporate excesses. *Id*. at 973–975. The court also implied its doubts that because the fund's performance was historically volatile, these seemingly obscure parody postings were an unlikely cause of the harm claimed. *Id*. Applying these facts to its test balancing public policies against harmful speech, the court found that the possibility of harm that the public would understand these posts to be anything but parody was far too remote without more evidence. *Id*. at 979–980. There was "…simply no reason to believe, on the record made here, that the posting of these three messages poses any threat to the commercial interest of plaintiffs. " *Id.* at 981. Further, there was "no reason to believe that there is any risk that these messages will draw clients to plaintiff's competitors or will cause potential clients to pause before engaging plaintiff's services." *Id*.

In other words, where the *Highfields* court developed a standard to protect anonymous speakers from disclosure where their speech was comparatively harmless when measured against the loss of their ability to comment or parody anonymously, it nonetheless permitted a scale where this balance can shift. Consequently, the *Highfields* test does not apply for the reasons just described. Nevertheless, the Subpoenas satisfy the *Highfields* test.

The first *Highfields* test is whether the plaintiff has adduced competent evidence of harmful speech. *Highfields Cap. Mgmt., L.P.*, 385 F. Supp. at 975.  Here, Banco Azteca demonstrated that a

coordinated group of online posters, including the Account Holders, published knowingly false claims to go viral that Banco Azteca was facing bankruptcy and those knowing false statements extensively damaged Banco Azteca's reputation and financial position. As explained above, Banco Azteca asserts a real evidentiary basis for their defamation claim against these anonymous users by quoting the posts of the anonymous users and declaring under oath the damages it suffered. *See*, *e.g.*, (ECF 39-4, ¶¶ 6, 8, 11–12). Hence, the Application and its related declarations state a real evidentiary basis for sustaining Banco Azteca's pending and contemplated civil claims in Mexico. *See also* Ex B, Exhibit 1 attached thereto. This satisfies the first *Highfields* test.

The second *Highfields* test balances the harm of unmasking an anonymous user versus the harm to the plaintiff seeking to unmask them. *Highfields Cap. Mgmt., L.P.*, 385 F. Supp. at 980. First, and what X. Corp.'s Motion does not acknowledge, is that defamatory speech is not protected by the First Amendment. *United States v. Alvarez*, 617 F.3d 1198, 1202 (9th Cir. 2010), aff'd, 567 U.S. 709 (2012). When speech is defamatory, the identity of an anonymous poster deserves less protections. *Zuru, Inc.*, 614 F. Supp. 3d at 703 (allowing the discovery of the identity of anonymous posters because the petitioner's defamation claim was plausible and therefore, the respondent's interest in preserving anonymity did not outweigh petitioner's interest in protecting its reputation) ; *see also See Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *4 (N.D. Cal. Nov. 9, 2011) ("the right to anonymity is not absolute…[w]here anonymous speech is alleged to be unlawful, the speaker's right to remain anonymous may give way to a plaintiff's need to discover the speaker's identity in order to pursue its claim."). While the *Art of Living* case opted to apply the *Highfields* test, which it equates to a preliminary injunction standard, it capably outlines the difference between commentary, criticism, political views, or to communicate an idea, versus speech with some commercial goal, for which there is less First Amendment value. *Art of Living Found.*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *5, 7.

Notwithstanding Account Holders' attempts to characterize the campaign at issue as political, the speech in this defamation dispute – to engineer a bank run by creating an online panic through false claims of the bank's bankruptcy – is unmistakably commercial. Applying the *Highfields* balancing test to defamation actions, commercial speech that can or has caused economic

damage shifts the analysis. *See, e.g. In re Anonymous Online Speakers*, 661 F.3d 1168, (9th Cir. 2011) (holding that "in discovery disputes involving the identity of anonymous speakers, the notion that commercial speech should be afforded less protection than political, religious, or literary speech is hardly a novel principle"); *SI03, Inc. v. Bodybuilding.com, LLC*, 441 Fed. Appx. 431, 431–32 (9th Cir. 2011) (the "degree of scrutiny we give to impositions on speech 'varies depending on the circumstances and type of speech at issue' and thus 'the nature of the speech should be a driving force in choosing a standard by which to balance the rights of anonymous speakers in discovery disputes.'")

Indeed, other circuits have held in similar matters that anonymous communications relating to a company's accounting and inventory that ultimately succeeded in driving down the company's stock price was commercial speech and not entitled to heightened protection and enjoyed only a "limited measure of protection" insufficient to protect the sender's anonymity. *Lefkoe v. Jos. A. Bank Clothiers, Inc.*, 577 F.3d 240, 248–49 (4th Cir. 2009) (citing *Bd. of Trustees of SUNY v. Fox*, 492 U.S. 469, 477 (1989). Here, this Court should allow the subpoenas to issue because Banco Azteca's interest in vindicating the harm done outweighs the interest in protecting the anonymity of defamatory commercial speech.

The balancing of the First Amendment rights of the Anonymous Posters to make defamatory commercial speech against Banco Azteca's rights to redress the harm from such speech weighs heavily in favor of allowing Banco Azteca the ability to redress its harm. The campaign by the Anonymous Posters was coordinated, with most posts appearing in a concentrated period of time. It caused market disruption that evidences damage well beyond Banco Azteca's principals and largest shareholders, and led to a panic among the bank's customer base. Moreover, as Banco Azteca explains in its Application and reiterates here, the losses sustained number in the hundreds of millions. Applying Ninth Circuit precedent, it is unclear how *Highfields* and its elevated standard should even apply in this context, but given the facts, which are quantifiable and explained in detail by Banco Azteca in its Application, there is little doubt that its balancing test favors discovery here.

/ / /

/ / /

### c. The Court should disregard Account Holders' focus on the political environment in Mexico.

The Account Holders' Motion improperly devotes considerable space to characterizing the speech at issue as political in order to trigger heightened standards like the ones described above. The Account Holders who have appeared in this matter claim they used "their accounts for political speech" in the past to attack a Banco Azteca director and that they have been critical of Banco Azteca's director's "political views in the past". (ECF 44 at 7, 11, 16). Account Holders heavily emphasize other statements outside those at issue and other articles concerning Banco Azteca's Chairperson in an attempt to reframe the relief sought and distort the issues raised in the Amended Application.[8]

However, these are not the statements and events at issue.  That the anonymous posters may have used their accounts for political speech in the past, that the anonymous posters also personally criticized a director of the bank as part of their campaign, or that a director of the bank made political statements, are all immaterial to the nature of the speech that forms the basis of Banco Azteca's civil claims in Mexico—defamatory statements that claimed Banco Azteca was bankrupt and urged customers to withdraw their money. *See Lefkoe,* 577 F.3d at 248 (defamatory statements that concern finances of company and urged action of a commercial nature was commercial speech and entitled to limited protection). These defamatory statements at issue concern the finances of Banco Azteca and urge commercial action. As such, they are commercial speech under any standard. Consequently, because the speech is commercial, an "exacting standard" such as the one adopted in *Highfields* is not applicable as explained by the Ninth Circuit in *SI03*, even if all the posters were U.S. citizens, which does not apply here.

/ / /

/ / /

---

[8] Banco Azteca is a Mexican company and is separate and apart from its officers or directors. The fact that the anonymous posters also attacked a Banco Azteca director does not prevent Banco Azteca from asserting its rights here or in Mexico, and no case law or authority is cited that immunizes defamatory statements against an entity, because of prior attacks on an officer. Similarly, simply because the anonymous users may have made political statements not directed at Banco Azteca is irrelevant to the analysis.

## IV. CONCLUSION

For the reasons stated above, Banco Azteca satisfies the statutory requirements of Section 1782 and the discretionary *Intel* and 9th Circuit factors. In light of the twin aims of Section 1782 to provide efficient assistance to foreign litigants and to encourage foreign countries by example to provide similar assistance to U.S. courts, this Court should exercise its discretion to authorize discovery against the Account Holders so that Banco Azteca can conduct limited discovery to identify the Anonymous Individuals and gather other evidence for use in Banco Azteca's civil actions in Mexico.

Dated: October 8, 2024                    Respectfully submitted,

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By:    */s/ Michael J. Hurvitz*_____
          Michael J. Hurvitz
          P. John Veysey

          Attorneys for Applicant
          BANCO AZTECA S.A. INSTITUCIÓN DE BANCA MÚLTIPLE

4866-1563-3389 v.1